| | |
|---|---|
| 1 | MARIA RODRIGUEZ (SBN 194201) |
| 2 | mcrodriguez@mwe.com<br>CHRISTOPHER BRAHAM (SBN 293367) |
| 3 | cbraham@mwe.com<br>ARIEL BEVERLY (SBN 324656) |
| 4 | abeverly@mwe.com<br>**MCDERMOTT WILL & EMERY LLP** |
| 5 | 2049 Century Park East<br>Suite 3200 |
| 6 | Los Angeles, CA  90067-3206<br>Telephone:   +1 310 277 4110 |
| 7 | Facsimile:    +1 310 277 4730 |
| 8 | Attorneys for Defendants<br>TWENTIETH CENTURY FOX FILM |
| 9 | CORPORATION and AMERICAN<br>BROADCASTING COMPANIES, INC. |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROCKMOND DUNBAR,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN BROADCASTING COMPANIES, INC.; TWENTIETH CENTURY FOX TELEVISION, A UNIT OF TWENTIETH CENTURY FOX FILM CORPORATION DOING BUSINESS AS 20TH TELEVISION,<br><br>　　　　　Defendants. | CASE NO. 2:22-cv-1075-DMG (JCx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS CLAIMS ASSERTED IN PLAINTIFF ROCKMOND DUNBAR'S FIRST AMENDED COMPLAINT**<br><br>[*Filed concurrently with (1) Request for Judicial Notice; (2) Memorandum of Points and Authorities; (3) [Proposed] Order]*<br><br>Date:　　July 29, 2022<br>Time:　　9:30 a.m.<br>Ctrm.:　　8C, 8th Floor<br><br>Complaint Filed: February 16, 2022<br>FAC Filed: May 6, 2022 |

# **TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ................................................................................................ 1

II. RELEVANT FACTUAL ALLEGATIONS ........................................................ 2

    A. Allegations Driving Mr. Dunbar's Disparate Impact Claim .................... 2

    B. Allegations Driving Mr. Dunbar's Interference Claims .......................... 2

III. LEGAL ARGUMENT ........................................................................................ 3

    A. Mr. Dunbar's Disparate Impact Claim Is Subject To Dismissal Because An Impacted "Class" Of One Cannot Support Such A Claim ... 3

    B. The FAC Fails To Plead Facts Sufficient To Support A Viable Claim For Intentional Interference With Prospective Economic Advantage ..... 5

        1. The FAC Fails To Plead Facts That Would Allow The Court To Reasonably Infer That Defendants Had Knowledge Of The Project ........................................................................... 6

        2. The Fac Fails To Plead Facts Sufficient To Show That Defendants Knew Their Actions Would Interfere With The Project ............................................................................................ 7

        3. The FAC Fails To Plead Facts Establishing "But For" Causation Between The Deadline Article And Harm To An Existing Business Relationship ....................................................... 8

    C. The FAC Fails To Plead Facts Sufficient To Support A Claim For Negligent Interference With Potential Economic Advantage ................ 10

IV. CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Arnold v. Sessions*,
   2018 WL 6728008 (N.D. Cal. 2018) ................................................................... 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................. 3, 5, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 5, 6

*California Expanded Metal Products Co. v. ClarkWestern Dietrich Bldg. Systems LLC*,
   2014 WL 5475214 (C.D. Cal. Oct. 29, 2014) ..................................................... 9

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) ................................................................................ 3

*Go Daddy Operating Company, LLC v. Ghaznavi*,
   2018 WL 1091257 (N.D. Cal. 2018) ................................................................... 6

*Goodman Group, Inc. v. Dishroom*,
   679 F. 2d 182 (9th Cir. 1982) ...................................................................... 4, 10

*GSI Tech. v. United Memories, Inc.*,
   2014 WL 1572358 (N.D. Cal. 2014) ................................................................... 6

*Liu v. Uber Techs. Inc.*,
   551 F. Supp. 3d 988 (N.D. Cal. 2021) ................................................................ 4

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) .............................................................................. 3

*Rheumatology Diagnostics Lab, Inc. v. Aetna, Inc.*,
   2014 WL 524076 (N.D. Cal. 2014) ..................................................................... 8

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) .............................................................................. 8

*Santa Fe Properties, LP v. Source Bioscience, Inc.*,
　2021 WL 6104156 (C.D. Cal. 2021) ................................................................... 8

*Sebastian Int'l, Inc. v. Russolillo*,
　162 F. Supp. 2d 1198 (C.D. Cal. 2001) .............................................................. 7

*Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*,
　521 F. Supp. 3d 929 (S.D. Cal. 2021) ............................................................. 6, 9

*Stout v. Potter*,
　276 F. 3d 1118 (9th Cir. 2002) ........................................................................... 3

*Watson v. Fort Worth Bank and Trust*,
　487 U.S. 977 (1988) ........................................................................................... 4

**California Cases**

*Crown Imports, LLC v. Superior Court*,
　223 Cal. App. 4th 1395 (2014) ......................................................................... 10

*Edwards v. Arthur Andersen LLP*,
　44 Cal. 4th 937 (2008) ....................................................................................... 5

*Korea Supply Co. v. Lockheed Martin Corp.*,
　29 Cal.4th 1134 (2003) ...................................................................................... 7

**Other Authorities**

Rule 12(b)(6) .............................................................................................................. 3

## I. INTRODUCTION

On May 6, 2022, Plaintiff Rockmond Dunbar ("Mr. Dunbar") filed a 55-page First Amended Complaint ("FAC") alleging that Defendants American Broadcasting Companies, Inc. and Twentieth Century Fox Television ("Defendants") discriminated and retaliated against him when he refused to comply with the COVID-19 vaccine requirement on the television show "9-1-1".

Discovery in this action will establish that Mr. Dunbar's claims are meritless across the board, but the FAC contains at least three causes of action that are defective on their face and subject to dismissal at this stage: (1) violation of Title VII on the theory of disparate impact on the basis of religion (Count 2); (2) intentional interference with prospective economic advantage (Count 12); and (3) negligent interference with potential economic advantage (Count 13). The FAC does not contain factual allegations sufficient to state any of these claims.

Mr. Dunbar's disparate treatment claim is defective because he has failed to plead any factual allegations pertaining to more than just one individual of a purportedly impacted protected religious class. Rather, his allegations pertain ***only to himself***. This deficiency is fatal because it is impossible for the Court to infer that other members of Mr. Dunbar's religion were disparately impacted by Defendants' vaccination policy or by any other actions they took.

Mr. Dunbar's two tortious interference claims are also defective and should be dismissed. Mr. Dunbar's FAC is devoid of the requisite facts to support the required elements of a tortious interference claim. Moreover, tortious interference claims require a defendant to have known about a business relationship it allegedly interfered with ***prior*** to its purported wrongful actions. The facts ***as pled in the FAC*** make clear that Defendants could not have known about Mr. Dunbar's claimed business relationships before they purportedly "leaked information" to the media about his vaccination status. Therefore, Mr. Dunbar cannot plead that Defendants tortiously interfered with a prospective economic advantage that they ***could not have known***

*existed prior to the purported leak.*

Defendants therefore move for dismissal of the Second, Twelfth and Thirteenth Causes of Action alleged in the FAC.

## II. RELEVANT FACTUAL ALLEGATIONS

### A. Allegations Driving Mr. Dunbar's Disparate Impact Claim

Mr. Dunbar alleges that Defendants violated Title VII because its mandatory vaccination policy "had a disparate impact on Mr. Dunbar by forcing him to either abandon his religious obligation or forego employment with Defendant Fox." (FAC, ¶ 151.) In his 259 paragraph FAC, Mr. Dunbar does not allege that any other person employed by Defendants was purportedly impacted by Defendants' vaccination policy based on their religion. For reasons discussed below, this deficiency is fatal to his Title VII disparate impact claim.

### B. Allegations Driving Mr. Dunbar's Interference Claims

Mr. Dunbar also alleges that Defendants intentionally and negligently interfered with his and his wife's film project titled "The Rearing" (hereinafter "the Project") after it purportedly secured a $1,000,000 investment on November 8, 2021. (FAC, ¶¶ 117-118.) Mr. Dunbar claims that the Project began casting on December 8, 2021, and that Defendants knew about the Project because "it was listed on the industry 'Breakdown Services' official site for the tv series/films currently casting." (FAC, ¶ 120.) Mr. Dunbar further alleges that several agents read the Project's script and provided positive feedback, purportedly resulting in multiple unnamed "A and B list talent" becoming interested in three lead roles associated with the Project. (FAC, ¶ 122.) Mr. Dunbar alleges that, on November 16, 2021, the media publication known as Deadline published an article about his vaccination status after it purportedly obtained "leaked" information from Defendants, and after obtaining a comment from Mr. Dunbar himself confirming that he applied for religious and medical accommodations to Defendants' vaccination program. (*See* FAC ¶¶ 87-88; Request

2
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

for Judicial Notice ("RJN"), ¶ 1, Ex. A.)[1] Mr. Dunbar alleges that Defendants tortiously interfered with the Project's ability to secure auditions with the unnamed A and B list actors because of bad publicity that resulted when Defendants purportedly "leaked" information regarding his vaccination status to the media publication known as Deadline. (*See* FAC, ¶¶ 123, 126.) Mr. Dunbar contends that the Project's inability to secure relationships with those A and B list actors resulted in the Project's investor's retracting $500,000 in funding. (FAC ¶ 125.) As discussed below, Mr. Dunbar's tortious interference claims fail as a matter of law.

