**SIRI & GLIMSTAD LLP**
Mason Barney (*Pro Hac Vice*)
Email: mbarney@sirillp.com
Elizabeth A. Brehm (*Pro Hac Vice*)
Email: ebrehm@sirillp.com
Ursula Smith (*Pro Hac Vice)*
Email: usmith@sirillp.com
200 Park Avenue
Seventeenth Floor
New York, NY 10166
Telephone: 212-532-1091
Facsimile: 646-417-5967

Caroline Tucker (SBN 261377)
Email: ctucker@sirillp.com
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: 213-376-3739
Facsimile: 646-417-5967

Attorneys for Plaintiff
ROCKMOND DUNBAR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ROCKMOND DUNBAR,<br><br>                              Plaintiff,<br><br>v.<br><br>AMERICAN BROADCASTING COMPANIES, INC., TWENTIETH CENTURY FOX TELEVISION, A UNIT OF TWENTIETH CENTURY FOX | Case No. 2:22−cv−01075−DMG−JC<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS** |

1

| | |
|---|---|
| FILM CORPORATION DOING BUSINESS AS 20TH TELEVISION,<br><br>Defendants. | *[Filed concurrently with (1) Plaintiff's Opposition to Defendants' Partial Motion to Dismiss, (2) Declaration of Rockmond Dunbar and (3) Proposed Order]*<br><br>Hearing:        July 29, 2022<br>Time:          9:30am<br>Courtroom:   8C, 8th Floor<br>Judge:         Hon. Dolly M. Gee<br>Action Filed:  February 16, 2022<br>FAC Filed:    May 6, 2022 |

## REQUEST FOR JUDICIAL NOTICE

**PLEASE TAKE NOTICE** that Plaintiff Rockmond Dunbar, by and through his attorneys, hereby submits this Request for Judicial Notice in Support of Plaintiff's Opposition to Defendants' Partial Motion to Dismiss. Pursuant to Federal Rule of Evidence 201, Plaintiff respectfully requests that the Court take judicial notice of the following documents:

1.      The Complaint in *Rademacher v. American Broadcasting Companies, Inc.*, Case No. 21STCV45383 (Supr. Ct. L.A. Cnty), filed on December 13, 2021.  A true and correct copy of which is attached hereto as **Exhibit 1.**

2.      The First Amended Complaint in *Rademacher v. American Broadcasting Companies, Inc.*, Case No. 21STCV45383 (Supr. Ct. L.A. Cnty), filed on April 21, 2022. A true and correct copy of which is attached hereto as **Exhibit 2.**

3.      The Complaint in *Wahl v. American Broadcasting Companies, Inc.*, Case No. 22STCV19481 (Supr. Ct. L.A. Cnty), filed on June 15, 2022.  A true and correct copy of which is attached hereto as **Exhibit 3.**

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ARGUMENT**

Federal Rule of Evidence 201 allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The court may take judicial notice at any stage of the proceeding" and the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2), (d). A "court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1067, n. 9 (9th Cir. 2012).

The Court may properly take judicial notice of Exhibits 1-3 which are:

1.     The Complaint in *Rademacher v. American Broadcasting Companies, Inc.*, Case No. 21STCV45383 (Supr. Ct. L.A. Cnty) filed on December 13, 2021.

2.     The First Amended Complaint in *Rademacher v. American Broadcasting Companies, Inc.*, Case No. 21STCV45383 (Supr. Ct. L.A. Cnty) filed on April 21, 2022.

3.     The Complaint in *Wahl v. American Broadcasting Companies, Inc.*, Case No. 22STCV19481 (Supr. Ct. L.A. Cnty) filed on June 15, 2022.

Plaintiff requests judicial notice of the existence of these complaints and the allegations made therein as the allegations against defendant American Broadcasting Companies in these complaints are similar to the allegations against Defendant American Broadcasting Companies in this instant matter and aid Plaintiff in his arguments in Plaintiff's Opposition to Defendants' Partial Motion to Dismiss.

Exhibits 1-3 are public records downloaded from the Los Angeles County Superior Court which is a source whose accuracy cannot reasonably be questioned and as such

3

their existence and filing dates are not subject to reasonable dispute as this can be accurately and readily determined. Fed. R. Evid. 201; *see, e.g., Glaria-Ramirez v. Babcock,* No. 2:14-cv-00648-AC-P, 2014 U.S. Dist. LEXIS 69980, at *2 n.1 (E.D. Cal. May 20, 2014) ("A court is permitted to take judicial notice of court records in another case, including court records available to the public through the PACER system via the internet."); *see also United States v. Wilson,* 631 F.2d 118, 119 (9th Cir. 1980) (stating that a court may take judicial notice of court records in another case); *Bennett v. Medtronic, Inc.,* 285 F.3d 801, 803 n. 2 (9th Cir. 2002) (district court "may take notice of proceeding in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").  Exhibits 1-3 have a direct relation to this matter as they involve similar religious discrimination allegations against American Broadcasting Companies, Inc.

## CONCLUSION

Plaintiff respectfully requests this Court take judicial notice of Exhibits 1-3.


Dated: July 1, 2022            **SIRI & GLIMSTAD LLP**

                               By:   */s/ Caroline Tucker*
                                     Mason Barney (*Pro Hac Vice*)
                                     Elizabeth Brehm (*Pro Hac Vice*)
                                     Caroline Tucker
                                     Ursula Smith (*Pro Hac Vice*)

                                     Attorneys for Plaintiff
                                     ROCKMOND DUNBAR

4

# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 12/13/2021 12:40 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez Deputy Clerk

Case 2:22-cv-01075-DMG-JC   Document 49   Filed 07/01/22   Page 6 of 46   Page ID #:297

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Stephen Goorvitch

1   Scott J. Street (SBN 258962)          Robert F. Kennedy. Jr. (*pro hac vice*
    JW HOWARD/ATTORNEYS, LTD.          pending)
2   777 S. Figueroa Street, Suite 3800    KENNEDY & MADONNA LLP
    Los Angeles, CA 90017                 48 Dewitt Mills Road
3                                          Hurley. NY 12443
    Telephone: (213) 205-2800
4   Email: sstreet@jwhowardattorneys.com

5   John W. Howard (SBN 80200)
    Michelle D. Volk (SBN 217151)
6   JW HOWARD/ATTORNEYS, LTD.
7   701 B Street, Suite 1725
    San Diego, California 92101
8   Telephone: 619-234-2842
    Facsimile: 619-234-1716
9   Email: johnh@jwhowardattorneys.com

10  Attorneys for Plaintiff Ingo Rademacher

11

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

**CENTRAL DIVISION**

21STCV45383

| | |
|---|---|
| INGO RADEMACHER, an individual, | **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS** |
| Plaintiff, | |
| vs. | **JURY TRIAL REQUESTED** |
| AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff Ingo Rademacher alleges as follows:

## INTRODUCTION

1.  In early 2020, the world discovered a novel coronavirus, Covid-19. Governments responded with the most draconian restrictions in modern history. They closed schools and shut down industries. They banned travel and prosecuted churches. They decided which activities were "essential" and which weren't.

2.  Over time, life started returning to normal, as everybody expected. In the meantime, several experimental shots were developed to help limit the effects of Covid-19. The shots, developed under the Trump Administration, were so controversial that many Democratic politicians would not commit to taking them. They also promised not to force them on the American people. That was no surprise, as America has not seen broad vaccine mandates for adults since the early twentieth century, when infectious diseases were the world's leading cause of death.

3.  But the vaccine debate became increasingly politicized during 2021. Although it was never clear that the shots were doing anything—federal officials admitted that vaccinated people could still contract and transmit Covid-19—some politicians decided that the pandemic would not end until every American got the shot. To that end, new president Joe Biden expressed frustration that more people were not getting the shots and many large corporations, wishing to please the administration, decided to start forcing the shots on their workers.

4.  The media has been among the most aggressive in mandating the Covid-19 shots for its employees. To that end, during the summer of 2021, Defendant American Broadcasting Companies., Inc. ("ABC"), a wholly owned subsidiary of The Walt Disney Company, ordered that anybody working on a television show it produced would have to get the Covid-19 shot (the "Covid Vaccine Mandate").

