MARIA RODRIGUEZ (SBN 194201)
mcrodriguez@mwe.com
CHRISTOPHER BRAHAM (SBN 293367)
cbraham@mwe.com
ARIEL BEVERLY (SBN 324656)
abeverly@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA  90067-3206
Telephone:   +1 310 277 4110
Facsimile:    +1 310 277 4730

Attorneys for Defendant
TWENTIETH CENTURY FOX FILM
CORPORATION and AMERICAN
BROADCASTING COMPANIES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKMOND DUNBAR,<br><br>            Plaintiff,<br><br>    v.v.<br><br>AMERICAN BROADCASTING COMPANIES, INC.; TWENTIETH CENTURY FOX TELEVISION, A UNIT OF TWENTIETH CENTURY FOX FILM CORPORATION DOING BUSINESS AS 20TH TELEVISION,<br><br>            Defendant. | CASE NO. 2:22-cv-1075-DMG (JCx)<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLAIMS ASSERTED IN PLAINTIFF ROCKMOND DUNBAR'S FIRST AMENDED COMPLAINT**<br><br>Date:     July 29, 2022<br>Time:    9:30 a.m.<br>Ctrm.:    8C, 8th Floor<br><br>Complaint Filed: February 16, 2022<br>FAC Filed: May 6, 2022 |

## I. INTRODUCTION

Mr. Dunbar's Opposition to Defendants' Motion to Dismiss (the "Motion") places the defects of his claims on full display and establishes that his theories of liability are untenable. Defendants' Motion presents two straight-forward questions for the Court to resolve:

(1) Does the FAC contain sufficient factual allegations suggesting that Defendant Fox's vaccination policy adversely impacted anyone other than Mr. Dunbar?

(2) Does the FAC contain sufficient factual allegations to state plausible claims for tortious interference?

The answer to both of these questions is *no*. Mr. Dunbar's Opposition does nothing to refute that conclusion.

Nowhere within the four corners of the FAC does Mr. Dunbar plead any facts to support a claim for disparate impact on the basis of religion. To do so, he would have to allege that Defendant Fox's vaccination policy adversely affected *more than one employee* who adheres to the Universal Church of Wisdom. But the FAC is devoid of any such allegations. And Mr. Dunbar's attempt in his Opposition to distract the Court with immaterial information about two other lawsuits that have no bearing on this Action does not save his pleading.

Mr. Dunbar concedes he cannot cure this factual deficiency when he makes the extraordinary request for the Court to defy applicable case law and permit him to define his protected class not based upon a religious *group* but based on a particular religious *belief*. Such a protected class is not legally recognizable. The Court should not lend any credence to this unjustified approach.

Nor has Mr. Dunbar put forth a plausible theory of liability to save his tortious interference claims. His own allegations in the FAC lead to only one conclusion: that Defendants were not aware of the Project (or anything remotely related to the Project's subject matter) at the time of the alleged wrongful Deadline leak. This conclusion is

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

fatal, and Mr. Dunbar does not refute it. Instead, his Opposition focuses on a request to supplement the pleadings with information that has nothing to do with funding for the Project (or any other film project) nor addresses the aforementioned timing deficiency. ***Even if*** Mr. Dunbar could plead facts demonstrating Defendants' knowledge of the Project at the time of the leak (which he cannot), his theory of liability is too attenuated. Those allegations, even if true, would demonstrate that Defendants could not have acted with substantial certainty that their alleged leak of purportedly confidential information to Deadline would cause Mr. Dunbar to lose funding to any film project.

The Court should grant the Motion and dismiss Mr. Dunbar's disparate impact and tortious interference claims with prejudice.

