UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-1075-DMG (JCx)** | Date | July 25, 2022 |
| Title | ***Rockmond Dunbar v. The Walt Disney Company, et al.*** | Page | 1 of 6 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANTS' MOTION TO DISMISS [38]**

On May 6, 2022, Plaintiff Rockmond Dunbar filed a First Amended Complaint ("FAC") against Defendants American Broadcasting Companies, Inc. and Twentieth Century Fox Television. [Doc. # 29.] Defendants now move to dismiss three of Dunbar's 13 claims, for: (1) disparate impact on the basis of religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (2) intentional interference with prospective economic advantage; and (3) negligent interference with prospective economic advantage. [Doc. # 38 ("MTD").] The motion is fully briefed. [Doc. ## 42, 44.] For the reasons set forth below, the Court **GRANTS** the MTD, with leave to amend.

**I.
FACTUAL AND PROCEDURAL BACKGROUND**

Dunbar is a member of the Church of Universal Wisdom and an actor, writer, and producer. FAC at ¶¶ 1–3. Founded in 1974, Universal Wisdom followers believe, among other things, that it is a sacrilege to ingest medication, chemicals, or other foreign matters that "defy natural law." *Id*. at ¶ 26. Dunbar has been a follower of Universal Wisdom since 2014. *Id*. at ¶ 24.

In September 2021, when Dunbar was working for Defendants on the TV show "9-1-1," Defendants formally announced a policy that required certain employees to be fully vaccinated against COVID-19 by October 18, 2021. *Id*. at ¶ 41. On October 4, 2021, Dunbar's agents submitted request forms on his behalf for an exemption to the vaccine requirement, citing both medical and religious reasons. *Id*. at ¶ 54. Based on his adherence to Universal Wisdom, Dunbar has religious beliefs that conflict with receiving vaccines. *Id*. at ¶ 47. Dunbar also has an unspecified medical disability because of which his doctors advised he should not from receive a COVID-19 vaccine. *Id*. at ¶ 48. On October 4, 2021, Defendants notified Dunbar's agents that the medical exemption letter submitted by Dunbar's physician was insufficient to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 22-1075-DMG (JCx) | Date | July 25, 2022 |
| Title | *Rockmond Dunbar v. The Walt Disney Company, et al.* | Page | 2 of 6 |

receive a medical exemption. *Id*. at ¶ 55. In the same correspondence, Defendants expressed incredulity that Dunbar was also requesting a religious belief accommodation. *Id*. Defendants ultimately rejected Dunbar's requests and terminated his employment on the basis of his non-compliance with the vaccination requirement on November 10, 2021. *Id*. at ¶¶ 66, 82.

On November 8, 2021, Dunbar and his wife secured $1 million in investment funds for a movie project independent of Defendants ("the Project"). *Id*. at ¶ 118. Information about the Project was listed on a website called "Breakdown Services," which is a site for TV series and films that are currently casting. *Id*. Casting for the Project began on December 8. *Id.* at ¶ 121.

On November 16, the website Deadline published an article titled "Rockmond Dunbar Exits '9-1-1' Over Covid Vaccine Mandate After Pursuing Medical & Religious Exemptions." *Id*. at ¶ 87. Dunbar alleges that Defendants or their agents leaked information to Deadline about his medical and religious exemption requests. *Id*. at ¶ 89. After the article's release, "A and B list" actors who had previously expressed interest in the Project backed out because of the negative media associated with Dunbar. *Id*. at ¶¶ 122, 124. As a result, Dunbar and his wife were forced to offer the lead roles to "B, C, and D list" actors, and investors retracted $500,000 in funding from the Project's budget because of the changes in casting. *Id*. at ¶¶ 125.

