1
2
3
4
5
6
7
8      **UNITED STATES DISTRICT COURT**
9      **CENTRAL DISTRICT OF CALIFORNIA**
10

11  ROCKMOND DUNBAR,                         Case No. CV 22-1075-DMG (JCx)

12                          Plaintiff,        **ORDER RE DEFENDANTS' MOTION**
                                              **FOR SUMMARY JUDGMENT [81] [99]**
13            v.

14  TWENTIETH CENTURY FOX

15  TELEVISION, a unit of TWENTIETH

16  CENTURY FOX FILM CORPORATION

17  d/b/a 20th TELEVISION; and

18  AMERICAN BROADCASTING

19  COMPANIES, INC.,

20                          Defendants.

21

22
        This matter is before the Court on the motion for summary judgment ("MSJ")
23
    brought by Defendants Twentieth Century Fox Television, a unit of Twentieth Century
24
    Fox Film Corporation d/b/a 20th Television ("Fox") and American Broadcasting
25
    Companies, Inc.  [Doc. # 99-1.]  The motion is fully briefed.[1]  [Doc. ## 100 ("Opp."),
26

27  ─────────────────────
        [1] The Court has also reviewed Defendants' Notice of Related Authority [Doc. # 116] and
28  Dunbar's Supplement [Doc. ## 117–19].

                                    -1-

102 ("Reply"), 108 ("Defs.' Suppl. Br."), 113 ("Pl.'s Suppl. Br.").]  The Court held a hearing on December 8, 2023.  For the reasons set forth below, the Court **GRANTS** the MSJ as to all claims except the Title VII religious discrimination claims for failure to provide reasonable accommodation.

# I.
## PROCEDURAL BACKGROUND

Plaintiff Rockmond Dunbar filed this action on February 16, 2022.  [Doc. # 1.] The operative Second Amended Complaint ("SAC") alleges 11 claims:  (1) religious discrimination under the Civil Rights Act of 1964, 24 U.S.C. section 2000e *et seq*. ("Title VII"); (2) disparate impact on the basis of religion in violation of Title VII; (3) race discrimination under Title VII; (4) Title VII retaliation; (5) religious discrimination under California's Fair Employment and Housing Act ("FEHA"), California Government Code section 12900 *et seq*.; (6) race discrimination under FEHA; (7) FEHA retaliation; (8) dissemination of confidential medical information under the Americans with Disability Act of 1990 ("ADA"), 42 U.S.C. section 12101 *et seq*.; (9) violation of the California Confidentiality of Medical Information Act, California Civil Code section 56 *et seq*.; (10) breach of written contract; and (11) breach of implied covenant of good faith and fair dealing.  *See* SAC ¶¶ 123–246.

On November 3, 2022, the Court dismissed Dunbar's claim for disparate impact on the basis of religion (Claim 2).  [Doc. # 59.]  Defendants now move for summary judgment on the remainder of Dunbar's claims, and on his request for punitive damages. *See* Ntc. of MSJ at 2–3 [Doc. # 99].[2]  After the December 8 hearing, the Court ordered the parties to supplement the record and provide supplemental briefing in response to several issues that arose at the hearing.  [Doc. # 105.]  Both sides timely filed their supplemental briefs.  *See generally* Defs.' Suppl. Br.; Pl.'s Suppl. Br.

---

[2] All page citations herein refer to the page numbers inserted by the CM/ECF system.

## II.
## FACTUAL BACKGROUND[3]

Dunbar is an actor with a 30-year career, who has acted in popular television shows such as Prison Break, the Mentalist, Sons of Anarchy, and "9-1-1." SUF 49. The events that gave rise to this lawsuit occurred while Dunbar was working on 9-1-1, a show about first responders that is produced by Fox. The terms of his employment were governed by an "Actor Agreement" (or "Agreement") between Fox and Epiphany Entertainment, Dunbar's wholly-owned "lender entity." SUF 1.

In September 2021, 9-1-1 implemented a COVID-19 vaccine mandate for those in production "Zone A," which included actors like Dunbar, pursuant to a Return to Work Agreement contained in SAG-AFTRA's Collective Bargaining Agreement. *See* SUF 67. On September 14, 2021, Defendants sent a "Vaccine Memo" containing detailed information about the new vaccine requirement, which specified that Zone A cast and crew would be required to be fully vaccinated by October 18, 2021. SUF 4; *see also* Decl. of Maria Rodriguez ISO MSJ ("Rodriguez Decl."), Ex. A (excerpts of certified deposition transcript of Rockmond Dunbar and accompanying exhibits) at 21 [Doc. # 99-6 ("Dunbar Depo. Tr.")]; *id.*, Ex. 4 (Sept. 14, 2021 Email) at 77–79. Per the instructions in the Vaccine Memo, all Zone A employees would have to either receive the single-dose vaccine or the second dose of the two-dose vaccines by October 4, 2021. *Id.*

---

[3] The summarized facts are uncontroverted, unless otherwise stated. Many of the parties' purportedly disputed facts are not in fact controverted by the evidence, and the Court therefore cites to them as uncontroverted facts. Facts are drawn from Defendants' Statement of Undisputed Facts ("SUF") and Dunbar's Statement of Additional Undisputed Facts and Genuine Disputes, as set forth in Defendants' Reply Statement with contiguous numbering. [Doc. # 102-2.] The Reply Statement contains the parties' responses, which are incorporated in the Court's citations. The Court has reviewed the entire record, but only discusses the uncontroverted material facts that are necessary to or affect its analysis.

The Court has also reviewed Defendants' evidentiary objections. [Doc. # 102-3.] To the extent the Court does not address any of them, it is because the Court did not rely on the objected-to evidence in reaching its ruling. Any objections to such evidence are **OVERRULED as moot.**

-3-

The email containing the Vaccine Memo also instructed its recipients to contact Employee Relations with any questions via email at DGE.Employee.Accomodation.Requests@disney.com.  *See* Sept. 14, 2021 Email at 78. That same day, Dunbar emailed a fellow 9-1-1 cast member asking how she intended to "navigate" the vaccine mandate and stating that he was "looking for a safe way around [the] situation."  SUF 9.  Dunbar did not contact Employee Relations to discuss any accommodations or to request an exemption.  SUF 10.