### III. LEGAL ARGUMENT

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

#### A. Mr. Dunbar's Disparate Impact Claim Is Subject To Dismissal Because An Impacted "Class" Of One Cannot Support Such A Claim

A claim of disparate impact is, by its nature, a claim that a group of people have suffered a result that others have not. Thus, to state a claim for disparate impact, a plaintiff must provide facts that show: (1) a significant disparate impact, (2) on a protected class, (3) caused by a specific, identified, employment practice. *Stout v. Potter*, 276 F. 3d 1118, 1121 (9th Cir. 2002). Pursuant to Supreme Court precedent,

---

[1] Defendants deny that any such "leak" ever occurred, but, even taking the allegation in the FAC as true, it is clear that such a purported leak *cannot* support a viable tortious interference claim.

3
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

"once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show" that the practice in question has caused *a protected group* to suffer adverse effects. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994 (1988). Critically, a disparate impact claim requires the claimant to allege facts supporting the conclusion that a *group* (e.g. – a significant number of people) has suffered such adverse effects. One person is not enough because "the Court cannot draw an inference of disparity from a single data point." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 991 (N.D. Cal. 2021).

Mr. Dunbar alleges that Defendants' mandatory vaccination policy "had a disparate impact on Mr. Dunbar" on the basis of his religion. (FAC ¶ 151.) In other words, Mr. Dunbar's FAC states facts pertaining only to one person from the Church of Universal Wisdom who was impacted by the Defendants' mandatory vaccine policy—himself. (FAC ¶¶ 151-152.) There are *no* facts in the FAC as to whether Defendants' employed even one other member of the Church of Universal Wisdom and/or whether that person's employment was terminated in connection with the mandatory vaccination policy. These deficiencies are fatal because *a class of one single person impacted by a facially neutral policy cannot support a disparate impact claim*. See *Arnold v. Sessions*, 2018 WL 6728008 at *9 (N.D. Cal. 2018) (motion to dismiss granted where plaintiff failed to allege any facts establishing that "women, or even another woman or single female FBI agent" were subject to adverse effects as a result of the policy at issue).

The Court should dismiss Mr. Dunbar's Second Cause of Action alleging that Defendants violated Title VII by creating a disparate impact on account of his religion.

///

///

///

### B. The Fac Fails To Plead Facts Sufficient To Support A Viable Claim For Intentional Interference With Prospective Economic Advantage

It is impossible for a defendant to ***intentionally*** interfere with a prospective economic advantage that it did not know existed. A viable claim for intentional interference with prospective economic advantage requires a plaintiff to allege: "(1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendants' wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (2008).

Mr. Dunbar contends in the FAC that Defendants interfered with the Project by purportedly leaking his vaccination status to the media news website Deadline and that Defendants knew "that interference with Mr. Dunbar's economic relationship for the Project was certain or substantially certain to occur as a result of the leak to Deadline." (FAC, ¶ 126.) He further claims that Defendants' alleged "leaking of information to Deadline" resulted in Mr. Dunbar "losing [A and B list] talent and funding for the Project" because of purported ensuing "negative publicity". (FAC, ¶¶ 117, 125, 251-254.)

The facts alleged cannot support any legal claim for tortious interference with a prospective economic advantage because they fall short of *Twombly* and *Iqbal*'s pleading requirements for the plaintiff to state a ***plausible*** claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007) (holding that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."); *Iqbal*, 556 U.S. at 678 (same). Here, the FAC fails to allege the following critical elements: (1) that Defendants knew about the Project; (2) that Defendants obtained knowledge of the Project ***prior to*** allegedly

leaking information to Deadline; and (3) how Defendants' purported "leaking" of information regarding Mr. Dunbar's vaccination status to Deadline *actually interfered* with the Project.