5.  Mr. Rademacher is an actor. He has been part of the cast of the ABC-produced soap opera *General Hospital* for 25 years. He requested a religious exemption to the Covid Vaccine Mandate. Although ABC said it would grant exemptions for sincerely held religious objections to the Covid-19 shots, it refused to accept Mr. Rademacher's request. It subjected him to half an hour of cross-examination about his religious beliefs and then denied his exemption request, without

1  explanation.

2     6.    ABC's actions are blatantly unlawful. ABC does not have the authority to force a

3  medical treatment on its employees against their will. Even if it did, it must offer religious

4  exemptions to the forced treatment to anybody who requests one. It cannot discriminate among

5  religions and cannot second-guess the sincerity of one's religious beliefs. Those actions constitute

6  religious discrimination and violate Mr. Rademacher's rights under state and federal law.

7     7.    Furthermore, like all Californians, Mr. Rademacher has a right to bodily integrity and

8  a right to refuse medical treatment, both of which the Covid Vaccine Mandate violates. He also has a

9  right to informational privacy. ABC violated those rights by forcing Mr. Rademacher to disclose his

10  personal medical information to continue working on *General Hospital*.

11    8.    Mr. Rademacher brings this action to hold ABC accountable for its unlawful

12  discrimination and invasion of Mr. Rademacher's privacy rights.

### PARTIES, JURISDICTION AND VENUE

14    9.    Plaintiff Ingo Rademacher is an individual who resides in Los Angeles County.

15    10.   Defendant ABC is a corporation formed under the laws of the State of Delaware. Its

16  principal place of business is in Burbank, within Los Angeles County.

17    11.   Defendant DOES 1 through 10 are individuals who at all relevant times were

18  officials, agents or employees of ABC and who bear some responsibility for the actions alleged in

19  this Complaint. Their identities are not yet known and thus they are sued fictitiously but Mr.

20  Rademacher will amend the Complaint after he discovers them.

21    12.   Venue exists in Los Angeles County under sections 393(b) and 394(a) of the Code of

22  Civil Procedure because the parties both reside here and because the mandate's effects will be felt

23  here.

### FACTUAL ALLEGATIONS

25    13.   In early 2020, health officials discovered a novel coronavirus circulating in Wuhan,

26  China. They named the virus "Covid-19."

27    14.   Though nobody knew it at the time, the Covid-19 pandemic would lead to the greatest

28  restrictions on liberty in American history. Many of the restrictions started in California, including

JW HOWARD/ ATTORNEYS, LTD.
701 B Street, Suite 1725
San Diego, California 92101

3
COMPLAINT

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

the first statewide "lockdown" and unprecedented mass closures of businesses and criminalization of ordinary activities that unelected health officials deemed too dangerous.

15.     During 2020, at the urging of then President Donald Trump, several pharmaceutical companies began developing experimental treatments to mitigate the effects of Covid-19 and, potentially, reduce its spread. Although these treatments were called "vaccines" they do not meet the definition of a vaccine under federal law. They are experimental gene modification therapies, something more akin to a medical treatment than a vaccine.

16.     The Covid-19 shots were so controversial that then presidential candidate Joe Biden would not commit to receiving one. Then vice presidential candidate Kamala Harris said she would not take them. Governor Gavin Newsom also questioned the treatments, saying he did not trust the Trump Administration and would review the treatments independently.

17.     Then Mr. Biden won the presidency and the tune changed. Still, President-elect Biden said he would not mandate that Americans get the Covid shots, three of which—developed by Pfizer, Moderna and Johnson & Johnson—had been approved for emergency use by the FDA.

18.     By the summer of 2021, tens of millions of Americans had chosen to take the Covid-19 therapies, including more than half of adults in California. They did so by choice not by coercion. But Covid-19 had not disappeared. That should not have surprised anyone. Public health officials have repeatedly said that eliminating a respiratory virus is impossible once it begins spreading in the community. According to one prominent epidemiologist, speaking to *Nature* magazine: "Eradicating this virus right now from the world is a lot like trying to plan the construction of a stepping-stone pathway to the Moon. It's unrealistic."

19.     Thus, anyone can still contract and spread the Covid-19 virus. Like the flu, Covid-19 is becoming endemic. The world will have to learn to live with it—as we live with many other pathogens.

20.     That includes people who have received one of the Covid-19 shots. Although the shots have been declared a miracle by many, the Department of Health and Human Services' Centers for Medicare and Medicaid Services recently admitted that "the duration of vaccine effectiveness in preventing COVID-19, reducing disease severity, reducing the risk of death, and the effectiveness of

the vaccine to prevent disease transmission by those vaccinated are not currently known."

21.    Despite this evidence, many American politicians and business leaders have decided that injecting everybody with one of the Covid-19 shots is the only way to end the pandemic.

22.    To that end, during the summer of 2021, ABC decided that anybody who works on a television show it produces would have to get one of the Covid-19 shots or would be fired. The mandate was unprecedented. ABC has never required that actors get a vaccine to shoot a tv show. It never even inquired about such private medical information, believing (correctly) that California prohibits employers from conditioning employment on medical conformity.

23.    ABC said it would respect an individual's sincere religious objection to the Covid Vaccine Mandate. Therefore, on October 11, 2021, Mr. Rademacher submitted a written request for a religious exemption. A true and correct copy of it is attached hereto as **Exhibit "A."**

24.    Rather than accept Mr. Rademacher's request for a religious exemption, ABC scheduled an interview between Mr. Rademacher and an ABC employee to discuss his request. Although ABC described the interview as an "interactive process" and denied Mr. Rademacher's request to have an attorney attend the meeting, the interview was conducted by a lawyer who works for Disney/ABC human relations and was more akin to cross-examination designed to elicit information that ABC could use to deny the request for an exemption.

25.    On November 5, ABC officially denied Mr. Rademacher's request for a religious exemption and terminated his contract to perform on *General Hospital*.

26.    These actions were unlawful. Once ABC decided to recognize exemptions to its vaccine mandate, it had to honor all of them. Questioning the sincerity of one's religious beliefs in order to deny a request for an exemption to the Covid Vaccine Mandate constitutes religious discrimination and violates federal and state civil rights laws.

27.    This should not be a political issue. There is no need for everybody to get the Covid-19 shot, even if the President demands it. Furthermore, Mr. Rademacher has a right to privacy and a right to object to compulsory medical treatment based on his sincere religious beliefs. Lawsuits decided a hundred years ago do not change that.

28.    It is time for a court to apply the law evenhandedly, to recognize that human rights

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

have evolved since the early twentieth century and that medicine has improved so much that forced medical treatments are no longer necessary or appropriate to protect public health. Moreover, the government should not be in the business of cross-examining people about their religious beliefs. ABC should know that. It could have refused all requests for religious or medical exemptions. It declined. Having chosen to recognize some exemptions, ABC must recognize any good faith request for an exemption.

29.    Mr. Rademacher brings this action to protect those rights and to seek damages for ABC's unlawful discrimination against his religious beliefs. He applied for right to sue letters from the federal and state governments and will amend this Complaint to allege workplace discrimination claims once he obtains permission to bring those claims.

## FIRST CAUSE OF ACTION

### (Violation of Article I Section 1 of the Cal. Constitution against all Defendants)

30.    Mr. Rademacher incorporates the preceding paragraphs of this Complaint as though set forth fully herein.

31.    Mr. Rademacher has a contract with ABC and thus is subject to the Covid Vaccine Mandate. Mr. Rademacher objects to the forced medical treatment and objects to being compelled to turn over his private medical information to ABC as a condition of his employment.

32.    Individuals have a right to privacy under the California Constitution. This state law privacy right, which was added by voters in 1972, is far broader than the right to privacy that exists under the federal Constitution. It is the broadest privacy right in America and has been interpreted by the California Supreme Court to protect both an individual's right to informational privacy and an individual's right to bodily integrity.

33.    The California Supreme Court has confirmed that this state constitutional right to privacy can be enforced both against the government and against private parties like ABC.

34.    Mr. Rademacher has a legally protected privacy interest in his bodily integrity and private medical information. His expectation of privacy is reasonable. Although ABC is a private party, it employed Mr. Rademacher for nearly 25 years. And it is not the only entertainment company that has adopted a Covid vaccine mandate. Like many companies, ABC instituted the

mandate because the government said it wants universal (or close to universal) vaccination. Thus, Mr. Rademacher's most effective remedy is to bring this action.