## II. MR. DUNBAR'S DISPARATE IMPACT CLAIM MUST BE DISMISSED WITH PREJUDICE BECAUSE HE DID NOT, AND CANNOT, PLEAD FACTS ABOUT A DISPARATELY IMPACTED PROTECTED CLASS

Mr. Dunbar's Opposition essentially acquiesces that his religious disparate impact claim (Count 3) should be dismissed because the FAC lacks *any* factual allegations demonstrating that Defendant Fox's mandatory vaccination policy had a disparate impact on any employee other than him. Mr. Dunbar dedicates an entire section in his Opposition to explaining how he could cure this deficiency through an amendment—a Hail Mary request for leave to amend. But even his own proposed amendment confirms that leave to amend would be futile because a religious disparate impact claim turns on the religious ***group***, not the religious ***belief***.

### A. Mr. Dunbar's FAC Fails To Allege Sufficient Facts At The Pleading Stage To State A Viable Disparate Impact Claim

Mr. Dunbar's disparate impact claim fails because he has not set forth *any* facts that would permit this Court to infer that any of Defendants' policies had a disparate impact on a religious group. Instead, the 55-page, 259 paragraph FAC explicitly alleges that Defendant Fox's vaccination policy ***only*** "had a disparate impact on Mr.

Dunbar." (FAC ¶¶ 151-53.)[1] That concession alone is fatal, but Mr. Dunbar further admits that: (1) Defendant Fox "sought and accepted religious accommodation requests from Zone A actors like Mr. Dunbar" (FAC ¶ 106); and (2) he is unaware of *any* other similarly situated person subject to Defendant *Fox's* vaccination policy who even requested a religious accommodation. (*See* FAC ¶ 110.) Mr. Dunbar's failure to plead facts about how any other person in a protected class was adversely impacted by any of Defendants' neutral employment policies is fatal to this claim. *See Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 991 (N.D. Cal. 2021) (dismissing disparate impact claim that failed to include facts about how any other person beyond the named plaintiff was harmed by the defendant's policies). His attempt to resist dismissal based upon three lackluster arguments must be ignored.

**First**, Mr. Dunbar's argument regarding the scope of his religious disparate impact claim, and whether it must be limited to members of the Church of Universal Wisdom (it must) or can broadly concern anyone with a sincere religious belief opposed to vaccination (it cannot), is simply a distraction. Regardless of the scope of the protected group, the FAC suffers from the same fatal defect: it only contains factual allegations about how Defendant Fox's vaccination policy impacted Mr. Dunbar and pleads *zero facts* showing that it impacted anyone else. The relevant case law is clear that facts about one person allegedly adversely impacted by a neutral employment policy *is not enough* to allege a plausible disparate impact claim. *Liu*, 551 F. Supp. 3d at 991 ("the Court cannot draw an inference of disparity from a single data point.").

///

---

[1] Mr. Dunbar relies on three excerpts from the FAC to suggest he pled the existence of a class-wide disparate impact: (1) that Defendants' agents were skeptical of the *sincerity* of Mr. Dunbar's religious belief because *of his race* (FAC ¶ 74); (2) that there were no reasonable accommodations available *to Mr. Dunbar* (FAC ¶ 105); and (3) that Defendant Fox's vaccination policy disparately impacted *Mr. Dunbar* by not recognizing and accommodating *his* sincere religious belief (FAC ¶ 105). Not one of these excerpts supports a religious disparate impact claim. Indeed, the allegation that Defendants questioned the sincerity of Mr. Dunbar's belief undermines the theory of his disparate impact claim. Mr. Dunbar's attempt to recast the content and context of the latter two excerpts similarly fail because those allegations relate specifically to Mr. Dunbar and his experience.

***Second***, Mr. Dunbar contends that he need not put forth a statistical analysis at the pleading stage, but this is a strawman argument. Defendants' Motion does not contend that pleading any statistical analysis was necessary *at the pleading stage*. Rather, Defendants simply cited relevant case law holding that factual allegations regarding an employment policy's impact on a single person are insufficient to permit the inference that a protected class was disparately impacted. (Dkt. 38, pp. 4:4-9, 4:17-19.)