## II.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. Id. (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-1075-DMG (JCx) | Date | July 25, 2022 |
|---|---|---|---|
| Title | *Rockmond Dunbar v. The Walt Disney Company, et al.* | Page | 3 of 6 |

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

## III.
## DISCUSSION

Defendants move to dismiss Dunbar's disparate impact claim for religious discrimination under Title VII on the ground that the FAC does not state facts sufficient to show that a protected religious group suffered a disparate impact. MTD at 7–8.[1] Defendants also move to dismiss Dunbar's intentional and negligent interference with prospective economic advantage claims ("IPEA claims") on the grounds that Defendants did not have knowledge of Dunbar's prospective film project, and that even if they had such knowledge, their alleged interference was not the "but for" cause of Dunbar's economic loss. *Id*. at 9–14.

### A.     Disparate Impact

To state a claim for disparate impact discrimination under Title VII, a plaintiff must allege (1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment practice or set of practices, and (3) a causal relationship between the identified practice and the disparity. *Freyd v. University of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021). Dunbar fails to plead the first element, that a disparate impact on a protected group actually exists, because he only alleges that he himself was terminated. He points to no other Universal Wisdom followers who have been adversely affected by Defendants' vaccination policy. Although a plaintiff need not provide comprehensive statistical evidence at the pleading stage, he still must allege specific facts from which a reasonable inference can be drawn that an employment practice broadly impacts a certain *group* in an adverse manner—not merely a single person. *See Liu v. Uber Techs. Inc*., 551 F. Supp. 3d 988, 991 (N.D. Cal. 2021) ("Ultimately, all that Liu has alleged so far is that he himself was terminated, and the Court cannot draw an inference of disparity from a single data point."); *Arnold v. Sessions*, No. 4:18-CV-00553-KAW, 2018 WL 6728008, at *9 (N.D. Cal. Dec. 21, 2018) ("Plaintiff fails to allege any facts establishing women, or even another woman . . . were subject to 'a significantly adverse or disproportionate impact' as a result of the [policy].").

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | July 25, 2022 |
|---|---|---|---|
| Title | ***Rockmond Dunbar v. The Walt Disney Company, et al.*** | Page | 4 of 6 |

In his Opposition, Dunbar requests that the Court take judicial notice of two other lawsuits against Defendants alleging religious discrimination in their vaccination policy, in order to show that he is not the only person who has been impacted. [Doc. # 43 ("RJN").] While the Court may take judicial notice of matters of public record, including lawsuits filed, it cannot take judicial notice of the truth of facts recited therein. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Dunbar essentially requests the Court to do just that, to incorporate the allegations in these other pleadings into his own. Therefore, his RJN is **DENIED**.

Even if the Court were to consider the allegations in these other complaints, however, they do not help Dunbar's case. Neither plaintiff alleges he is a member of the Church of Universal Wisdom. Dunbar argues that his disparate impact claim encompasses all those who share a religious belief against vaccinations. Opp. at 17–18. But courts generally treat disparate impact claims as those affecting particular groups or faiths, including articulable sub-groups, but not all those who share a single common belief. As one court aptly put it:

> If a plaintiff could narrowly define its class based on its particular religious belief, rather than the broader religious faith or group to which it belongs, then disparate-impact claims would have a nearly limitless reach. This is because any policy impacting a plaintiff's specific religious belief would generally impact 100% of the members of a class defined by that belief, which would virtually always amount to a disproportionate impact as compared to those falling outside the class. For example, a Jewish man impacted by a policy affecting a belief rooted in his idiosyncratic, personalized interpretation of Judaism could claim disparate impact even though no other Jewish people hold that belief.

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1306 (M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021) (citation omitted); *see also Akiyama v. U.S. Judo Inc.*, 181 F. Supp. 2d 1179, 1186 (W.D. Wash. 2002) (articulating similar dilemma).