Employee Relations first learned that Dunbar would be seeking an accommodation to the vaccine requirement on September 30, 2021 via email from Dunbar's agent, Sheree Cohen.  SUF 11.  On that date, the Senior Manager of Employee Relations, Erin Nguyen, responded to Cohen, setting forth the process and requirements for requesting accommodations and attaching the Accommodation Request Form.  SUF 12; *see also* Dunbar Depo. Tr., Ex. 10–11 (Sept. 30, 2021 Nguyen Email) at 84–85.  Per Nguyen's email, Dunbar would need to:  (1) explain the nature of any limitations precluding him from the vaccine requirement; (2) indicate whether the limitations were temporary or permanent; and (3) provide supporting documentation from his medical provider.  *See id.* Nguyen's email also advised that if Dunbar intended to seek a religious exemption, he would also need to explain the nature of his beliefs, practices, or observances, and how they prevented him from receiving the COVID-19 vaccine.  SUF 13.  That same day, Dunbar (via Cohen) sent Employee Relations a note from Dr. Charles Penick, dated September 2, 2021, which stated that Dunbar's "medical history" caused him to "recommend against [Dunbar] receiving all forms" of the COVID-19 vaccine.  SUF 6; *see also* Dunbar Depo. Tr., Ex. 9 ("Dr. Penick Note") at 81–83.

On October 1, 2021, Nguyen sent a couple follow-up emails to Cohen regarding Dr. Penick's Note.  First, she confirmed receipt of the note and informed Cohen that Employee Relations "will do our best to evaluate [the note] in a timely manner," but "given the late date at which we received Rockmond's request," it may not be processed in time to resume work on October 18.  A few hours later, she followed up to inform

Dunbar that Dr. Penick's Note was insufficient because "his doctor would need to say that Rockmond cannot receive any of the available Covid-19 vaccinations because of any underlying medical condition and/or disability." SUF 16; Decl. of Erin Nguyen ISO MSJ ("Nguyen Decl.") ¶ 15, Ex. F (Oct. 1, 2021 Email) at 30 [Doc. # 99-3].

On October 4, 2021, the Vaccine Memo's deadline to receive the single-shot vaccine, Dunbar submitted an Accommodation Request Form to Employee Relations, stating that he was requesting an exemption from the vaccine mandate on both religious and medical grounds. SUF 17. This was the first time Defendants learned of any claim of religious beliefs precluding Dunbar's vaccination. SUF 18. In support of his request, he re-submitted the same Dr. Penick Note, stating that his "private & personal medical history" and "unique genetic predisposition" caused Dr. Penick to recommend against him receiving the vaccine. SUF 19; Dunbar Depo. Tr., Ex. 14 ("Oct. 4, 2021 Accommodations Request") at 89–94. He also included a letter describing his membership in the Congregation of Universal Wisdom ("CUW") and its position that it is "sacrilege to depart from the precepts of the Congregation by . . . [t]he injection into the body of medication or other matter of substances that defy natural law." SUF 20; Oct. 4, 2021 Accommodations Request at 91.

That same day, Nguyen acknowledged receipt of these documents and advised Cohen that she would need to speak with Dunbar to fully understand how his religious beliefs prevented him from receiving the COVID-19 vaccine. SUF 22; Dunbar Depo. Tr., Ex. 18 (Correspondence re: Requested Accommodations) at 101. Dunbar responded that he would "request that any further questions regarding my faith is done in writing" and that he would not speak verbally unless his attorney was present. *See* Correspondence re: Requested Accommodations at 99. On October 5, 2021, Nguyen informed Dunbar that he would be unable to continue working on 9-1-1 after October 18, 2021. *See id.* at 98; SUF 32. Nguyen, Dunbar, and Dunbar's representatives continued to communicate about Dunbar's requested accommodations throughout the rest of the month, but ultimately Dunbar ceased responding to Nguyen's correspondence. *See*

Nguyen Decl. ¶¶ 30–34.  Fox considered this behavior to constitute a breach of Dunbar's Agreement and sent him a letter on November 10, 2021, advising him of the same.  SUF 35, 36.

Finally, on November 15, 2021, a reporter at *Deadline* emailed Dunbar's agent that she had heard the news of Dunbar's departure from 9-1-1 and heard it was over the COVID-19 vaccine mandate.  SUF 37; *see also* Rodriguez Decl., Ex. D (excerpts from certified deposition transcript of Sheree Cohen and accompanying exhibits) at 17–24 [Doc. # 99-9 ("Cohen Depo. Tr.")].  Dunbar provided a statement that was published the next morning, in which he explained that he had "applied for religious and medical accommodations pursuant to the law" that were denied.  SUF 38; Dunbar Depo. Tr., Ex. 25 (Deadline Article) at 103–11.  Fox also provided a statement in the article confirming that there was a mandatory vaccination confirmation process for Zone A employees. SUF 39.

### III.
### LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers

to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

## IV.
## DISCUSSION

**A.    Religious Discrimination (Claims 1 and 5)**

Both Title VII and FEHA prohibit employment discrimination based on religious beliefs, including "all aspects of religious observance and practice, as well as belief." *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j); Cal. Gov't Code § 12940(a). Dunbar brings his religious discrimination claims under a theory of failure to accommodate and disparate treatment. *See* Opp. at 17–22; *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). These claims are governed by the burden-shifting framework set forth in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973).

### 1.    Failure to Accommodate

To defeat summary judgment on a failure to accommodate theory under both Title VII and FEHA, a plaintiff must establish a *prima facie* case that: (1) he held a *bona fide* religious belief, the practice of which conflicts with an employment duty; (2) his employer was aware of that belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action due to his inability to fulfill the job requirement. *See Peterson*, 358 F.3d at 606 (citing *Heller v. Ebb Auto. Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993)); *see also Bolden-Hardge v. Off. of Cal.*

*State Controller*, 63 F.4th 1215, 1222–23 (9th Cir. 2023) (both Title VII and FEHA require "*bona fide* religious belief" for failure to accommodate religion claim).