### 1. The FAC Fails To Plead Facts That Would Allow The Court To Reasonably Infer That Defendants Had Knowledge Of The Project

A plaintiff must plead facts explaining how somebody directly communicated information to the defendant about the existence of plaintiff's prospective economic relationship. *See Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 962 (S.D. Cal. 2021) (implausible to conclude that defendant had knowledge of a prospective economic relationship because "[t]here are no factual allegations indicating that a certain person with Plaintiff's corporation told another person with Defendant's corporation" about the prospective economic relationship). Anything short of such concrete allegations is insufficient to support a claim at the pleading stage. *See Go Daddy Operating Company, LLC v. Ghaznavi*, 2018 WL 1091257, at *10 (N.D. Cal. 2018) (allegations that defendants queried a public database were insufficient to plead defendants' knowledge of plaintiff's customer relationships); *GSI Tech. v. United Memories, Inc.*, 2014 WL 1572358, at *7 (N.D. Cal. 2014) (allegations that defendant, "as an industry participant," had general knowledge about economic relationships were insufficient to plausibly impute knowledge to the defendant).

Mr. Dunbar's FAC contends that he had an economic relationship arising out of the Project. (FAC, ¶ 253.) However, his FAC contains *no allegations* establishing that there was any direct communication about the Project with any of Defendants' relevant corporate employees. Thus, the Court cannot infer Defendants knew about the Project and Mr. Dunbar's affiliation thereto. Instead, Mr. Dunbar's FAC presumes that Defendants knew about the Project because it was purportedly listed on a private website known as "Breakdown Services". (FAC, ¶ 120.) This type of allegation inherently requires the Court to *speculate* that: (1) Defendants (through their relevant corporate actors) reviewed the "Breakdown Services" website; *and* (2) that they saw

a listing on the website relating to the Project, which included information that directly linked it to Mr. Dunbar. Such speculation cannot support a ***plausible*** intentional interference claim. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to rise above the speculative level.").

For this reason alone, Mr. Dunbar's intentional interference claim is subject to dismissal.

### 2. The Fac Fails To Plead Facts Sufficient To Show That Defendants Knew Their Actions Would Interfere With The Project

A viable claim for intentional interference with economic advantage must also include allegations showing that the defendant ***knew*** "that the interference was certain or substantially certain to occur as a result of its action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1154 (2003). Common sense dictates that this element cannot be satisfied if the defendant did not know about the existence of a business relationship prior to its alleged wrongful actions. *See Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001) ("If a potential defendant was completely unaware of contractual relations with a third party, then it would be impossible to infer any intent to interfere on the defendant's part.").

Here, Mr. Dunbar cannot plead that Defendants intended to interfere with the Project by purportedly leaking information to Deadline because, ***according to Mr. Dunbar's theory, Defendants could not have known about the Project at the time of the leak***. The Project did not begin casting until December 8, 2021. (FAC ¶ 121.) Breakdown Services, the purported source of Defendants' knowledge for the Project, only posts projects that are ***currently*** casting. (*See* FAC, ¶ 120 (alleging that information relating to the Project was posted on "the industry 'Breakdown Services' official site for the tv series/firms ***currently*** casting") (emphasis added)). The Deadline article was posted on November 16, 2021, and as such, Mr. Dunbar cannot reasonably dispute that the purported leak to Deadline must have occurred sometime on or before that date. (*See* FAC, ¶ 87.) In other words, without a time machine, it is impossible

for Defendants to have acted with the requisite level of intent to interfere with the Project because Defendants could not have learned about the Project until at least three weeks *after* the Deadline article was released.

The FAC's concession that Defendants could not have possibly had knowledge of the Project until a date *after* their purportedly wrongful conduct is an uncurable defect that subjects Mr. Dunbar's intentional interference claim to dismissal with prejudice. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### 3. The FAC Fails To Plead Facts Establishing "But For" Causation Between The Deadline Article And Harm To An Existing Business Relationship

The final nail in the coffin of this claim is the FAC's utter failure to plead any facts supporting the contention that it was *probable* that some prospective economic advantage would have been realized, *but for* Defendants' interference. *See Santa Fe Properties, LP v. Source Bioscience, Inc.*, 2021 WL 6104156, at *3 (C.D. Cal. 2021) (citing *Rheumatology Diagnostics Lab, Inc. v. Aetna, Inc.*, 2014 WL 524076, *14 (N.D. Cal. 2014). "Any alleged relationship cannot be based upon 'overly speculative expectancies,'" and a plaintiff claiming interference with a relationship "must show 'an existing relationship with an identifiable'" client or customer. *Id.*

Mr. Dunbar contends in the FAC that Defendants "leaking of information to Deadline" resulted in Mr. Dunbar losing A and B list talent leading to "investors retracting $500,000 in funding from the budget as a result of the casting". (See FAC, ¶¶ 124-125.) The allegations are insufficient for two reasons:

***First***, the FAC fails to provide any rational link between the Deadline article and the purported decisions of the unidentified "A and B list actors" to "back away from the Project". Instead, the FAC only vaguely suggests that these unidentified persons, through their agents, must have read the script and gave positive feedback

sometime *after* December 8, 2021, when it began casting. (See FAC, ¶¶ 121-122.) But the Deadline article was posted in mid-November, *weeks prior* to this speculative conduct. As such, there is no reasonable inference that the Deadline article was the but for causation of the unidentified A and B list actors' decisions regarding the Project; those individuals would have never entertained reading the Project's script if, as Mr. Dunbar's theory hinges upon, they had already been deterred by the Deadline article published weeks before. This Court can "draw on its judicial experience and common sense" to adduce whether a complaint states a *plausible* claim for relief. *Iqbal*, 556 U.S. at 679. The Deadline article speaks for itself: nothing about it would permit a *plausible* inference that it was the but for cause of any actor to back away from the Project. RJN, ¶ 1, Ex. A.

    ***Second***, exploratory conversations with unidentified individuals do not constitute a reasonably probable economic advantage. Mr. Dunbar's FAC pleads ***no facts whatsoever*** establishing any existing business relationship with any particular A or B list actor or the terms being negotiated thereto. *See Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 962 (S.D. Cal. 2021) (rejecting interference claim where plaintiff failed to allege which entities it was negotiating with, what the terms were, or when the contracts were negotiated). The FAC alleges only that some actors "were interested in the Project". (See FAC, ¶ 123.) These facts, which merely *suggest* that Mr. Dunbar may have had conversations with the agents for unidentified talent, can only support, at best, an inference of a ***speculative*** economic advantage and cannot form the basis of an actionable interference claim. *California Expanded Metal Products Co. v. ClarkWestern Dietrich Bldg. Systems LLC*, 2014 WL 5475214 (C.D. Cal. Oct. 29, 2014) (dismissing claim for negligent interference with prospective economic advantage where alleged preliminary discussions concerned only the ***possibility*** of a licensing agreement because "exploratory discussions … are insufficient, on their own, to establish any certainty that an agreement would be reached").

Mr. Dunbar's Twelfth Cause of Action for intentional interference with a prospective economic advantage claim should be dismissed with prejudice because his FAC fails to explain, because he cannot explain, how Defendants' purported wrongful conduct caused harm to an existing economic advantage.

### C. The FAC Fails To Plead Facts Sufficient To Support A Claim For Negligent Interference With Potential Economic Advantage

Mr. Dunbar's negligent interference claim is based upon the exact same factual allegations driving his intentional interference claim. A claim for ***negligent*** interference with prospective economic advantage has the same elements as one for ***intentional*** interference, except that, instead of an intentional act, the third element requires that: (1) the defendant had knowledge of the existing business relationship; and (2) it was reasonably foreseeable the relationship would be disrupted if the defendant failed to act with reasonable care. *See Crown Imports, LLC v. Superior Court*, 223 Cal. App. 4th 1395, 1404, fn. 10 (2014).

Here, Mr. Dunbar's negligent interference claim fails for the same reasons described in Sections II(B)(1) through II(B)(3), *supra*. In particular, it fails for the logical reason that Defendants could not have reasonably foreseen any harm to the Project arising from their alleged wrongful conduct (even if they had committed it). The allegations in the FAC establish that Defendants ***did not even know*** about the Project at the time of the alleged leak. *Goodman Group, Inc. v. Dishroom*, 679 F. 2d 182, 187 (9th Cir. 1982) (claim for negligent interference with prospective economic advantage would not lie where the defendant had no knowledge of any preexisting agreement between the plaintiff and a third party).

Accordingly, just like Mr. Dunbar's intentional interference claim, his Thirteenth Cause of Action for negligent interference of a potential economic advantage should be dismissed with prejudice.

///

///

## IV. CONCLUSION

Based on the foregoing, Defendants' respectfully request that this Court grant its Motion and dismiss Mr. Dunbar's Second, Twelfth and Thirteenth Causes of Action without leave to amend.

Dated: June 3, 2022             **MCDERMOTT WILL & EMERY LLP**

By:   */s/Christopher Braham*
        MARIA RODRIGUEZ
        CHRISTOPHER BRAHAM
        ARIEL BEVERLY
        Attorneys for Defendants
        TWENTIETH CENTURY FOX FILM
        CORPORATION and AMERICAN
        BROADCASTING COMPANIES, INC.