35.     ABC's Covid-19 vaccine mandate constitutes a serious invasion of those privacy rights, as alleged above.

36.     Although ABC may argue that the vaccine mandate serves a compelling interest, there are feasible and effective alternatives that have a lesser impact on privacy interests. Indeed, the mandate is irrational, as there is no evidence that the Covid-19 shot prevents people from contracting or transmitting the virus, period, much less on a television set where the risk of transmission can be controlled (and, indeed, has been controlled during the past year and a half).

37.     As a result of ABC's actions, Mr. Rademacher's contract was terminated, as alleged above. He has suffered damages to be proven at trial but which exceed $25,000.

38.     This action serves the public interest, justifying an award of attorneys' fees under section 1021.5 of the California Code of Civil Procedure.

## **PRAYER FOR RELIEF**

Wherefore, Mr. Rademacher prays for relief as follows:

1.     For an order declaring ABC's Covid-19 vaccine mandate unconstitutional;

2.     For compensatory damages in an amount to be proven at trial;

3.     For costs and attorneys' fees under section 1021.5 of the California Code of Civil Procedure; and

4.     For such other relief that the Court determines is just and proper.

Dated: December 13, 2021                    JW HOWARD/ ATTORNEYS, LTD.

By:

John W. Howard
Scott J. Street
Attorneys for Plaintiff Ingo Rademacher

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

## **JURY TRIAL DEMAND**

Mr. Rademacher demands a trial by jury on all claims for which it is available.

Dated:  December 13, 2021                    JW HOWARD/ ATTORNEYS, LTD.


By:

_____

John W. Howard
Scott J. Street
Attorneys for Plaintiff Ingo Rademacher

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

8

COMPLAINT

# EXHIBIT "A"

From: Ingo Rademacher <falko1@mac.com>
Subject: Religious exemption from COVID-19 vaccination
Date: October 11, 2021 at 9:14:17 AM PDT
To: DGE.Employee.Accommodation.Requests@disney.com

To whom it may concern,

My name is Ingo Rademacher and I am a contract player/Actor on the ABC daytime drama series "General Hospital" portraying the character of Jasper Jacks "Jax"

I am entitled to a religious exemption against mandatory vaccination for Covid-19 on the basis of my deeply and sincerely held moral belief that my body is endowed by my creator with natural processes to protect me and that its natural integrity cannot ethically be violated by the administration of artificially created copies of genetic material, foreign to nature and experimental. This moral objection is in keeping with my rights of conscience articulated by the United States Supreme Court in Welsh v. U.S. (1970) 398 U.S. 333, 339–340.

Discrimination against me on the basis of my religious values and rights of conscience is contrary to law and the Civil Rights Act. Disparate treatment of me on this basis is not permitted under State and federal law.

Kind Regards,

Ingo Rademacher

Please confirm receipt of this email.

# EXHIBIT
2

Scott J. Street (SBN 258962)
JW HOWARD/ATTORNEYS, LTD.
777 S. Figueroa Street, Suite 3800
Los Angeles, CA 90017
Telephone: (213) 205-2800
Email: sstreet@jwhowardattorneys.com

John W. Howard (SBN 80200)
Michelle D. Volk (SBN 217151)
JW HOWARD/ATTORNEYS, LTD.
701 B Street, Suite 1725
San Diego, California 92101
Telephone: 619-234-2842
Facsimile: 619-234-1716
Email: johnh@jwhowardattorneys.com

Robert F. Kennedy. Jr. (*pro hac vice*
 forthcoming)
 KENNEDY & MADONNA LLP
 48 Dewitt Mills Road
 Hurley. NY 12443

**FILED**
Superior Court of California
County of Los Angeles

04/21/2022

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ K. Ghazarian _____ Deputy

Attorneys for Plaintiff Ingo Rademacher

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

**CENTRAL DIVISION**

| | |
|---|---|
| INGO RADEMACHER, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 21STCV45383<br><br>Assigned for all purposes to Hon. Stephen Goorvitch, Dept. 39<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATION OF CIVIL RIGHTS**<br><br>**JURY TRIAL REQUESTED** |

///

///

///

///

///

///

///

Electronically Received 04/21/2022 12:51 PM
JW HOWARD/ ATTORNEYS, LTD.
701 B Street, Suite 1725
San Diego, California 92101

1

JW HOWARD/ ATTORNEYS, LTD.
701 B Street, Suite 1725
San Diego, California 92101

Plaintiff Ingo Rademacher alleges as follows:

### INTRODUCTION

1.      In early 2020, the world discovered a novel coronavirus, Covid-19. Governments responded with unprecedented restrictions on freedom. They closed schools and shut down industries. They banned travel and prosecuted churches. They decided which activities were "essential" and which weren't.

2.      During 2020, several experimental vaccines were developed to help limit the effects of Covid-19. But they are not miracle cures. They were developed quickly to protect those who are at highest risk of getting seriously ill from Covid, especially the elderly and those with multiple co-morbidities. Government officials, including the Centers for Disease Control ("CDC"), now admit that vaccinated people can contract and transmit Covid-19. Many fully vaccinated and fully boosted people fell ill with the Omicron variant last winter.

3.      Some public health experts and epidemiologists predicted all along that the Covid shots would not eradicate Covid. They pointed to evidence of "breakthrough" infections, among other signs, as evidence of this. Nonetheless, the vaccines became the center of a political dispute last summer, with President Joe Biden and other leading Democrats blaming the unvaccinated and so-called "anti-vaxxers" for not doing their part to eliminate the virus. They encouraged local officials to mandate the Covid shots for public and private employees.

4.      The media has been among the most aggressive in mandating the Covid-19 shots for its employees. To that end, during the summer of 2021, Defendant American Broadcasting Companies., Inc. ("ABC"), a wholly owned subsidiary of The Walt Disney Company, ordered that anybody working on a television show it produced would have to get the Covid-19 shot (the "Covid Vaccine Mandate").

5.      Mr. Rademacher is an actor. He has been part of the cast of the ABC-produced soap opera *General Hospital* for 25 years. He requested a religious exemption to the Covid Vaccine Mandate. Although ABC said it would grant exemptions for sincerely held religious objections to the Covid-19 shots, it refused to accept Mr. Rademacher's request. It subjected him to half an hour of cross-examination about his religious beliefs and then denied his exemption request, without

FIRST AMENDED COMPLAINT

explanation.

6.    These actions were unlawful. ABC does not have the authority to force a medical treatment on its employees against their will. Even if it did, it must offer religious exemptions to the forced treatment to anybody who requests one. It cannot discriminate among religions and cannot second-guess the sincerity of one's religious beliefs without an objective basis for doing so. It did not have one here. ABC's actions constitute religious discrimination and violate Mr. Rademacher's rights under state and federal law.

7.    Furthermore, like all Californians, Mr. Rademacher has a right to bodily integrity and a right to refuse medical treatment, both of which the Covid Vaccine Mandate violates. He also has a right to informational privacy. ABC violated those rights.

8.    Mr. Rademacher brings this action to hold ABC accountable for its unlawful discrimination and invasion of his privacy rights.

## PARTIES, JURISDICTION AND VENUE

9.    Plaintiff Ingo Rademacher is an individual who resides in Los Angeles County.

10.    Defendant ABC is a corporation formed under the laws of the State of Delaware. Its principal place of business is in Burbank, within Los Angeles County.

11.    Defendant DOES 1 through 10 are individuals who at all relevant times were officials, agents or employees of ABC and who bear some responsibility for the actions alleged in this Complaint. Their identities are not yet known and thus they are sued fictitiously but Mr. Rademacher will amend the Complaint after he discovers them.

12.    Venue exists in Los Angeles County under sections 393(b) and 394(a) of the Code of Civil Procedure because the parties both reside here and because the mandate's effects will be felt here.

## FACTUAL ALLEGATIONS

13.    In early 2020, health officials discovered a novel coronavirus circulating in Wuhan, China. They named the disease caused by the virus "Covid-19."

14.    Though nobody knew it at the time, the Covid-19 pandemic would lead to unprecedented restrictions on liberty. Many of the restrictions started in California, including the

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

first statewide "lockdown" and unprecedented mass closures of businesses and criminalization of ordinary activities that unelected health officials deemed too dangerous.