***Third***, Mr. Dunbar contends that the Court should grant leniency as it relates to his pleading obligations due to a "disparity of information." (Dkt. 42, Opp. pp. 19:4-13.) It is well-settled that such an assertion is devoid of merit. Mr. Dunbar is not relieved of his pleading obligations merely because he lacks access to third-party personnel information. *Liu*, 551 F. Supp. 3d at 991 ("the answer is not . . . to plow ahead to discovery before successfully pleading the first element of a disparate impact claim."); *see also Mandala v. NTT Data, Inc.*, 975 F.3d 202, 212 (2d Cir. 2020) ("Of course, we are sensitive to the fact that Plaintiffs are undoubtedly working from an informational disadvantage at this early point in the proceedings. But that does not mean that they are free to rely on conclusory statistical inferences to force their way into discovery."); *Arnold v. Sessions*, 2018 WL 6728008 at *9 (N.D. Cal. 2018) (dismissing disparate impact claim where plaintiff failed to allege any facts regarding anyone other than the plaintiff).

In short, Mr. Dunbar "must make a more sophisticated effort at the front end to develop a plausible factual basis" that other similarly situated employees were disparately impacted by Defendant Fox's mandatory vaccination policy. *Liu*, 551 F. Supp. 3d at 991. The FAC fails to satisfy this requirement. As such, the Court must grant Defendants' Motion and dismiss Mr. Dunbar's religious disparate impact claim.

/ / /

/ / /

/ / /

### B. Mr. Dunbar's Request For Leave To Amend Is Futile And Should Be Denied

It is axiomatic that leave to amend should be denied if such leave would be futile. "An amendment is futile when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). Mr. Dunbar's arguments in Opposition confirm that leave would be futile here.

Mr. Dunbar claims he "can easily amend his FAC" to cure the factual deficiencies associated with his religious disparate claim by incorporating facts alleged by claimants in two unrelated lawsuits—neither of which concern Defendant Fox or adherents to the Church of Universal Wisdom. (Dkt. 42, Opp. pp. 21:19 – 22:4.)

This proclamation is misguided. A disparate impact claim involves "evaluating the impact of a policy on members of a protected class as compared to persons outside the protected class." *See Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1306 (M.D. Ala. 2019), aff'd, 6 F.4th 1247 (11th Cir. 2021). Defining an allegedly disparately-impacted class as those who share a particular religious ***belief*** is not legally cognizable:

> If a plaintiff could narrowly define its class based on its particular religious ***belief***, rather than the broader religious ***faith*** or ***group*** to which it belongs, then disparate-impact claims would have a nearly limitless reach.

*Id.* (emphasis added). In other words, if a plaintiff could bring a disparate impact claim based only on a shared religious ***belief***, then the challenged policy would inevitably impact 100% of such a narrowly tailored class and always result in a disparate impact compared to those falling outside the class.[2] *Id.* (dismissing disparate

---

[2] Mr. Dunbar's Opposition acknowledges this result, positing that "Defendants' policy had a disparate impact on many, if not all, employees who held religious beliefs that prevented vaccination." (Dkt. 42, Opp. pp 21:20-22:1.)

impact claim because the protected class "should be defined along the lines of a religion or religious group, not a particular belief within that group"). Case law forecloses on such self-serving definitions.[3]

Mr. Dunbar can only bring a disparate claim if he can allege facts showing that others who belonged to his religious group, *e.g.* the Universal Church of Wisdom, were disparately impacted by Defendant Fox's purported mandatory vaccination policy when compared to others outside this group. Mr. Dunbar attempts to bolster his request for leave to amend by pointing to two complaints against ABC in which the plaintiffs put at issue their religious **belief**—which, according to applicable case law, is a criteria that **cannot** be used to define a religious disparate impact claim. In other words, he concedes that he cannot plead that Defendant Fox's vaccination policy caused any disparate impact to his religious group.

The Court should grant Defendants' motion to dismiss Mr. Dunbar's religious disparate impact claim (Count 3) **with prejudice**.