Although the Court recognizes that Dunbar is at an information disadvantage because of the confidential nature of the vaccine accommodations process, he must still plead facts that allow the Court to infer there are other members of his protected group who are also impacted by Defendant's policy. *See Liu*, 551 F. Supp. 3d at 991. Accordingly, the Court **GRANTS** Defendants' MTD as to Dunbar's disparate impact religious discrimination claim. Because it is unclear whether additional allegations could cure this deficiency, the Court **GRANTS** Dunbar leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-1075-DMG (JCx) | Date | July 25, 2022 |
|---|---|---|---|
| Title | *Rockmond Dunbar v. The Walt Disney Company, et al.* | Page | 5 of 6 |

**B.      Inference with Prospective Economic Advantage ("IPEA")**

Plaintiff's 12th and 13th causes of action are for intentional IPEA and negligent IPEA, respectively.  The elements of the claim for intentional IPEA are: "(1) an economic relationship between the plaintiff and another, containing a probable future economic benefit or advantage to plaintiff, (2) defendant's knowledge of the existence of the relationship, (3) defendant's intentional conduct designed to interfere with or disrupt the relationship, (4) actual disruption, and (5) damage to the plaintiff as a result of defendant's acts."  *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.,* 271 F.3d 825, 831 n.8 (9th Cir. 2001) (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 380 n.1 (1995)).  Further, the plaintiff must plead that the "defendant's interference was wrongful by some measure beyond the fact of the interference itself."  *Della Penna*, 11 Cal. 4th at 393.  A claim for negligent IPEA has the same elements except that, instead of an intentional act, element three requires that the defendant had knowledge that the relationship would be disrupted if the defendant failed to act with reasonable care, and that the defendant failed to act with reasonable care.  *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1005 (2018).

Dunbar's IPEA claims are based upon his loss of investments in the Project due to negative publicity surrounding his termination by Defendants for failure to get vaccinated.  Defendants argue that the FAC fails to establish that they had knowledge of the Project before having allegedly interfered with it.  The FAC currently claims that Defendants had knowledge of the Project because it was featured on the "Breakdown Services" website.  FAC at ¶ 120.  The speculation that because information about the Project was publicly available online, that Defendants actually saw this information, does not allow the Court to draw a reasonable inference of knowledge.  *See Go Daddy Operating Co., LLC v. Ghaznavi*, No. 17-CV-06545-PJH, 2018 WL 1091257, at *10 (N.D. Cal. Feb. 28, 2018) (allegation of knowledge through public database was insufficient).  Although "general knowledge that [Dunbar] had economic relationships" is sufficient, without necessarily identifying the specific parties to the relationship, Dunbar still must plead specific facts allowing a reasonable inference that Defendants had such "general knowledge." *Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1162 (C.D. Cal. 2010).  Other than the reference to the "Breakdown Services" website, the FAC does so only in conclusory fashion.[2]

---

[2] In a declaration attached to his Opposition, Dunbar attests that creatives, executive producers, and writers of "9-1-1" had copies of Project's script and that one of the actors on "9-1-1" was even considering playing a lead role in the Project.  *See* Dunbar Decl. at ¶¶ 4–8 [Doc. # 42-1].  The Court cannot consider this evidence on a motion to dismiss, though it does allow Dunbar to amend his pleading.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("[C]ourts, when ruling on a motion to dismiss, must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint" or incorporated by reference therein.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-1075-DMG (JCx) | Date | July 25, 2022 |
|---|---|---|---|
| Title | *Rockmond Dunbar v. The Walt Disney Company, et al.* | Page | 6 of 6 |

The Court therefore **GRANTS** Defendant's MTD as to the IPEA claims, with leave to amend.[3]

## IV.
## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' MTD, **with leave to amend**. Dunbar shall file a Second Amended Complaint ("SAC"), or file a notice of intent not to amend, by **August 15, 2022**. Defendants shall file their response within 21 days of the filing of the SAC. The July 29, 2022 hearing on the MTD is **VACATED**.

**IT IS SO ORDERED**.

---

[3] Defendants also argue that the FAC fails to establish that the publicity around Dunbar's failure to get vaccinated was the but-for cause of the Project's losses, because the Deadline article was published on November 16 and casting for the actors who eventually withdrew did not begin until December 8. On this point, the Court disagrees. It is reasonable to infer that, though the information first became public earlier, word did not reach these actors until after they had already expressed an interest in working with Dunbar.