If Dunbar makes out a *prima facie* case, the burden shifts to Defendants to establish that they "initiated good faith efforts to accommodate reasonably the employee's religious practices or that [they] could not reasonably accommodate the employee without undue hardship." *Bolden-Hardge*, 63 F.4th at 1222–23 (citations omitted). Under Ninth Circuit law, "the requisite degree of proof necessary for a plaintiff to establish a *prima facie* case on summary judgment 'is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1030, 1053 (D. Or. 2012) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted)).

### a. *Prima Facie* Case

With regard to Dunbar's *prima facie* case, Defendants challenge only the existence of his *bona fide* religious belief.[4] The Court will begin with Dunbar's Title VII claim, since its definition of religious belief tends to be "broader" than under the FEHA. *See Bordeaux v. Lions Gate Ent., Inc.*, No. CV 22-4244-SVW (PLAx), 2022 WL 19076668, at *6 (C.D. Cal. Dec. 28, 2022) (citing *Friedman v. S. Cal. Permanente Med. Grp.*, 102 Cal. App. 4th 39, 69 (2002), *as modified* (Sept. 24, 2002)).

### i. Title VII

A particular belief, observance, or practice falls within Title VII's definition of religious practice if it is sincerely held and "occupies in the life of its possessor a place

---

[4] The Court solely addresses Dunbar's religious beliefs relating to his membership in the CUW. There is no dispute that Defendants became aware, at least nominally, of Dunbar's claimed religious conflict based on his CUW membership before terminating his employment. *See* SUF 20. He has not presented, however, a single piece of evidence that would support any claim that Defendants were aware of his beliefs stemming from Buddhism or Yoruba tradition as a basis for his accommodation request. *See* Opp. at 18–20; Reply at 14–15; *see also* SUF 17, 18; Oct. 4, 2021 Accommodations Request at 89–94. Defendants' knowledge of Dunbar's religious beliefs is necessary to this claim. *See Peterson*, 358 F.3d at 606. Moreover, there is no mention of his Buddhist or Yoruba beliefs in the SAC, even as it goes into detail about the CUW. *See* SAC ¶¶ 25–30; Reply at 146–15.

-8-

parallel to that filled by the God of those [religions] admittedly qualifying for the exemption . . . ." *United States v. Seeger*, 380 U.S. 163, 176 (1965); *see also* 29 C.F.R. § 1605.1 ("[T]he Commission will define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."). In other words, the *Seeger* test focuses on the role of the asserted beliefs in the plaintiff's life rather than the substance of those beliefs. *See Bordeaux*, 2022 WL 19076668, at *6–*7 (describing the *Seeger* test's "functional approach") (citation omitted).

Defendants spill much ink contesting the sincerity of Dunbar's beliefs in light of the evidence that he has repeatedly taken actions that would contradict CUW beliefs. *See* MSJ at 19–21; Reply at 13–15. For example, he underwent a vasectomy and took steroidal epidural injections less than a year before refusing the COVID-19 vaccine, both of which Schilling confirmed would be violations of CUW's tenets. SUF 41, 42, 43. Indeed, Dunbar claims that he has communicated with God who has made exceptions to the "tenets of [his] beliefs and permitted [him] to act differently." *See* Dunbar Decl. ¶ 11. He states that the CUW first "appealed to [him] because it advocate[s] direct communication with God," and explains that in the case of his vasectomy, God told him it was "okay to proceed with the procedure to save [his] wife's life," and God purportedly has made other similar exceptions to CUW tenets in other conversations with Dunbar. *Id.* ¶ 12. According to Dunbar, God also told him "that the COVID-19 vaccine was made from evil and that it will compromise [his] spirit and that it was not for [him]." *Id.* ¶ 14. These seeming inconsistencies are even more notable since Dunbar's original request for accommodation only mentioned unspecified medical issues, not any sort of religious objection. *See* SUF 11–13. Additionally, Schilling testified that CUW members are not excused from its tenets even if they claim that God gave them permission to do so. *See* Schilling Depo. Tr. (1st) at 16.

Courts have rejected Title VII claims where claims of direct communications with God—which cannot be corroborated—would amount to a "blanket privilege that

undermines our system of ordered liberty" and may "serve as a limitless excuse for avoiding all obligations" if "taken to its logical extreme." *See Ellison v. Inova Health Care Servs.*, -- F. Supp. 3d --, 2023 WL 6038016, at \*5 (E.D. Va. Sept. 14, 2023) (internal quotation marks, ellipses, and citations omitted); *see also Doe v. San Diego Unified School District*, 19 F.4th 1173, 1180 (9th Cir. 2021) ("[A]lthough Title VII prohibits employment discrimination based on religion, an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not truly religious in nature or is not sincerely held, or on the ground that such an exemption would pose an 'undue hardship' by burdening 'the conduct of the employer's business' through increasing 'the risk of the spread of COVID-19 to other employees or to the public.'") (citation omitted)); *Detwiler v. Mid-Columbia Med. Ctr.*, 2023 WL 7221458, at \*4–5 (D. Ore. Sept. 13, 2023) ("[C]ourts have generally been hesitant to find broad statements of religious opposition sufficient to state a viable claim.").

As the Supreme Court has observed in the First Amendment context, "[t]he determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task." *See Thomas v. Rev. Bd. Of Indiana Employment Sec. Div.*, 450 U.S. 707, 714 (1981). And so it is here. Defendants identify evidence that seems to undermine the sincerity of Dunbar's religious beliefs, but Dunbar has also presented evidence that suggests—under a lower than preponderance burden—that his beliefs are strongly held and genuine nonetheless.

Viewing the evidence in the light most favorable to Dunbar as this Court must under the summary judgment standard, there are material factual disputes as to the existence of a Title VII *prima facie* case that preclude summary judgment.