15.     During 2020, at the urging of then President Donald Trump, several pharmaceutical companies began developing experimental treatments to mitigate the effects of Covid-19 and, potentially, reduce its spread.

16.     The Covid-19 shots were so controversial that then presidential candidate Joe Biden would not commit to receiving one. Then vice presidential candidate Kamala Harris said she would not take them if Trump recommended it. Governor Gavin Newsom also questioned the treatments, saying he did not trust the Trump Administration and would review the treatments independently.

17.     Then Mr. Biden won the presidency and many tunes changed. Still, President-elect Biden said he would not mandate that Americans get the Covid shots.

18.     By the summer of 2021, tens of millions of Americans had chosen to take the Covid-19 vaccines, including more than half of adults in California. They did so by choice not by coercion. But Covid-19 had not disappeared. That should not have surprised anyone. Public health officials have repeatedly said that eliminating a respiratory virus is impossible once it begins spreading in the community. According to one prominent epidemiologist, speaking to *Nature* magazine: "Eradicating this virus right now from the world is a lot like trying to plan the construction of a stepping-stone pathway to the Moon. It's unrealistic."

19.     Thus, anyone can still contract and spread the Covid-19 virus. Like the flu, Covid-19 is becoming endemic. The world will have to learn to live with it-as we live with many other pathogens.

20.     That includes people who have received one of the Covid-19 shots. Although the shots have been declared a miracle by many, the Department of Health and Human Services' Centers for Medicare and Medicaid Services recently admitted that "the duration of vaccine effectiveness in preventing COVID-19, reducing disease severity, reducing the risk of death, and the effectiveness of the vaccine to prevent disease transmission by those vaccinated are not currently known."

21.     This was not an isolated comment. Moderna and Pfizer executives have both conceded that their shots, unlike others that have helped eradicate diseases like polio and smallpox,

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

have little known long-term benefit. The CMS has also said that "major uncertainties remain as to the future course of the pandemic, including but not limited to vaccine effectiveness in preventing 'breakthrough' disease transmission from those vaccinated, [and] the long-term effectiveness of vaccination." And it has acknowledged the benefits of natural immunity, saying that those who "have recovered from infection" are "no longer sources of future infections."

22. These uncertainties played out last winter as the Omicron variant of COVID-19 spread throughout the world, infecting millions of fully vaccinated people. The CDC finally conceded in February 2022 that "anyone with Omicron infection can spread the virus to others, even if they are vaccinated or don't have symptoms."

23. This deficiency seems to extend to the booster shots that were developed in response to new Covid variants. As Fortune reported in January: "Booster shots with messenger RNA vaccines such as those made by Pfizer Inc. and BioNTech SE failed to block Omicron in a study of some of the first documented breakthrough cases caused by the highly contagious variant." The same report stated that "[p]reliminary data from an Israeli trial involving 154 health workers, showed that a fourth dose of Pfizer's shot didn't prevent infection with Omicron."

24. Other studies have reached similar findings. For example, according to one investigation, which analyzed data from California and other states: "When the delta strain circulated from mid-November to mid-December of last year, the vaccinated accounted for 21% of all COVID-related deaths in California and Georgia, and 38% in Illinois. After delta was overtaken by the omicron variant, the proportions in California and Georgia rose substantially to over 33% -- a level comparable to Illinois, which remained at its already higher rate."

25. Studies have also revealed potential serious side effects from the Covid-19 shots. For example, a British report that examined data from more than 42 million people found an increase in myocarditis with mRNA vaccines like the COVID-19 shots that increased with each additional shot, including the booster shots. That report's authors concluded that "[a]n association between Covid-19 infection and myocarditis was observed in all ages for both sexes." According to another report, a recent study from Sweden found that the "messenger RNA from Pfizer's COVID-19 vaccine reportedly can enter human liver cells and be converted into DNA, contrary to what the CDC has

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

said." These disturbing trends—actual evidence that contradicts the CDC's pro-vaccine narrative—may explain why a CDC panel recently proposed extending the gap between Covid shots. They may also explain why several countries, including Denmark, Finland, Norway, and Sweden, suspended use of the Moderna vaccine for young people last fall.

26. This growing body of evidence confirms what many public health officials have said all along. As former Yale professor Dr. David Gortler put it: "Vaccines are one of the most important inventions in human history, having saved millions of lives. That does not mean every person should get every vaccine. Also, like every drug out there, it is critically important to quickly detect and report safety problems." Dr. Gortler concluded that the Covid-19 shots are "clearly no longer effective, and [are] potentially causing additional illness and death." Many other doctors and public health officials agree with him.

27. Those who have touted the effectiveness of the Covid shots have often relied on the CDC's recommendation and statement that they work. But in a February 20 article, *New York Times* reporter Apoorva Mandavilli wrote that the CDC "has published only a tiny fraction of the data it has collected" regarding the shots' effectiveness in preventing hospitalizations, much less death. Ms. Mandavilli quoted a government official as saying the CDC was "reluctant" to make this information available because it "might be misinterpreted as the vaccines being ineffective." The CDC's credibility is eroding with reports like these and as the public learns about the results of studies (like the Swedish DNA study) that contradict the CDC's prior statements about the vaccines.

28. Despite this history, and mounting evidence that the Covid shots do not prevent people from contracting or spreading Covid-19, much of which was available last summer, many government officials and other leaders have mandated that people get the shot to participate in daily life or keep their jobs.

29. To that end, during the summer of 2021, ABC decided that anybody who works on a television show it produces would have to get one of the Covid-19 shots or would be fired. The mandate was unprecedented. ABC has never required that individuals get a vaccine to work on a television show. It never even inquired about such private medical information before the Covid pandemic, recognizing that California prohibits employers from conditioning employment on

FIRST AMENDED COMPLAINT

1    medical conformity.

2        30.    ABC said it would respect an individual's sincere religious objection to the Covid

3    Vaccine Mandate. Therefore, on October 11, 2021, Mr. Rademacher submitted a written request for

4    a religious exemption. A true and correct copy of it is attached hereto as **Exhibit "A."**

5        31.    Rather than accept Mr. Rademacher's request for a religious exemption, ABC

6    scheduled an interview between Mr. Rademacher and an ABC employee to discuss his request.

7    Although ABC described the interview as an "interactive process," and denied Mr. Rademacher's

8    request to have an attorney attend the meeting, the interview was conducted by a lawyer who works

9    for Disney/ABC human relations. It was a cross-examination designed to elicit information that

10   ABC could use to deny Mr. Rademacher's request for an exemption.

11       32.    On November 5, ABC officially denied Mr. Rademacher's request for a religious

12   exemption and terminated his contract to perform on *General Hospital*.

13       33.    These actions were unlawful. Once ABC decided to recognize exemptions to its

14   vaccine mandate, it had to honor them. Questioning the sincerity of an individual's religious beliefs

15   without an objective basis to do so, which ABC did not have here, violates federal and state civil

16   rights laws.

17       34.    Mr. Rademacher complied with generally applicable rules related to Covid-19. He

18   tested frequently and wore a mask when appropriate. He did those things for months, without

19   incident. He would have continued doing those things. Instead, he was fired—unnecessarily and in

20   violation of his civil rights—so ABC could support a political policy. Indeed, on information and

21   belief, ABC considered Mr. Rademacher to be an "anti-vaxxer," a politically unpopular group that

22   many Democratic Party politicians, including the President, blame for not ending the pandemic.

23       35.    This should not be a political issue. There is no need for everybody to get the Covid-

24   19 shot, especially since the shots do not prevent infection. Furthermore, Mr. Rademacher has a right

25   to privacy and a right to object to compulsory medical treatment based on his sincere religious

26   beliefs. Lawsuits decided a hundred years ago do not change that.

27       36.    Mr. Rademacher brings this action to protect those rights and to seek damages for

28   ABC's unlawful discrimination against his religious beliefs. He received a right to sue letter from the

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

7

1   California Department of Fair and Employment and Housing. He is in the process of receiving a

2   right to sue letter from the federal Equal Employment Opportunity Commission but is filing this

3   amended complaint now, pursuant to an agreement with ABC.