## III. MR. DUNBAR IMPLICITLY CONCEDES THAT HIS INTERFERENCE CLAIMS ARE SUBJECT TO DISMISSAL WITH PREJUDICE

Mr. Dunbar's FAC alleges that Defendants "leaked" his vaccination status; claims (without support) that Defendants knew he was pitching a project (the "Project"); alleges that the purported leak caused him bad publicity; asserts that actors "backed away" from the Project (though he does not allege he had with any actors); and, as a result, concludes that he allegedly received reduced funding from prospective investors. Mr. Dunbar's tortious interference claims fail at the outset because he has not alleged any facts to support that Defendants had any knowledge of the Project—either generally or specifically—at the time of the purported leak to Deadline. Further,

---

[3] Mr. Dunbar's references to lawsuits brought against Defendant American Broadcasting Companies, Inc. ("ABC") that include religious disparate impact claims is further cemented as irrelevant because, unlike the claimants bringing those lawsuits, Mr. Dunbar does not allege that he was impacted by any of ABC's employment policy. His FAC repeatedly concedes the mandatory vaccination policy driving this claim was "Defendant Fox's" policy, *not* ABC's policy. (FAC ¶¶ 42, 83, 107, 134, 151.)

Mr. Dunbar's arguments are sweeping, implausible, and make clear that his interference claims are untenable.

### A. Mr. Dunbar Does Not—And Cannot—Allege That Defendants Knew About The Project Before The Purported Wrongful Leak

Mr. Dunbar's two tortious interference claims (Counts 12 and 13) hinge on Defendants having knowledge of the ***business relationship*** purportedly interfered with ***at the time of*** the alleged wrongful act. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1164–65 (2003). He relies on *Monex Deposit Co. v. Gilliam* ("*Monex*") to argue that this element is met, but *Monex* is inapposite and his reliance is misguided for two key reasons.

***First***, the *Monex* decision does not address the applicable standard to state a claim for tortious interference because it arose out of a summary judgment motion, not a motion to dismiss. *Id.* at 1153–54. Mr. Dunbar is asking the Court to rely on a case that contains no discussion whatsoever on what is sufficient to satisfy *Twombly*'s pleading requirements. He then contemporaneously attempts to distinguish his FAC and Defendants' challenge thereto from three procedurally and substantively similar cases—(1) *Soil Retention Prod., Inc.*, (2) G*o Daddy Operating Co., LLC*, and (3) *GSI Tech.*—based on nothing more than immaterial factual differences. Defendants' three cited cases each address what it takes for a plaintiff to satisfy *Twombly's* requirement to plead a plausible tortious interference claim. *Monex* does not. Mr. Dunbar's discussion of *Monex* should be ignored.

***Second***, Mr. Dunbar relies on *Monex* for the unremarkable proposition that a defendant "need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship." *Id.* at 1163. Mr. Dunbar's Opposition falters when it tries to stretch this holding to mean Defendants' knowledge of any "outside economic relationships" is sufficient. (Dkt. 42, Opp. pp. 27:4-7.) The proposition from *Monex* that Mr. Dunbar relies on does not support his argument. Instead, case law is clear: Mr. Dunbar must plead facts showing that Defendants had

knowledge of a "*specific contractual subject matter* that would be interfered with" prior to any wrongful act. *Go Daddy Operating Co., LLC v. Ghaznavi*, 2018 WL 1091257, at *10 (N.D. Cal. Feb. 28, 2018). Mr. Dunbar references Paragraphs 45, 120, 126, 251 and 253 of the FAC to support his contention that even if Defendants did not know about the Project specifically, they knew about "outside projects." But the five Paragraphs Mr. Dunbar relies on say ***nothing*** about Defendants' purported knowledge of the Project or the subject matter of any such undefined "outside projects" (or whether the subject matter of those projects were of a similar type to that of the Project) *at the time* of Defendants' alleged leak to Deadline—*e.g.* on or around November 16, 2021. This deficiency is fatal.

It cannot be said that Defendants interfered with the Project when the FAC is devoid of factual allegations that plausibly demonstrate how at the time of Defendants' purported wrongful leak to Deadline it had knowledge of the Project or its subject matter thereto.