### ii. FEHA

Under FEHA, the inquiry focuses more on the substance of an individual's claimed religious beliefs rather than the role those beliefs play in the individual's life. Courts in the Ninth Circuit use three "guideline" factors to help determine if a given belief

constitutes a "religion," for FEHA purposes.  *See Friedman*, 102 Cal. App. 4th at 69 (citing *Africa v. Com. of Pa.*, 662 F.2d 1025, 1032 (3rd Cir. 1981)).  These guidelines (the "*Africa* Factors") include:  (1) whether the belief addresses fundamental questions relating to "deep and imponderable matters," (2) whether the particular belief at issue is part of a comprehensive system, and (3) whether the belief system has "formal and external" signs that are recognizable as a religion.  *Id.*

Dunbar's evidence satisfies the first *Africa* factor.  The tenets of the CUW as presented by Dunbar appear to address fundamental, "deep and imponderable" questions.  For example, the CUW Purpose Statement submitted by Dunbar states that an "upheaval of the morals and inferiority of human values" [sic] has resulted in a "sick and decaying society" and that can only be redeemed by "a blending of Universal Intelligence with man's innate mind" such that "the free and unimpeded flow of life energy" shall be "maintained."  *See* Oct. 4, 2021 Accommodations Request at 90.

Dunbar also presents evidence that satisfies the second *Africa* factor.  There appears to be a comprehensive and organized system of CUW followers with a formal membership process, as demonstrated by Dunbar's Certificate of Membership and accompanying documents, as well as the deposition testimony of Walter P. Schilling, CUW's Rule 30(b)(6) representative.  *See* SUF 26, 28; Dunbar Depo. Tr., Ex. 15 (CUW membership application dated Oct. 1, 2021) at 95–97; *see generally* Rodriguez Decl., Ex. G (excerpts from certified deposition transcript of Walter P. Schilling) [Doc. # 99-12 ("Schilling Depo. Tr. (1st)")].

Dunbar's FEHA claim fails, however, on the third *Africa* Factor.  There is no evidence that CUW has any services, ceremonies, or holidays as would characterize traditional religions.  *See, e.g.*, Decl. of Rockmond Dunbar ISO Opp. ¶¶ 7–10 (describing scope and practice of CUW beliefs without mention of any specific rituals) [Doc. # 100-3 ("Dunbar Decl.")].  In his deposition, Schilling denies that the purpose of the CUW was to "develop a pathway" for individuals to avoid vaccinations but concedes that it has "turned out" that way.  *See* Suppl. Rodriguez Decl. ¶ 3, Ex. I (Schilling Depo. Tr. (2d)) at

20 [Doc. # 102-1].   Even in his own Opposition and Supplemental briefs, Dunbar provides examples from *other* religions that might ostensibly satisfy this factor, but not from the CUW.   *See* Opp. at 19–20; Pl.'s Suppl. Br. at 19–20 ("As to the third *Africa* factor, Dunbar has also attended the Agape International Spiritual Center . . . maintains a home altar with idols of his deities, and he practices Yoruba chants and 'candle work.'").

Even viewing the facts in the light most favorable to Dunbar, he does not meet his burden to defeat summary judgment on this claim.   The Court therefore **GRANTS** summary judgment to Defendants on Dunbar's FEHA claim for religious discrimination for failure to establish a *prima facie* case.

### b. Efforts to Accommodate

#### i. Interactive Process

Assuming Dunbar has established a *prima facie* Title VII case of failure to accommodate his religious beliefs as a follower of the CUW, the burden shifts to Defendants to show that they initiated good faith efforts to engage in the interactive process or that they could not do so due to undue hardship.   *See O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1309 (D. Haw. 2022) (citing *Peterson*, 358 F.3d at 606).   The interactive process is a "two-way street," requiring each side to contribute to the efforts to come up with a mutually agreeable accommodation.   *See* MSJ at 21–22; Reply at 16–18; *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (citation omitted) (noting that "bilateral cooperation is appropriate" in the Title VII interactive process); *E.E.O.C. v. AutoNation USA Corp.*, 52 Fed. App'x 327, 329 (9th Cir. 2002) ("This court has recognized that 'Title VII is premised on bilateral cooperation.'") (quoting *Am. Postal Workers Union v. Postmaster Gen.*, 781 F.2d 772, 777 (9th Cir. 1986)); *cf. Weeks v. Union Pac. Railroad Co.*, 137 F. Supp. 3d 1204, 1217 (E.D. Cal. 2015) (In the Americans with Disabilities Act context, "[o]nce an employee requests an accommodation, the employer must engage in an interactive process with the

employee to determine the appropriate reasonable accommodation.") (internal quotation marks and citation omitted).[5]

An employer must offer a reasonable accommodation, but the employee also has a duty to cooperate in the accommodation process. *See Bartholomew v. Washington*, -- F. Supp. --, 2023 WL 6471627, at *4 (W.D. Wash. Sept. 21, 2023) (citations omitted); *see also Heller*, 8 F.3d at 1440–41 (the "employee has a correlative duty to make a good faith attempt to satisfy his needs" after employer takes initial step towards accommodation) (citations omitted); *see also* 29 C.F.R. § 1605.2 (describing duty to accommodate and providing examples of common reasonable accommodations).   Much of the evidence presented shows that Defendants attempted to initiate the interactive process with Dunbar, but it is murkier as to whether Nguyen was responding solely to his claimed medical exemption, rather than the religious exemption which was raised even more belatedly.   The dispute began when Dunbar did not respond to Defendants' clear instructions as to how to request an accommodation and the deadline by which to do so. *See* SUF 5, 17, 34; *see also* Sept. 14, 2021 Email.  Marissa Crisafulli, Health and Safety Manager for 9-1-1 at the time, affirmatively reached out to Dunbar's management on September 21, 2021, two weeks before the vaccination deadline, after realizing he had not verified his vaccination status nor advised anyone of a need for accommodation. *See* Decl. of Marissa Crisafulli ISO MSJ ¶¶ 7–8 [Doc. # 99-4 ("Crisafulli Decl.")], Ex. A (Sept. 21, 2021 Email) at 6.  In this email she stated, "please let us know if this will be an issue, I'm happy to discuss." *Id.*  Dunbar did not respond to that email. *Id.*