### FIRST CAUSE OF ACTION

**(Violation of Article I Section 1 of the Cal. Constitution)**

6   37.    Mr. Rademacher incorporates paragraphs 1 through 36 of this Complaint as though

7   set forth fully herein.

8   38.    Individuals have a right to privacy under the California Constitution. This state law

9   privacy right, which was added by voters in 1972, is far broader than the right to privacy that exists

10  under the federal Constitution. It is the broadest privacy right in America and has been interpreted by

11  the California Supreme Court to protect both the right to informational privacy and to bodily

12  integrity. Unlike the right to privacy that has been recognized to exist under the federal Constitution,

13  the right to privacy embodied in California's Constitution at Article 1, Section 1 thereof, is

14  enforceable against private actors.

15  39.    Mr. Rademacher has a legally protected privacy interest in his bodily integrity and

16  private medical information, as the California Supreme Court recognized in *Hill v. NCAA*. Mr.

17  Rademacher's expectation of privacy was reasonable under the circumstances as ABC has never had

18  a vaccination requirement for employment before now and has never disciplined, much less fired, an

19  employee for declining an injection. The only compulsory vaccination laws adopted in California

20  during the past century concerned certain vaccines that children need to attend school. Those laws do

21  not undermine the expectation of privacy that adults have in their bodily integrity.

22  40.    Moreover, in 2005, the California Court of Appeal identified compulsory vaccination

23  as the type of "invasive and highly personalized medical treatments used in cases where the state

24  sought to override a person's freedom to choose and where the Supreme Court has recognized a

25  liberty interest in freedom from such unwanted medical treatment." *Coshow v. City of Escondido*,

26  132 Cal. App. 4th 687, 710 (2005). Although ABC is a private party, the California constitutional

27  right to privacy applies to private parties. It is also not the only entertainment company that adopted

28  a Covid vaccine mandate. Like many companies, ABC instituted the mandate because the

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

8

government said it wants universal vaccination. Therefore, the vaccine mandate constitutes a serious invasion of Mr. Rademacher's privacy rights, as alleged above.

41.     As the California Supreme Court has explained, the "rational basis" test that courts employ when analyzing alleged violations of the United States Constitution does not apply in a state law privacy case. The California Supreme Court uses a fact-intensive balancing test to decide whether a mandate violates an individual's state constitutional right to privacy. Moreover, while ABC may argue that its vaccine mandate serves a compelling interest in reducing the spread of Covid-19, there are feasible and effective alternatives to it that have a lesser impact on privacy interests.

42.     Indeed, evidence now shows that the vaccines do not prevent people from contracting and transmitting Covid-19. That is why millions of vaccinated people, including ABC employees, fell ill with the Omicron variant last winter. This trend will continue as other Covid variants emerge. Thus, ABC's vaccine mandate does not serve its stated purpose of preventing infection. The most the Covid shots can do is, potentially, reduce the severity of Covid-19 symptoms but even that has not been scientifically proven and there are other ways to reduce the severity of Covid-19 without compelling people to get a shot they do not want. In any event, taking a shot to potentially reduce the severity of illness is a private health issue, not a public one, which state and federal law prohibit employers from violating.

43.     On information and belief, ABC contends that its vaccine mandate does not violate Mr. Rademacher's privacy rights.

44.     Mr. Rademacher desires a judicial declaration that ABC's vaccine mandate is unconstitutional because it violates his and other ABC employees' right to privacy under Article I, section 1 of the California Constitution. This is both a facial and an as-applied challenge.

45.     A judicial determination of these issues is necessary and appropriate because such a declaration will clarify the parties' rights and obligations, permit them to have certainty regarding those rights and potential liability, and avoid a multiplicity of actions.

46.     As a result of ABC's actions, Mr. Rademacher's contract was terminated, as alleged above. He suffered damages to be proven at trial but which exceed $25,000.

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

47.     This action serves the public interest, justifying an award of attorneys' fees under section 1021.5 of the California Code of Civil Procedure.

## SECOND CAUSE OF ACTION

**(Violation of Cal. Fair Employment and Housing Act/Religious Discrimination)**

48.     Mr. Rademacher incorporates paragraphs 1 through 36 of this Complaint as though set forth fully herein.

49.     California's Fair Employment and Housing Act (FEHA) forbids an employer from firing someone "because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance . . . but is unable to reasonably accommodate the religious belief or observance without undue hardship."

50.     Rademacher worked for ABC. He had a sincerely held religious belief or practices that conflicted with a stated job requirement (the Covid-19 vaccine mandate). ABC was aware of this conflict but did not explore any available reasonable alternatives for accommodating Rademacher and it refused to consider the accommodations Rademacher proposed, none of which would have imposed a substantial burden on ABC. ABC then fired him.

51.     As a result of ABC's actions, Mr. Rademacher suffered damages in an amount to be proven at trial. These actions were the actual and proximate cause of those damages.

52.     Under the FEHA, Mr. Rademacher should recover his costs and legal fees.

## THIRD CAUSE OF ACTION

**(Violation of Cal. Fair Employment and Housing Act/Medical Condition Discrimination)**

53.     Mr. Rademacher incorporates the preceding paragraphs of this Complaint as though set forth fully herein.

54.     The FEHA prohibits California employers from firing people because of their physical/medical condition.

55.     Mr. Rademacher worked for ABC. He had a physical/medical condition (being unvaccinated) that conflicted with a stated job requirement (the Covid-19 vaccine mandate). ABC

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

10

was aware of this conflict but did not explore any available reasonable alternatives for accommodating Mr. Rademacher and it refused to consider the accommodations he proposed, none of which would have imposed a substantial burden on it. ABC then fired Mr. Rademacher because of his physical/medical condition.

56.     As a result of the ABC's actions, Mr. Rademacher suffered damages in an amount to be proven at trial. These actions were the actual and proximate cause of those damages.

57.     Under the FEHA, Mr. Rademacher should recover his costs and legal fees.

**FOURTH CAUSE OF ACTION**

**(Violation of Cal. Fair Employment and Housing Act/Retaliation)**

58.     Mr. Rademacher incorporates paragraphs 1 through 36 of this Complaint as though set forth fully herein.

59.     State law prohibits discrimination on the basis of race, color, sex, national origin, religion, age, disability and genetic information. An individual engages in protected activity when he or she speaks out about, or exercises rights related to, workplace discrimination.

60.     Mr. Rademacher was engaged in protected activity when he sought a religious exemption to ABC's Covid-19 vaccine mandate.

61.     ABC retaliated against Mr. Rademacher for engaging in this protected activity, as alleged above. The retaliatory acts included, but are not limited to, cross-examining Mr. Rademacher regarding his religious beliefs when ABC did not have an objective basis to do so, denying Mr. Rademacher's request for an exemption to the Covid-19 vaccine mandate and firing him for not complying with the mandate while granting other similar requests for exemptions.

62.     As a result of ABC's actions, Mr. Rademacher suffered damages in an amount to be proven at trial. These actions were the actual and proximate cause of those damages.

63.     Under the FEHA, Mr. Rademacher should recover his costs and legal fees.

**FIFTH CAUSE OF ACTION**

**(Wrongful Termination)**

64.     Mr. Rademacher incorporates paragraphs 1 through 36 of this Complaint as though set forth fully herein.

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

65.     ABC fired Mr. Rademacher for asserting his constitutional rights, including his rights to religious freedom and bodily integrity, and his statutory rights, including rights protected by the FEHA.

66.     The assertion of these rights was a substantial motivating reason for ABC's actions, as alleged above, and thus constituted wrongful termination, in violation of public policy.

67.     As a result of ABC's actions, Mr. Rademacher suffered damages in an amount to be proven at trial. These actions were the actual and proximate cause of those damages.

68.     ABC acted with malice or reckless indifference to Mr. Rademacher's rights, justifying an award of punitive damages.

69.     This action serves the public interest, justifying an award of attorneys' fees under section 1021.5 of the California Code of Civil Procedure.

## **PRAYER FOR RELIEF**

Wherefore, Mr. Rademacher prays for relief as follows:

1.     For an order declaring ABC's Covid-19 vaccine mandate unconstitutional;

2.     For compensatory damages in an amount to be proven at trial;

3.     For costs and attorneys' fees under section 1021.5 of the California Code of Civil Procedure; and

4.     For such other relief that the Court determines is just and proper.

Dated:  April 21, 2022                              JW HOWARD/ ATTORNEYS, LTD.