### B. The FAC Contradicts Mr. Dunbar's Contention That The Deadline Article Was The "But For" Cause For His Investor's Decision To Reduce The Project's Funding

Mr. Dunbar opposes dismissal based on an argument that "but for" Defendants' purported leak of his confidential information to Deadline, the unknown professional athlete and independent production company (the "Investors") would not have reduced their $1,000,000 funding of the Project. This argument is implausible, it contradicts Mr. Dunbar's own pleadings, and it should be ignored.

At its core, Mr. Dunbar's FAC alleges that the Deadline leak is the "but for" cause for A and B list actors "backing away" from the Project, ***not*** the "but for" cause for the decrease in the Project's budget. Mr. Dunbar's FAC explicitly alleges that the Investors retracted $500,000 in funding from the budget "as a result of the casting." (FAC ¶ 125.) The degree of separation between the purported Deadline leak and the admitted direct cause for the Project's decrease in funding—*e.g.,* casting decisions—

is fatal to Mr. Dunbar's claim.  The Deadline leak is simply too attenuated, indirect, and remote from the alleged economic loss to support a claim for tortious interference. "At the very least, a defendant must know that its action is substantially certain to interfere with the plaintiff's business expectancy.  This interference becomes less certain as the time frame expands, the identity of potential victims becomes more vague, the causal sequence becomes more attenuated, and the assumption of easy preventability becomes less plausible." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1165, (2003) (seminal case holding that to plead a viable tortious interference claim the plaintiff must allege facts that permit the court to plausibly conclude that the defendant was substantially certain that its alleged wrongful acts would proximately cause harm to plaintiff).  Simply put, the indirect link between the alleged Deadline leak and the Project's loss of funding is too attenuated to support a plausible tortious interference claim.  *See id*.

Mr. Dunbar's tortious interference claims are also defective because they inherently require this Court to make an extraordinary number of assumptions about facts not pled in the FAC; for example:

1. That Defendants knew that Mr. Dunbar had secured funding for the Project;
2. That Defendants knew that the Project was set to begin casting in or around the time of the leak;
3. That A and B list actors would have auditioned for the Project ***but for*** the purported negative publicity surrounding the Deadline article—even though they were not engaged until after the article was published; and
4. That ***but for*** the A and B list actors declining auditions because of the Deadline article, the Investors would not have decreased the budget in any event.

These assumptions do not even begin to touch the ambiguities that plague Mr. Dunbar's FAC, including, among ***many*** others, (1) what in fact the A and B list

9
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLAIMS ASSERTED IN
PLAINTIFF ROCKMOND DUNBAR'S FIRST AMENDED COMPLAINT

actors "backed away from" (FAC ¶ 124); (2) whether the terms for funding the Project were contingent upon certain talent committing to the Project (FAC ¶ 125); or (3) whether the decrease in funding for the Project was merely a function of the lower salary commitments (resulting in no reasonably certain economic detriment to Mr. Dunbar).

In short, the Court should dismiss Mr. Dunbar's tortious interference claims (Counts 12 and 13) because they invoke an implausible series of assumptions and stretch the legal meaning of "but for" causation beyond recognition. Mr. Dunbar's proposed amendments to the FAC do not resolve these deficiencies or make his claims any more plausible, which is why the Court should dismiss these claims ***with prejudice***.

## IV. CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant its Motion and dismiss Mr. Dunbar's disparate impact and tortious interference claims with prejudice.

Dated: July 15, 2022     **MCDERMOTT WILL & EMERY LLP**

By:    */s/Christopher Braham*
MARIA RODRIGUEZ
CHRISTOPHER BRAHAM
ARIEL BEVERLY
Attorneys for Defendants
TWENTIETH CENTURY FOX FILM CORPORATION and AMERICAN BROADCASTING COMPANIES, INC.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLAIMS ASSERTED IN PLAINTIFF ROCKMOND DUNBAR'S FIRST AMENDED COMPLAINT