Over a week later, he emailed his doctor's note to Nguyen, who responded with a request for more information and the blank Accommodations Request Form. *See* Sept. 30, 2021 Nguyen Email at 84–85.  Nguyen shared that the request's late submission

---

[5]  In *Groff v. DeJoy*, 600 U.S. 447 (2023), the Supreme Court declined to incorporate ADA reasonable accommodation caselaw into the Title VII standard in religious discrimination cases, but it can still be "instructive" in certain circumstances. *See Zimmerman v. PeaceHealth*, -- F. Supp. 3d --, 2023 WL 7413650, at *5 (W.D. Wash. Nov. 9, 2023).

-13-

likely meant there would be an issue processing it in time, but still followed up on the same day to inform him the doctor's note was insufficient and she needed more information to process his request.  *See* Dunbar Depo. Tr., Ex. 13 at 88; SUF 6.

When he finally responded—on the day of the October 4 deadline to receive a vaccination—he included (for the first time) a letter about his membership in the CUW and merely re-submitted the doctor's note that Nguyen had previously told him was insufficient.  *See* SUF 17–20.  After that, Nguyen said she needed "to speak with him further to fully understand" his request for a religious accommodation.  *See* Correspondence re:  Requested Accommodations at 99.  Dunbar responded, via his representative Ray Moheet, with an additional letter from Schilling, the CUW Minister, and indicated that all further communications would either have to be in writing or with a lawyer or representative present.  *See id.*  His response also indicated that he felt he had already "submitted all necessary and requested information in writing pertaining to my faith" and he was "uncertain of what line of discussions" would be helpful from there.  *Id.* at 47.  He included a letter from his minister, explaining that he "would think that any further questions that may have arisen are now answered."  *Id.*  This response did not seem to invite further interactive exploration of Dunbar's request for accommodation.

The next day, on October 5, both Cohen and Moheet attempted to get in touch with Nguyen.  *Id.* at 98 (email from Cohen to Nguyen requesting call); Decl. of Ray Moheet ISO Opp. ¶ 9 (describing October 5, 2021 voicemail to Nguyen) [Doc. # 100-2 ("Moheet Decl.")].  Nguyen did not speak with Cohen or Moheet directly via telephone, but responded to them via email later that day, informing Dunbar he would not be able to return to 9-1-1.  Nguyen Decl., Ex. J at 46 [Doc. # 99-3].  In that email, Nguyen clearly expressed that she interpreted his communication as an "unwillingness" to engage in the interactive process with respect to his religious beliefs.  *Id.*; *see also* Nguyen Decl. ¶¶ 22, 24, 30 (echoing that understanding).  Norman Aladjem, another of Dunbar's managers, also wrote to her on October 5 to request a phone call "ASAP."  *See* Rodriguez Decl., Ex. E (Nguyen Depo. Tr.) at 44 [Doc. # 99-10].  Nguyen did not respond to the

1  correspondence from Cohen, Moheet, or Aladjem that day due to the advice of counsel
2  and her understanding that Assistant General Counsel, Tanya Menton, was corresponding
3  directly with Dunbar's counsel.  *See* Nguyen Decl. ¶ 27.

4    This is the part of the chronology for which the record raises genuine disputes of
5  material fact as to whether Dunbar's actions indeed reflected that he would no longer
6  engage in good faith in the interactive process as to his religious accommodation.  The
7  next email between Dunbar and Nguyen is from October 12, on which date he emailed
8  Nguyen to express that he wanted "to make it clear" that he was "available to have a
9  discussion" about his Accommodations Request.  *See* Nguyen Decl., Ex. K (Oct. 12,
10  2021 Emails) at 51.

11    From there, the record reflects that Nguyen continued to engage with him directly
12  with respect to his medical exemption, but not necessarily as to his religious beliefs.  She
13  wrote him again on October 14 with a list of questions she would need him to answer to
14  evaluate his medical accommodation request.  *Id.*, Ex. L (Oct. 14, 2021 Email) at 53.
15  When he responded to her questions, he did not provide any of the substantive details she
16  had requested.  *Id.* at 59.  She even specified exactly what information she would need on
17  an updated doctor's note, and he provided a "new" note repeating the exact same
18  information that had previously been deemed inadequate.  *Id.*, Ex. M (Oct. 15, 2021
19  Emails), Ex. N (Second Dr. Penick Note) at 63, 65.  After reviewing the updated note,
20  she attempted to arrange contact directly between the Company physician and Dunbar's
21  doctor in case that would be easier for Dunbar.  *Id.*, Ex. O at 71–72.  Their final
22  correspondence is from October 29, 2021, in which Nguyen requested that Dunbar
23  authorize Dr. Penick to disclose his confidential medical information to the Company
24  physician.  *Id.*  He never responded or gave his doctor that authorization to help facilitate
25  the interactive process.  Nguyen waited nearly two weeks before sending him a
26  determination that his requested accommodations could not be granted without further
27  information.  *Id.*, Ex. P (Nov. 10, 2021 Email) at 81.  Dunbar failed to respond to
28  Nguyen's last email, and on November 10 she sent him official correspondence from

Employee Relations informing him that she was unable to conclude that he was prevented from receiving the vaccine for medical or religious reasons.  Nguyen Decl. ¶ 34.  He did not respond to that letter or indicate any further desire to engage in the interactive process.

Viewing the evidence in the light most favorable to Dunbar, there are triable issues of fact as to whether Defendants' actions in response to his October 4, 2021 email failed to reflect a good faith effort to engage in the interactive process with regard to Dunbar's religious beliefs.