By: _____

_____
John W. Howard
Scott J. Street
Attorneys for Plaintiff Ingo Rademacher

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

## **JURY TRIAL DEMAND**

Mr. Rademacher demands a trial by jury on all claims for which it is available.


Dated:  April 21, 2022                                    JW HOWARD/ ATTORNEYS, LTD.



                                                By:

                                                       _____
                                                       John W. Howard
                                                       Scott J. Street
                                                       Attorneys for Plaintiff Ingo Rademacher

FIRST AMENDED COMPLAINT

# EXHIBIT "A"

From: Ingo Rademacher <falko1@mac.com>
Subject: Religious exemption from COVID-19 vaccination
Date: October 11, 2021 at 9:14:17 AM PDT
To: DGE.Employee.Accommodation.Requests@disney.com

To whom it may concern,

My name is Ingo Rademacher and I am a contract player/Actor on the ABC daytime drama series "General Hospital" portraying the character of Jasper Jacks "Jax"

I am entitled to a religious exemption against mandatory vaccination for Covid-19 on the basis of my deeply and sincerely held moral belief that my body is endowed by my creator with natural processes to protect me and that its natural integrity cannot ethically be violated by the administration of artificially created copies of genetic material, foreign to nature and experimental. This moral objection is in keeping with my rights of conscience articulated by the United States Supreme Court in Welsh v. U.S. (1970) 398 U.S. 333, 339–340.

Discrimination against me on the basis of my religious values and rights of conscience is contrary to law and the Civil Rights Act. Disparate treatment of me on this basis is not permitted under State and federal law.

Kind Regards,

Ingo Rademacher

Please confirm receipt of this email.

# EXHIBIT
3

Electronically FILED by Superior Court of California, County of Los Angeles on 06/15/2022 01:56 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk

Case 2:22-cv-01075-DMG-JC   Document 23   Filed 07/01/22   Page 33 of 46   Page ID #:324

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Timothy Dillon

1  Scott J. Street (SBN 258962)
   JW HOWARD/ATTORNEYS, LTD.
2  777 S. Figueroa Street, Suite 3800
   Los Angeles, CA 90017
3  Telephone: (213) 205-2800
4  Email: sstreet@jwhowardattorneys.com

5  John W. Howard (SBN 80200)
   Michelle D. Volk (SBN 217151)
6  JW HOWARD/ATTORNEYS, LTD.
7  701 B Street, Suite 1725
   San Diego, California 92101
8  Telephone: 619-234-2842
   Facsimile: 619-234-1716
9  Email: johnh@jwhowardattorneys.com

10 Attorneys for Plaintiffs JAMES WAHL and
11 TIMOTHY JAMES WAHL

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

**CENTRAL DIVISION**

| | |
|---|---|
| JAMES WAHL, an individual, and TIMOTHY JAMES WAHL, <br><br>          Plaintiffs, <br><br> vs. <br><br> AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br>          Defendants. | Case No.   22STCV19481 <br><br> **COMPLAINT FOR DAMAGES AND DECLARATORY/INJUNCTIVE RELIEF FOR VIOLATION OF CIVIL RIGHTS** <br><br> **JURY TRIAL REQUESTED** |

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

Plaintiffs James Wahl ("Jim") and Timothy James Wahl ("Tim") (collectively, "Plaintiffs") allege as follows:

## INTRODUCTION

1. In early 2020, the world discovered a novel coronavirus, Covid-19. Governments responded with unprecedented restrictions on freedom. They closed schools and shut down industries. They banned travel and prosecuted churches. They decided which activities were "essential" and which weren't.

2. During 2020, several experimental vaccines were developed to help limit the effects of Covid-19. But they are not miracle cures. They were developed quickly to protect those who are at highest risk of getting seriously ill from Covid, especially the elderly and those with multiple co-morbidities. Government officials now admit that vaccinated people can contract and transmit Covid-19. Many fully vaccinated and fully boosted people fell ill with the Omicron variant last winter.

3. Some public health experts and epidemiologists predicted all along that the Covid shots would not eradicate Covid. They pointed to evidence of "breakthrough" infections, among other signs, as evidence of this. Nonetheless, the vaccines became the center of a political dispute last summer, with President Joe Biden and other leading Democrats blaming the unvaccinated and so-called "anti-vaxxers" for not doing their part to eliminate the virus. They encouraged local officials to mandate the Covid shots for public and private employees.

4. The media has been among the most aggressive in mandating the Covid-19 shots for its employees. To that end, during the summer of 2021, Defendant American Broadcasting Companies., Inc. ("ABC"), a wholly owned subsidiary of The Walt Disney Company, ordered that anybody working on a television show it produced would have to get the Covid-19 shot (the "Covid Vaccine Mandate").

5. Plaintiffs ran the construction shop and special effects department for the ABC-produced soap opera *General Hospital*. Jim had worked on the show for 14 years. His son, Tim, had worked on the show for 10 years. They are behind-the-scenes employees who were critical to General Hospital's success.

6.      Plaintiffs requested a religious exemption to the Covid Vaccine Mandate. Although ABC said it would grant exemptions for sincerely held religious objections to the Covid-19 shots, it refused to accept Plaintiffs' request. It denied their requests without explanation, one week after they requested them.

7.      These actions were unlawful. ABC does not have the authority to force a medical treatment on its employees against their will. Even if it did, it must offer religious exemptions to anybody who requests one. It cannot discriminate among religions and cannot second-guess the sincerity of one's religious beliefs without an objective basis for doing so. It did not have one here. ABC's actions constitute religious discrimination and violate Plaintiffs' rights under state law.

8.      Furthermore, like all Californians, Plaintiffs have a right to bodily autonomy, which the Covid Vaccine Mandate violates. They also have a right to informational privacy. ABC violated those rights.

9.      Plaintiffs bring this action to hold ABC accountable for its unlawful discrimination and invasion of their privacy rights.

### PARTIES, JURISDICTION AND VENUE

10.     Plaintiff James Wahl is an individual who resides in Los Angeles County.

11.     Plaintiff Timothy James Wahl is an individual who resides in Los Angeles County.

12.     Defendant ABC is a corporation formed under the laws of the State of Delaware. Its principal place of business is in Burbank, within Los Angeles County.

13.     Defendant DOES 1 through 10 are individuals who at all relevant times were officials, agents or employees of ABC and who bear some responsibility for the actions alleged in this Complaint. Their identities are not yet known and thus they are sued fictitiously but Plaintiffs will amend the Complaint after they discover them.

14.     Venue exists in Los Angeles County under sections 393(b) and 394(a) of the Code of Civil Procedure because the parties reside here and the effects of ABC's actions are felt here.

### FACTUAL ALLEGATIONS

15.     In early 2020, health officials discovered a novel coronavirus circulating in Wuhan, China. They named the disease caused by the virus "Covid-19."

JW HOWARD/ ATTORNEYS, LTD.
701 B Street, Suite 1725
San Diego, California 92101

16. Though nobody knew it at the time, the Covid-19 pandemic would lead to unprecedented restrictions on liberty. Many of the restrictions started in California, including the first statewide "lockdown" and unprecedented mass closures of businesses and criminalization of ordinary activities that unelected health officials deemed too dangerous.

17. During 2020, at the urging of then President Donald Trump, several pharmaceutical companies began developing experimental treatments to mitigate the effects of Covid-19 and, potentially, reduce its spread.

18. The Covid-19 shots were so controversial that then presidential candidate Joe Biden would not commit to receiving one. Then vice presidential candidate Kamala Harris said she would not take them if Trump recommended it. Governor Gavin Newsom also questioned the treatments, saying he did not trust the Trump Administration and would review the treatments independently.

19. Then Mr. Biden won the presidency and many tunes changed. Still, President-elect Biden said he would not mandate that Americans get the Covid shots.

20. By the summer of 2021, tens of millions of Americans had chosen to take the Covid-19 vaccines, including more than half of adults in California. They did so by choice not by coercion. But Covid-19 had not disappeared. That should not have surprised anyone. Public health officials have repeatedly said that eliminating a respiratory virus is impossible once it begins spreading in the community.