### ii.   Existence of a Reasonable Accommodation

It is not clear from the record if there was any mutually agreeable reasonable accommodation that could have been implemented in Dunbar's case, had the parties engaged in a fulsome interactive process.  *See* 29 C.F.R. §§ 1605.2(b) (it is a Title VII violation "for an employer to fail to reasonably accommodate" an employee's religious practice "unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business.").  In the context of claimed religious exemptions from COVID-19 vaccination requirements, district courts have concluded that the increased risk of COVID-19 exposure and transmission for a plaintiff's co-workers can be "undue hardship" for Title VII purposes.  *See, e.g., MacDonald v. Ore. Health & Science Univ.*, -- F. Supp. 3d --, 2023 WL 5529959, at *7 (D. Ore. Aug. 28, 2023); *O'Hailpin*, 583 F. Supp. 2d at 1309.

There is sparse record evidence of any meaningful discussion of potential accommodations other than a wholesale exemption from the vaccine requirement, although at one point Dunbar's agent sent him a list of alternatives that seems to have come from Defendants.  *See* Moheet Decl., Ex. B (email communication re: potential accommodations) at 8–9.  The Court notes, however, that one of the provisions is that "[a]t no time may an unvaccinated actor be on set with a minor under age 12."  *Id.*  In September 2021, the 9-1-1 cast included five minors, three of whom were under the age

of 12 and for whom the COVID-19 vaccine was not yet available.  *See* MSJ at 9.  One of those three played his child on the show.  *Id.*

There is therefore also a genuine dispute of material fact as to whether Dunbar's requested vaccine exemption—or any other accommodation—could have been possible, or whether it would have caused "undue hardship" to Defendants, particularly with respect to the minors working on 9-1-1's set.  *See Groff*, 600 U.S. at 472–73 (legitimate hardships to coworkers due to religious beliefs may qualify as "undue hardship" in Title VII case); *see also* 29 C.F.R. §§ 1605.2(b), (c).

Defendants' MSJ is **DENIED** as to Dunbar's failure to accommodate religious discrimination claim under Title VII, because there are triable issues of fact as to whether Dunbar's religious beliefs were sincerely held, who bore responsibility for the breakdown of the interactive process, and whether a reasonable accommodation without undue hardship was available had the parties in fact engaged in the interactive process.

### 2.  Disparate Treatment

To defeat summary judgment on a disparate treatment claim for religious discrimination, Dunbar must establish a *prima facie* case that:  (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.  *See Peterson*, 358 F.3d at 603.

#### a.  Rule 56(d) Continuance Request

One of the issues on which the Court requested supplemental briefing was Dunbar's "Rule 56(d)" continuance request based on his purported inability to obtain evidence about other individuals who had submitted vaccine exemption requests.  *See* Opp. at 25–26; Defs.' Suppl. Br. at 3–5; Pl.'s Suppl. Br. at 4–6; Fed. R. Civ. P. 56(d).  A Rule 56(d) Request allows the non-moving party to defer the Court's ruling on a summary judgment motion until that party can obtain additional discovery to adequately oppose it.  *See Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678–79 (9th Cir. 2018).  The

party requesting a Rule 56(d) continuance must show that:  (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.  *Id.* (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)) (cleaned up); *see also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (a party requesting a Rule 56(d) continuance must identify "specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.") (citations omitted).  It also must show that it "diligently pursued its previous discovery opportunities" and is not using the mechanism for the proverbial "second bite of the apple."  *See Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1118 (9th Cir. 1999); *see also Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989) (explaining that party seeking Rule 56(d) continuance is not entitled to additional discovery "if it fails diligently to pursue discovery before summary judgment"); Reply at 19–20.  Here, Dunbar seeks the additional information to prove the his disparate treatment religious discrimination claim.  Opp. at 25–26; Defs.' Suppl. Br. at 3–5; Pl.'s Suppl. Br. at 4–6.

Originally, the discovery period in this case was set to expire on June 13, 2023, but on May 1, the Court approved the parties' stipulation for an extension of the deadline to October 17.  [Doc. # 73.]  On July 25, 2023, Dunbar filed a motion to compel information pertaining to other employees subject to the September 2021 COVID-19 vaccination mandate as to which Nguyen served as the decisionmaker regarding medical/religious accommodation requests.  [Doc. # 81 ("MTC").]  The Magistrate Judge deferred ruling on the motion until the parties had met and conferred and agreed to a sampling of such potentially voluminous discovery.  [Doc. # 95.]  The parties were unable to agree to a sampling and referred the matter back to the Magistrate Judge for determination.  [Doc. ## 96–98.]  Thereafter, the Magistrate Judge did not issue a further ruling on the matter. The October 17, 2023 discovery cut-off came and went without any effort by either side to extend the deadline.  *See* Defs.' Suppl. Br. at 3.

Dunbar did not properly comply with Rule 56(d)'s procedural requirements, and thus his request must be denied on that basis alone.  Courts have held that "[f]ailure to comply with Rule 56(d)'s requirements 'is a proper ground for denying discovery and proceeding to summary judgment.'"  *Rocky Mountain Biologicals, Inc. v. Microbix Biosystems, Inc.*, 986 F. Supp. 2d 1187, 1201 (D. Mont. 2013) (quoting *Family Home and Finance Center, Inc.*, 525 F.3d at 827).  Indeed, the Ninth Circuit has specifically held that Rule 56(d) requests need to be made by a proper motion, rather than just as part of the Opposition to a summary judgment motion.  *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) (affirming district court's denial of Rule 56(d) request where it was raised in summary judgment opposition brief and admonishing that "[f]ailure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment."); *see also Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 751 (9th Cir. 2001) (same); *In re Cardtronics ATM Fee Notice Litig.*, 874 F. Supp. 2d 916, 927 (S.D. Cal. 2012), *aff'd*, 559 F. App'x 633 (9th Cir. 2014) (same).  Here, Dunbar failed to file a separate Rule 56(d) motion in the first round of briefing, and did not even include the required affidavit in either his MSJ Opposition or his supplemental briefing.  *See* Defs.' Suppl. Br. at 2.