21. Thus, anyone can still contract and spread the Covid-19 virus. Like the flu, Covid-19 is becoming endemic. The world will have to learn to live with it, as we live with many other pathogens.

22. That includes people who have received one of the Covid-19 shots. Although the shots have been declared a miracle by many, the Department of Health and Human Services' Centers for Medicare and Medicaid Services admitted that "the duration of vaccine effectiveness in preventing COVID-19, reducing disease severity, reducing the risk of death, and the effectiveness of the vaccine to prevent disease transmission by those vaccinated are not currently known."

23. This was not an isolated comment. Moderna and Pfizer executives have both conceded that their shots, unlike others that have helped eradicate diseases like polio and smallpox,

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

have little known long-term benefit. The CMS has also said that "major uncertainties remain as to the future course of the pandemic, including but not limited to vaccine effectiveness in preventing 'breakthrough' disease transmission from those vaccinated, [and] the long-term effectiveness of vaccination."

24.     These uncertainties played out last winter as the Omicron variant of COVID-19 spread throughout the world, infecting millions of fully vaccinated people. The CDC finally conceded in February 2022 that "anyone with Omicron infection can spread the virus to others, even if they are vaccinated or don't have symptoms."

25.     This deficiency seems to extend to the booster shots that were developed in response to new Covid variants. As *Fortune* reported in January: "Booster shots with messenger RNA vaccines such as those made by Pfizer Inc. and BioNTech SE failed to block Omicron in a study of some of the first documented breakthrough cases caused by the highly contagious variant." The same report stated that "[p]reliminary data from an Israeli trial involving 154 health workers, showed that a fourth dose of Pfizer's shot didn't prevent infection with Omicron."

26.     Other studies have reached similar findings. For example, according to one investigation, which analyzed data from California and other states: "When the delta strain circulated from mid-November to mid-December of last year, the vaccinated accounted for 21% of all COVID-related deaths in California and Georgia, and 38% in Illinois. After delta was overtaken by the omicron variant, the proportions in California and Georgia rose substantially to over 33% -- a level comparable to Illinois, which remained at its already higher rate."

27.     Studies have also revealed potential serious side effects from the Covid-19 shots. For example, a British report that examined data from more than 42 million people found an increase in myocarditis with mRNA vaccines like the COVID-19 shots that increased with each additional shot, including the booster shots. That report's authors concluded that "[a]n association between Covid-19 infection and myocarditis was observed in all ages for both sexes." According to another report, a recent study from Sweden found that the "messenger RNA from Pfizer's COVID-19 vaccine reportedly can enter human liver cells and be converted into DNA, contrary to what the CDC has said." These disturbing trends—actual evidence that contradicts the CDC's pro-vaccine narrative—

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

may explain why a CDC panel recently proposed extending the gap between Covid shots. They may also explain why several countries, including Denmark, Finland, Norway, and Sweden, suspended use of the Moderna vaccine for young people last fall.

28. This growing body of evidence confirms what many public health officials have said all along. As former Yale professor Dr. David Gortler put it: "Vaccines are one of the most important inventions in human history, having saved millions of lives. That does not mean every person should get every vaccine. Also, like every drug out there, it is critically important to quickly detect and report safety problems." Dr. Gortler concluded that the Covid-19 shots are "clearly no longer effective, and [are] potentially causing additional illness and death." Many other doctors and public health officials agree with him.

29. Those who have touted the effectiveness of the Covid shots have often relied on the CDC's recommendation and statement that they work. But in a February 20 article, *New York Times* reporter Apoorva Mandavilli wrote that the CDC "has published only a tiny fraction of the data it has collected" regarding the shots' effectiveness in preventing hospitalizations, much less death. Ms. Mandavilli quoted a government official as saying the CDC was "reluctant" to make this information available because it "might be misinterpreted as the vaccines being ineffective." The CDC's credibility is eroding with reports like these and as the public learns about the results of studies (like the Swedish DNA study) that contradict the CDC's prior statements about the vaccines.

30. Despite this history, and mounting evidence that the Covid shots do not prevent people from contracting or spreading Covid-19, much of which was available last summer, many government officials and other leaders have mandated that people get the shot to participate in daily life or keep their jobs.

31. To that end, during the summer of 2021, ABC decided that anybody who works on a television show it produces would have to get one of the Covid-19 shots or would be fired. The mandate was unprecedented. ABC has never required that individuals get a vaccine to work on a television show. It never even inquired about such private medical information before the Covid pandemic, recognizing that California prohibits employers from conditioning employment on medical conformity.

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

32.     ABC said it would respect an individual's sincere religious objection to the Covid Vaccine Mandate. Therefore, during October 2021, Plaintiffs requested religious exemptions to the mandate.

33.     Rather than accept Plaintiffs' request for a religious exemption, ABC scheduled an interview between them and an ABC employee to discuss their requests. Although ABC described the interview as an "interactive process," the interview was conducted by a lawyer who works for Disney. It was a cross-examination designed to elicit information that ABC could use to deny Plaintiffs' requests for an exemption, as it denied almost all such requests during 2021.

34.     On November 9, 2021, ABC officially denied Plaintiffs' requests for religious exemptions to the Covid Vaccine Mandate. It gave no reason for its decision, except to say that the company was "unable to conclude that you are prevented from receiving the Covid-19 vaccine due to a sincerely-held religious belief, practice, or observance."

35.     ABC said nothing else. It did not ask Plaintiffs whether they could perform the essential functions of their jobs. It did not show that the company would be unduly burdened by continuing to employ Plaintiffs even if they did not get the Covid shots. It made no effort whatsoever to comply with its obligations under the law and, on information and belief, it violated numerous ABC/Disney policies about how to handle requests for religious accommodations, even when health is involved.

36.     These actions were unlawful. Once ABC decided to recognize exemptions to its vaccine mandate, it had to honor them. Questioning the sincerity of an individual's religious beliefs without an objective basis to do so, which ABC did not have here, violates federal and state civil rights laws.

37.     Plaintiffs complied with generally applicable rules related to Covid-19. They tested frequently and wore a mask when appropriate. They did those things for months, without incident. They would have continued doing those things. Instead, they were let go so ABC could support a political policy.

38.     This should not be a political issue. There is no need for everybody to get the Covid-19 shot, especially since the shots do not prevent infection. Furthermore, Plaintiffs have a right to

1  privacy and a right to bodily autonomy, the right to *choose* what they do with their bodies. Lawsuits

2  decided a hundred years ago cannot eliminate that right. They cannot undo the progress that

3  Californians have made in recognizing medical freedom during the past 50 years.

4  39.  Indeed, ABC/Disney have historically been overly protective of these rights. They

5  went to great lengths to accommodate people's religious beliefs and medical conditions. They

6  developed reams of policies and procedures to govern that process. They ignored them all this time.

7  40.  Plaintiffs bring this action to protect those rights and to seek damages for ABC's

8  unlawful discrimination against their religious beliefs and physical condition. Plaintiffs received a

9  right to sue letter from the California Department of Fair and Employment and Housing and thus

10  exhausted their administrative remedies.

## FIRST CAUSE OF ACTION

### (Violation of Article I Section 1 of the Cal. Constitution)

13  41.  Plaintiffs incorporate paragraphs 1 through 40 of this Complaint as though set forth

14  fully herein.

15  42.  Individuals have a right to privacy under the California Constitution. This state law

16  privacy right, which was added by voters in 1972, is far broader than the right to privacy that exists

17  under the federal Constitution. It is the broadest privacy right in America and has been interpreted by

18  the California Supreme Court to protect both the right to bodily integrity and bodily autonomy—the

19  right to *choose* what to do with one's own body, free from coercion. Unlike the right to privacy that

20  has been recognized to exist under the federal Constitution, the right to privacy embodied in

21  California's Constitution at Article 1, Section 1 thereof, is enforceable against private actors.

22  43.  Plaintiffs have a legally protected privacy interest in their bodily autonomy and

23  private medical information, as the California Supreme Court recognized in *Hill v. NCAA*. Their

24  expectation of privacy was reasonable under the circumstances as ABC has never had a vaccination

25  requirement for employment before now and has never disciplined, much less fired, an employee for

26  declining an injection. The only compulsory vaccination laws adopted in California during the past

27  century concerned certain vaccines that children need to attend school. Those laws do not undermine

28  the expectation of privacy that adults have in their bodily autonomy.