But even if Dunbar had followed the proper procedural requirements, he did not demonstrate due diligence in preserving his right to discovery.  He does not address Rule 56(d)'s diligence requirement in his supplemental brief, even after it came up as an issue at the hearing.  It is unfortunate that he never received a ruling on his motion to compel, but he does not provide any explanation for why he failed to move or stipulate to extend the discovery deadline before it expired.  This does not reflect diligence on his part with respect to the discovery sought.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992) (Rule 16(b)'s "good cause standard" to amend a scheduling order requires diligence of party seeking amendment).  This situation is unlike the facts of *Garrett v. City and Cnty. of San Francisco*, in which the summary judgment motion was filed long before the end of the discovery cutoff, and the non-moving party had

moved to compel discovery and extend the discovery cutoff in response to the MSJ. *See* 818 F.2d 1515, 1518–19 (9th Cir. 1987). In *Garrett*, the panel reversed the District Court's decision to deny the discovery motion as "moot" after granting the MSJ, without considering it on the merits. *Id.* Unlike the plaintiff in *Garrett*, Dunbar failed to timely preserve his discovery rights before the cutoff. *See* Pl.'s Suppl. Br. at 5. Dunbar's Rule 56(d) request is therefore **DENIED**, and Dunbar's pending MTC is **DENIED as moot**.

### b. Merits of Claim

On the merits of this claim, Dunbar cannot even meet his "minimal" burden to establish his *prima facie* case. *See Wallis*, 26 F.3d at 889. First, the record does not reflect the existence of any similarly-situated individuals. *See* Nguyen Decl. ¶ 25 ("Dunbar was the only actor on 9-1-1 who submitted a request for exemption or accommodation to the 9-1-1 Vaccine Mandate in September or October 2021"). Defendants' active attempts to ensure Dunbar's compliance with the vaccine mandate began before they knew anything about a claimed religious exemption. *See* Sept. 21, 2021 Email at 6.

There is no evidence that Defendants took action against Dunbar based on a discriminatory animus in response to his religious beliefs. Since Dunbar bears the burden of proof at trial, to prevail on summary judgment Defendants need only show the absence of evidence supporting his case, or that he has insufficient evidence to carry his ultimate burden of persuasion at trial. *See Celotex*, 477 U.S. at 325; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To establish a *prima facie* case of discrimination, a plaintiff must provide some evidence that "give[s] rise to an inference of unlawful discrimination." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). Dunbar has not done so here.

In short, there is not even a scintilla of evidence of religious discrimination. Dunbar has presented no additional evidence of similarly-situated individuals who were treated more favorably than he. As such, the Court **GRANTS** summary judgment to

Defendants on the claim for disparate treatment based on religion.  *See* Opp. at 25–26; Fed. R. Civ. P. 56(d).

**B.    Race Discrimination (Claims 3 and 6)**

Dunbar's race discrimination claims are evaluated by way of the same burden-shifting framework as his religious discrimination claim.  *See supra* Part IV.A.1; *see also McDonnell Douglas Corp*, 411 U.S. at 803; *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 353–56 (2000).

Dunbar's race discrimination claims are theories in search of facts, which is perhaps why he dedicates only a single paragraph to them in his Opposition.  *See* Opp. at 29.  Nguyen testified that she had not seen an episode of 9-1-1, did not know who Dunbar was, and was not aware of his race or ethnicity at the time of their correspondence about the vaccine mandate.  SUF 33.  Significantly, Dunbar himself testified that he did not know if Nguyen was even aware of the color of his skin or racial identification at the time of their correspondence.  *Id.*  His one fragment of "circumstantial evidence," Nguyen's purportedly different treatment of the religious accommodation request of a white employee, is insufficient and unpersuasive on its own because (1) there is no evidence that Nguyen was aware of that employee's race, and (2) there is no evidence that the white employee received an accommodation.  *See* Reply at 23; Decl. of Mason Barney ISO Opp., Ex. B (Exhibit 67 to certified transcript of deposition of Erin Nguyen, prior sworn testimony regarding white employee's religious accommodations) at 92–194 [Doc. # 100-4 ("Barney Decl.")].

Even if he had established a *prima facie* case, Dunbar's claims still fail because he has no evidence of pretext.  There is no credible dispute that Defendants offered a legitimate, non-discriminatory reason for finding Dunbar in breach of the Agreement and terminating him—his non-compliance with the mandatory vaccine policy is a legitimate, non-discriminatory reason.  *See* SUF 35; Correspondence re:    Requested Accommodations at 98.  And he does not put forth any evidence of pretext or any link whatsoever between Defendants' adverse employment actions  and his race.

1    In short, Dunbar has not produced any specific and substantial evidence creating a
2    genuine issue of material fact as to any aspect of his race discrimination claims. *See*
3    *Celotex*, 477 U.S. at 325. Therefore, the Court **GRANTS** summary judgment to
4    Defendants. *See* Opp. at 25–26; Fed. R. Civ. P. 56(d).

5    **C.    Retaliation (Claims 4 and 7)**

6    To establish a *prima facie* case of retaliation, Dunbar must establish that he (1)
7    engaged in protected activity; (2) his employer subjected him to an adverse employment
8    action; and (3) there is a causal link between the protected activity and the employer's
9    action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

10    Once again, there is no evidence that Nguyen had any ulterior motive or based her
11    decision on anything other than the terms of the vaccine mandate and the required
12    evidence to support requests for accommodations. *See* SUF 10–13; *cf. Celotex*, 477 U.S.
13    at 325. It was Fox's determination that Dunbar breached the Agreement that caused his
14    termination. *See* SUF 35.

15    While temporal proximity can sometimes support an inference of retaliation, it
16    does not do so here. There is undisputed evidence that Defendants advised Dunbar he
17    was in breach of the Agreement on October 5, 2021, weeks before his counsel even sent
18    the demand letter that he claims to have been the basis of retaliation against him. *See*
19    SUF 32; Barney Decl., Ex. H (Nov. 1, 2021 Letter re Accommodation Requests) at 341–
20    390; Dunbar Depo. Tr., Ex. 24 (Nov. 10, 2021 Letter Terminating Agreement) at 102; *cf.*
21    SAC ¶¶ 168–70, 203. His retaliation claim therefore fails as a matter of law, and the
22    Court **GRANTS** summary judgment. *See Clark Cnty. School Dist. v. Breeden*, 532 U.S.
23    268, 272 (2001) (rejecting retaliation claim where adverse action occurred *before*
24    employer was made aware of protected activity).