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

44.    Moreover, in 2005, the California Court of Appeal identified compulsory vaccination as the type of "invasive and highly personalized medical treatments used in cases where the state sought to override a person's freedom to choose and where the Supreme Court has recognized a liberty interest in freedom from such unwanted medical treatment." *Coshow v. City of Escondido*, 132 Cal. App. 4th 687, 710 (2005). Although ABC is a private party, the California constitutional right to privacy applies to private parties. It is also not the only entertainment company that adopted a Covid vaccine mandate. Like many companies, ABC instituted the mandate because the government said it wants universal vaccination. Therefore, the vaccine mandate constitutes a serious invasion of Plaintiffs' privacy rights, as alleged above.

45.    As the California Supreme Court has explained, the "rational basis" test that courts employ when analyzing alleged violations of the United States Constitution does not apply in a state law privacy case. The California Supreme Court uses a fact-intensive balancing test to decide whether a mandate violates an individual's state constitutional right to privacy. Moreover, while ABC may argue that its vaccine mandate serves a compelling interest in reducing the spread of Covid-19, there are feasible and effective alternatives to it that have a lesser impact on privacy interests.

46.    Indeed, evidence now shows that the vaccines do not prevent people from contracting and transmitting Covid-19. That is why millions of vaccinated people, including ABC employees, fell ill with the Omicron variant last winter. This trend will continue as other Covid variants emerge. Thus, ABC's vaccine mandate does not serve its stated purpose of preventing infection. The most the Covid shots can do is, potentially, reduce the severity of Covid-19 symptoms but even that has not been scientifically proven and there are other ways to reduce the severity of Covid-19 without compelling people to get a shot they do not want. In any event, taking a shot to potentially reduce the severity of illness is a private health issue, which state and federal law prohibit employers from interfering with.

47.    On information and belief, ABC contends that its vaccine mandate does not violate Plaintiffs' privacy rights or that the mandate was justified.

48.    Plaintiffs desire a judicial declaration that ABC's vaccine mandate is unconstitutional

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

9
COMPLAINT

because it violates their right to privacy under Article I, section 1 of the California Constitution. This is both a facial and an as-applied challenge.

49.     A judicial determination of these issues is necessary and appropriate because such a declaration will clarify the parties' rights and obligations, permit them to have certainty regarding those rights and potential liability, and avoid a multiplicity of actions.

50.     As a result of ABC's actions, Plaintiffs' contract was terminated, as alleged above. They suffered damages to be proven at trial but which exceed $25,000.

51.     This action serves the public interest, justifying an award of attorneys' fees under section 1021.5 of the California Code of Civil Procedure.

## SECOND CAUSE OF ACTION

### (Violation of Cal. Fair Employment and Housing Act/Failure to Accommodate)

52.     Plaintiffs incorporate paragraphs 1 through 40 of this Complaint as though set forth fully herein.

53.     California's Fair Employment and Housing Act (FEHA) forbids an employer from firing someone "because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance . . . but is unable to reasonably accommodate the religious belief or observance without undue hardship." Cal. Gov't Code § 12940(l)(1).

54.     Plaintiffs worked for ABC. They had sincerely held religious beliefs or practices that conflicted with a stated job requirement (the Covid-19 vaccine mandate). ABC was aware of this conflict but did not explore any available reasonable alternatives for accommodating Plaintiffs' beliefs and it refused to consider the accommodations they proposed, none of which would have imposed a substantial burden on ABC.

55.     As a result of ABC's actions, Plaintiffs suffered damages in an amount to be proven at trial. These actions were the actual and proximate cause of those damages.

56.     ABC acted with malice or reckless indifference to Plaintiffs' rights, justifying an award of punitive damages.

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

57.     Under the FEHA, Plaintiffs should recover their costs and legal fees.

### THIRD CAUSE OF ACTION

**(Violation of Cal. Fair Employment and Housing Act/Disability Discrimination)**

58.     Plaintiffs incorporate paragraphs 1 through 40 of this Complaint as though set forth fully herein.

59.     The FEHA prohibits California employers from firing someone because of their physical, or a medical, condition.

60.     Plaintiffs worked for ABC. They had a perceived physical disability (being unvaccinated) that conflicted with a stated job requirement (the Covid-19 vaccine mandate). ABC was aware of this conflict but did not explore any available reasonable alternatives for accommodating Plaintiffs and it refused to consider the accommodations Plaintiffs proposed, none of which would have imposed a substantial burden on ABC. ABC fired Plaintiffs because of their perceived physical disability.

61.     As a result of ABC's actions, Plaintiffs suffered damages in an amount to be proven at trial. These actions were the actual and proximate cause of those damages.

62.     ABC acted with malice or reckless indifference to Plaintiffs' rights, justifying an award of punitive damages.

63.     Under the FEHA, Plaintiffs should recover their costs and legal fees.

### FOURTH CAUSE OF ACTION

**(Violation of Cal. Fair Employment and Housing Act/Retaliation)**

64.     Plaintiffs incorporate paragraphs 1 through 40 of this Complaint as though set forth fully herein.

65.     State law prohibits discrimination on the basis of race, color, sex, national origin, religion, age, disability and genetic information. An individual engages in protected activity when he or she speaks out about, or exercises rights related to, workplace discrimination.

66.     Plaintiffs were engaged in protected activity when they sought a religious exemption to ABC's enforcement of Covid Vaccine Mandate.

67.     ABC retaliated against Plaintiffs for engaging in this protected activity, as alleged

11

COMPLAINT

1   above. The retaliatory acts included, but are not limited to, denying Plaintiffs' requests for an

2   exemption to the Covid vaccine mandate and firing them for not complying with the mandate while

3   granting requests for exemptions from people who follow certain other religions.

4         68.     As a result of ABC's actions, Plaintiffs suffered damages in an amount to be proven

5   at trial. These actions were the actual and proximate cause of those damages.

6         69.     ABC acted with malice or reckless indifference to Plaintiffs' rights, justifying an

7   award of punitive damages.

8         70.     Under the FEHA, Plaintiffs should recover their costs and legal fees

9               **FIFTH CAUSE OF ACTION**

10             **(Wrongful Termination)**

11         71.     Plaintiffs incorporate paragraphs 1 through 40 of this Complaint as though set forth

12   fully herein.

13         72.     ABC fired Plaintiffs for asserting their constitutional rights, including their rights to

14   religious freedom and bodily integrity/autonomy, and their statutory rights.

15         73.     The assertion of these rights was a substantial motivating reason for ABC's actions,

16   as alleged above, and thus constituted wrongful termination, in violation of public policy.

17         74.     As a result of ABC's actions, Plaintiffs suffered damages in an amount to be proven

18   at trial. These actions were the actual and proximate cause of those damages.

19         75.     ABC acted with malice or reckless indifference to Plaintiffs' rights, justifying an

20   award of punitive damages.

21         76.     This action serves the public interest, justifying an award of attorneys' fees under

22   section 1021.5 of the California Code of Civil Procedure.

23               **PRAYER FOR RELIEF**

24   Wherefore, Plaintiffs pray for relief as follows:

25   1.     For an order declaring ABC's Covid-19 vaccine mandate unconstitutional;

26   2.     For compensatory damages in an amount to be proven at trial;

27   3.     For punitive damages in an amount to be proven at trial;

28   4.     For costs and attorneys' fees under section 1021.5 of the California Code of Civil

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

COMPLAINT

Procedure; and

5.      For such other relief that the Court determines is just and proper.

Dated:  June 14, 2022                                JW HOWARD/ ATTORNEYS, LTD.

By:

_____
John W. Howard
Scott J. Street
Attorneys for Plaintiffs JAMES WAHL and
TIMOTHY JAMES WAHL

1

## **JURY TRIAL DEMAND**

2

Plaintiffs demand a trial by jury on all claims for which it is available.

3

4

Dated:  June 14, 2022                              JW HOWARD/ ATTORNEYS, LTD.

5

6

7        By: _____

8              John W. Howard
             Scott J. Street
9              Attorneys for Plaintiffs JAMES WAHL and
             TIMOTHY JAMES WAHL
10

11

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28