25    **D.    Confidential Medical Information (Claims 8 and 9)**

26    Confidential medical information disclosed to employers is protected by state and
27    federal law. *See* 42 U.S.C. § 12112(d); Cal. Civ. Code § 56.20. Dunbar claims that
28

Defendants leaked information online regarding his requests for accommodation to *Deadline*. SAC ¶¶ 212–29.

There is no evidence in the record supporting Dunbar's claims that Defendants disseminated any of his confidential medical information. *See Celotex*, 477 U.S. at 325. The entire basis of these claims appears to be the deposition testimony of his agent, Cohen, in which she speculates that she "do[esn't] exactly know" how *Deadline* got the scoop about Dunbar's departure, but that it "would [not] have been hard to find out by her doing some digging or talking to somebody at Fox or somebody on the show or somebody in production. I think everybody knew at that point." *See* Cohen Depo. Tr. at 24. According to Dunbar, the fact that Dunbar's agents did not share this information "naturally means" that someone at Fox leaked Dunbar's confidential information to Deadline. Opp. at 30. That logic is questionable at best, and Dunbar has not produced any evidence supporting that assertion. *See* MSJ at 28–30. Summary judgment is **GRANTED** on these claims.

**E.     Breach of Written Contract (Claim 10)**

The well-established elements for breach of contract under California law are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

The Agreement in this case is between Fox and Epiphany, not Dunbar. SUF 1. But even assuming, *arguendo*, that Dunbar has standing to bring this claim as a third-party beneficiary, there is no dispute that the Agreement required Dunbar to perform services "pursuant to [Fox's] customary requirements" and "consistent with Fox's reasonable directions, practices and policies that reasonably relate to the services being provided . . . ." *See* MSJ at 31; Dunbar Depo. Tr., Ex. 3 (Agreement) at 71 [Doc. # 99-6].

Dunbar argues that the vaccine requirement was "unreasonable" as applied to him, and thus Fox breached the contract. *See* Opp. at 28–29. But to the extent he claims to have not understood how to request an accommodation, it is undisputed that he received

-23-

instructions to do so on September 14. SUF 10. Even if Dunbar and Nguyen had engaged in a meaningful interactive process, Dunbar's request for accommodation came late and could not have been processed by the deadline on which the television production was to begin. SUF 4, 6, 10, 11. And it could not have been unreasonable for Defendants to adopt the vaccine requirement itself since it was adopted pursuant to the binding Collective Bargaining Agreement. *See* Reply at 27. On this record, no reasonable juror could possibly conclude that Defendants' vaccine requirement was unreasonable as applied to Dunbar, and the Court **GRANTS** summary judgment.

**F.    Breach of Implied Covenant of Good Faith and Fair Dealing (Claim 11)**

There is an implied covenant of good faith and fair dealing embedded in every contract. *See Guz*, 24 Cal. 4th at 326; *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988) (citing Restatement (2d) Contracts § 205). This claim has the same elements as a claim for breach of contract, except that instead of showing that the defendant breached a contractual duty, the plaintiff must show that defendant deprived him of a benefit conferred by the contract. *See Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 1002 (N.D. Cal. 2015) (citation omitted); *see also Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 832 (N.D. Cal. 2020) (same). Since Dunbar has not put forth evidence that Defendants deprived him of a benefit conferred by contract, summary judgment is also **GRANTED** on this claim.

**G.    Punitive Damages**

In order to recover punitive damages on his Title VII claim, Dunbar must prove by a preponderance of the evidence that Defendants "intentionally 'engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Wash. v. Horning Bros., LLC*, 339 F. Supp. 3d 1106, 1134 (E.D. Wash. 2018) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)); 42 U.S.C. § 1981(a). Here, there is a genuine dispute of fact as to whether Nguyen adequately followed up on his religious accommodation request, but it is undisputed that she continued to work with him in good faith on his medical exemption

request, which would have achieved the same result. *See supra* Section IV.A.1.b.i. Nguyen testified that she felt that Dunbar was not "willing to participate in a two-way interactive dialogue regarding his religious beliefs," and that "[n]one of the information shared through Dunbar's counsel established a sincerely-held religious belief precluding vaccination," and there is no record evidence that undermines either of those statements regarding her state of mind. *See* Nguyen Decl. ¶¶ 35–36. Dunbar does not have any evidence that Nguyen (or anyone else) acted with malice or recklessness with respect to his claimed religious exemption. Courts may deny summary judgment on a Title VII claim without also denying it as to the claim for punitive damages. *See* Reply at 29 (citing *Taylor v. ScottPolar Corp.*, 995 F. Supp. 1072, 1078 (D. Ariz. 1998); *see also Pearson v. Reynolds Sch. Dist. No. 7*, 998 F. Supp. 2d 1004, 1022 (D. Ore. 2014)). Defendants' MSJ as to Dunbar's punitive damages claim is **GRANTED**.

## V.
## CONCLUSION

In light of the foregoing, the Court **GRANTS** the MSJ as to all of Dunbar's claims, except the Title VII claim for failure to provide religious accommodations. Specifically, the issues that will proceed to trial are: (1) whether Dunbar had a sincerely held religious belief within the meaning of Title VII; (2) whether Defendants failed to engage in the interactive process; and (3) whether any reasonable accommodation would actually have been available to Dunbar without undue hardship to Defendants. Dunbar's motion to compel [Doc. # 81] is **DENIED as moot**.

By **March 22, 2024,** the parties shall meet and confer and file a Joint Status Report proposing a mutually agreeable trial date.

**IT IS SO ORDERED.**

DATED: March 8, 2024

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE