UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 1 of 16 |
|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, CHIEF UNITED STATES DISTRICT JUDGE

| DEREK DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS—ORDER RE PARTIES' MOTIONS *IN LIMINE* [136]
[137] [143] [149] [150] [151] [155] [156] [157] [158] [159] [160] [169] [170]
[176]**

The parties have filed their respective motions *in limine* ("MILs").  Plaintiff Rockmond Dunbar filed six MILs, and Defendants Twentieth Century Fox Film Corporation and American Broadcasting Companies, Inc., opposed all.  [Doc. ## 155, 156, 157, 158, 159, 160, 176; 204, 205, 206, 207, 208, 209.]  Defendants filed six MILs, which Dunbar opposed.  [Doc. ## 136, 137, 143, 149, 150, 151, 169, 170, 180; 196, 197, 198, 199, 200, 201.]  The Court held a hearing on February 11, 2025.

Having duly considered the parties' written submissions and oral argument, the Court issues the following rulings.

**I.
DISCUSSION**

**A.      Defendants' MIL No. 1 [Doc. ## 169, 170, 179, 180]**

Defendants' MIL No. 1 seeks to preclude Dunbar from introducing any testimony or evidence, or making any argument, comment, or reference concerning the sincerity of Dunbar's professed religious beliefs in the Church of Universal Wisdom ("CUW"), and/or to preclude any testimony or evidence to rebut that Dunbar was receiving synthetic testosterone injections and ingesting anastrozole,[1] or issue terminating sanctions pursuant to the court's inherent authority, or

---

[1] On December 3, 2024, the Court granted *provisionally* Dunbar's applications to seal until the Court determined whether Dunbar's medical records should be admissible at trial.  [Doc. # 164.]  In light of the Court's denial of Dunbar's MIL No. 3 to exclude all of his medical records, *see infra* Part I(G), and considering how pivotal Dunbar's synthetic testosterone injections and anastrozole are to a highly disputed issue in this case, the sincerity of Dunbar's beliefs, there are no longer compelling reasons to seal this information.  That information is therefore ordered **UNSEALED**.  *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  Additionally,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | | Date | February 24, 2025 |
|---|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 2 of 16 |
|---|---|---|---|

issue an adverse finding that Dunbar did not have a sincerely held religious belief or that Dunbar failed to disclose this evidence because it is adverse to his claim.  [Doc. ## 169 at 2, 170 at 2.]

### 1.    Factual Background

In the Court's Summary Judgment Order, it identified three issues that would proceed to trial on Dunbar's Title VII claim, one of which is whether Dunbar had a sincerely held religious belief within the meaning of Title VII.  [Doc. # 121 ("MSJ Ord.") at 25.]  Dunbar's primary argument in this dispute is that due to his membership in the CUW he could not receive the COVID-19 vaccine.  MSJ Ord. at 9.  Defendants, in turn, contest the sincerity of Dunbar's CUW belief with evidence of other actions that contradict this belief, including Dunbar's prior vasectomy and steroidal epidural injections.  *Id.*  Defendants have accordingly sought discovery relating to Dunbar's medical history from the inception of this case.  [Doc. # 169-1 at 3.]

In as early as October of 2022, Defendants propounded relevant discovery, to which Dunbar served "objection only" responses.  *Id.*  Defendants' Interrogatories and Document Requests included specific requests for information regarding Dunbar's medical treatments, pharmacies, prescription medications, and medical practitioners.  *Id.* at 4.  After months of meeting and conferring, Defendants served Dunbar with a motion to compel under C.D. Cal. Local Rule 37-1, and Dunbar responded with a clearly deficient verified response identifying only a few providers in Georgia and chiropractors.  *Id.* at 4.  Defendants demanded Dunbar supplement his responses and Dunbar provided eight more medical providers.  *Id.*  Defendants then had to demand Dunbar supplement his responses once more and Dunbar identified eight more medical providers. *Id.* at 5.

In May of 2022, Defendants served Dunbar with a motion to compel, which prompted Dunbar to serve verified responses identifying 13 medical providers.  *Id.*  Defendants again demanded Dunbar supplement, Dunbar served additional supplemental responses, and Defendants began to subpoena the providers Dunbar disclosed.  *Id.*  At Dunbar's deposition in August of 2023, Defendants asked Dunbar to supplement his responses and disclose additional undisclosed medical providers, which Dunbar acknowledged and agreed to supplement—but did not do so.  *Id.*

On their own, due to Dunbar's deficient discovery responses Defendants subpoenaed **50** medical providers to obtain medical records Dunbar did not disclose.  *See Id.* at 4; Decl. of Maria

---

Dunbar's failure to object to Defendants' reference to synthetic testosterone and anastrozole in public filings constitutes a waiver of any objections he may have had.  *See* Doc. ## 202 at 2 (filed January 24, 2025), 203 (Reply by Dunbar).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 3 of 16 |
|---|---|---|---|

C. Rodriguez ISO Defendants' MIL No. 1 ("Rodriguez Decl.") at ¶ 8 [Doc. # 179 at 4]. Through this process, Defendants discovered **44** providers Dunbar failed to disclose at all—notably Dr. Fong at "The Man Clinic" who provided regular subcutaneous injections of synthetic testosterone and anastrozole (a chemotherapy drug that prevents growth of breast tissue, used to counteract the potential side effects of the synthetic testosterone) on a weekly or biweekly basis for years. Doc. # 169-1 at 2, 3; Rodriguez Decl. at ¶ 10. Defendants discovered Dunbar's synthetic testosterone injections and anastrozole ingestion through their own medical expert who noticed Dunbar's heightened blood counts in his medical reports. [Doc. # 169-1 at 3.] Defendants' request for sanctions was timely raised on November 26, 2024 in compliance with Court ordered deadlines and a few weeks after their discovery on November 15, 2024. *Id.* at 2.

Dunbar's Opposition and accompanying Declarations shed little light on his repeated failures to disclose. Instead, Dunbar himself claims with little specificity that he did his best to comply and in turn points the finger at Defendants for producing less information and documents overall than him. Decl. of Rockmond Dunbar ISO Opp. Defendants' MIL No. 1 ("Dunbar Decl.") at ¶ 7 [Doc. # 196-2 at 3.] His new counsel, retained after the close of discovery, claims without much basis that it appears prior counsel "did the best they could" and Dunbar testified "fully and transparently." Decl. of Scott J. Street ISO Opp. Defendants' MIL No. 1 ("Street Decl.") at ¶¶ 4, 7 [Doc. # 196-1 at 2, 3]. Indeed, Dunbar's counsel waste most of their Opposition presenting, again, their disagreement with Dunbar's sincerity being an issue at all under the law. [Doc. # 196 at 8–10.]

## 2.    Sanctions Under Rule 37(b)(2) or the Court's Inherent Power

Courts may impose sanctions, including terminating sanctions, for failure to obey an order to provide or permit discovery. *See* Federal Rule of Civil Procedure 37(b)(2). District courts also have "inherent power" to impose sanctions in order to manage their cases, ensure the orderly administration of justice, and enforce compliance with orders. *ChromaDex, Inc. v. Elysium Health, Inc.*, 535 F. Supp. 3d 906, 911 (C.D. Cal. 2021) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). "That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). But a court imposing sanctions pursuant to its inherent power may impose sanctions based only on a finding of either "a willful violation of a court order [or . . .] bad faith." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021).

Although Dunbar's repeated failures to disclose are egregious, they do not rise to the "extreme circumstances," or patterns of extreme willful or bad faith conduct, required to issue terminating sanctions, which is the "most severe penalty." *U.S. for Use & Ben. of Wiltec Guam,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 4 of 16 |
|---|---|---|---|

*Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 603 n.5 (9th Cir. 1988) (citing *Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334, 1338 (9th Cir.1985)).   Indeed, Defendants served a motion to compel on Dunbar but filed no discovery motions, and there is no evidence of spoliation or violation of court orders.   The lack of prejudice to Defendants may be evidenced by Dunbar's recent change of heart about permitting Dunbar's further deposition.   *See* Doc. # 169-1 at 8; Doc. # 196 at 10; Dunbar Decl. at ¶ 8.

The Court declines to issue an adverse inference instruction as said instructions are meant for situations where evidence has been spoliated.   *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (citing *Akiona v. United States*, 938 F.2d 158, 160 (9th Cir. 1991) (explaining the rationale of adverse inference instructions)).

Nonetheless, the Court considers the efficacy of lesser sanctions as deterrents to conduct that abuses the discovery or judicial process.   *See Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 352 (9th Cir. 1995).   Lesser sanctions do not require a finding of bad faith.   *Gen. Atomic Co. v. Exxon Nuclear Co.*, 90 F.R.D. 290, 307 (S.D. Cal. 1981).

Dunbar engaged in repeated obstruction and failure to disclose a large number of medical providers.   *See* Street Decl. at ¶ 7 ("[21 medical providers] is a very high number").   The failure to disclose someone like Dr. Fong at "The Man Clinic" cannot be attributed to mere negligence or forgetfulness.   After all, Dunbar visited Dr. Fong for years on at least a biweekly basis. Furthermore, if Defendants' own medical expert had not independently detected Dunbar's use of synthetic testosterone on the eve of trial, it appears likely—and reasonable to assume when left without any other explanation—that Dunbar would not have cured his failure to disclose an undeniably relevant piece of evidence pertaining to a material factual dispute.   Such conduct must be penalized and deterred.   *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

The Court therefore **GRANTS in part** Defendants MIL No. 1.   Dunbar's synthetic testosterone injections and ingestion of anastrozole, including but not limited to the amount, frequency, time period, and applicable medical provider(s), shall be designated facts to be taken as established for trial.   *See* Fed. R. Civ. P. 37(c)(1)(C); Fed. R. Civ. P. 37 (b)(2)(A)(i); *Gen. Atomic Co. v. Exxon Nuclear Co.*, 90 F.R.D. 290, 308 (S.D. Cal. 1981).   These established facts are just and specifically related to the claim at issue.   *See Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 393 (N.D. Cal. 2012).   In addition, discovery shall be reopened for the sole purpose of permitting Defendants, if they so choose, to redepose Rockmond Dunbar and Dr. Fong regarding Dunbar's treatment with synthetic testosterone and anastrozole.   This limited discovery shall be completed by **June 9, 2025**.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 5 of 16 |
|---|---|---|---|

Defendants shall prepare a concise statement of the aforementioned established facts and shall share it with Dunbar by no later than **June 30, 2025**. Any dispute regarding the accuracy of the proposed established facts shall be presented to the Court via a Joint Status Report by **July 7, 2025**.

**B.      Defendants' MIL No. 2 [Doc. ## 143, 149][2]**

Defendants' MIL No. 2 seeks to preclude Dunbar from introducing any testimony or evidence, or making any argument, comment, or reference concerning Dunbar's alleged religious beliefs outside of those related to the CUW under Federal Rules of Evidence 401, 402, and 403. [Doc. # 149 at 2.] Dunbar opposes first on the ground that the Court and jury may not question the sincerity of Dunbar's beliefs at all, including those related to the CUW, Buddhism, Yoruba, and other religions. [Doc. # 197 at 5.] Dunbar further claims his religious beliefs and practices in Buddhism, Yoruba, and other religions go to the credibility of the sincerity of his CUW-related beliefs. *Id.*

In the Court's Summary Judgment Order, the Court addressed Dunbar's religious beliefs solely relating to his membership in the CUW. MSJ Ord. at 8 n.4. Dunbar did not present a "single piece of evidence that would support any claim that Defendants were aware of his beliefs stemming from Buddhism or Yoruba tradition as a basis for his accommodation request." *Id*. Defendant's knowledge of Dunbar's religious beliefs is necessary to his claim, and there is no mention of his Buddhist or Yoruba beliefs in the SAC or in his request for religious accommodation. Nothing has changed since the Court issued that Order. As to whether the sincerity of Dunbar's non-CUW beliefs lends credibility to Dunbar's CUW-related beliefs, the Court finds that any nominal probative value is substantially outweighed by a danger of jury confusion, undue delay, and unfair prejudice to Defendants, and excludes evidence of Dunbar's non-CUW beliefs on that basis. Fed. R. Evid. 403.

Defendants' MIL No. 2 is **GRANTED**.

**C.      Defendants' MIL No. 3 [Doc. # 150]**

Defendants' MIL No. 3 seeks to preclude Dunbar from introducing any testimony or evidence, or making any argument, comment, or reference concerning the dismissed disparate

---

[2] Defendants first filed their MIL No. 2 mislabeled as MIL No. 1. [Doc. # 143.] They subsequently filed a Notice of Errata identifying the error and refiled their MIL No. 2. [Doc. # 148.] The Court will consider the later filed version as the operative version. [Doc. # 149.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 6 of 16 |
|---|---|---|---|

treatment claim based on religion, including evidence relating to vaccine mandates, communications, and the interactive process on other studio productions as well as other individuals under Federal Rules of Evidence 401, 402, and 403. [Doc. # 150 at 2.] Dunbar argues that Defendants' MIL No. 3 seeks to prevent Dunbar from presenting evidence that Defendants were able to accommodate actors who had a religious objection to the COVID-19 vaccination without undue hardship. [Doc. # 198 at 2.] As noted in the Court's prior Order, the record did not reflect the existence of any similarly situated individuals—no other actors on 9-1-1 submitted a request for exemption or accommodation to the vaccine mandate in September or October 2021. MSJ Ord. at 20.

Defendants' undue hardship defense rests on health and safety concerns. *See infra* Part I(G). Evidence of other individuals *on other sets* to whom Defendants granted accommodations involves a highly individualized inquiry tied to the sincerity of that individual's belief, the circumstances of their employment, and the detailed factual timeline of the accommodations process. The probative value of such evidence is substantially outweighed by the dangers of jury confusion, undue delay, and the likelihood of a mini trial as to how those other individuals were treated. *See* Fed. R. Evid. 403. If the Court were to permit this evidence, the jury would become quickly embroiled in lengthy testimony regarding other accommodation requests on completely different sets or shows and all of the back-and-forth exchanges required in the accommodation process. *See, e.g.,* Doc. # 198-1 at 6, *Chavez v. San Francisco Bay Area Rapid Transit Dist.*, No. CV 22-06119-WHA, 2024 WL 4371002, at *4 (N.D. Cal. Oct. 1, 2024). Moreover, the Court did grant Defendants' summary judgment motion on the disparate treatment claim. MSJ Ord. at 20–21. It stands to reason then that Dunbar should not refer to that claim in any way.

Defendants' MIL No. 3 is **GRANTED**.

**D.    Defendants' MIL No. 4 [Doc. # 151]**

Defendants' MIL No. 4 seeks to preclude Dunbar from introducing any testimony or evidence, or making any argument, comment, or reference concerning events and communications post October 28, 2021 or, in the alternative, limiting the testimony of Dunbar's Managers Norm Aladjem and Ray Moheet under Federal Rules of Evidence 401, 402, 403, and 602. [Doc. # 151 at 2.]

Defendants claim the final correspondence between Defendants and Dunbar regarding the interactive process occurred on October 28, 2021. *Id.* Any communications and events following that date, according to Defendants, are not relevant to the issue of liability before the jury. *Id.* Communications between Dunbar and Defendants extended until at least November 10, 2021.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 7 of 16 |
|---|---|---|---|

MSJ Ord. at 6.  Furthermore, Defendants do not identify what specific evidence exists past this temporal cutoff, rendering the Court unable to determine how they relate to Dunbar's claims or damages.  [Doc. # 151-1 at 7.]

Defendants further argue that Aladjem and Moheet should be excluded because the descriptions of their testimony[3] in Dunbar's witness list are cumulative, not relevant since they must be related to the dismissed Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing Claims, and show they lack personal knowledge.  *Id.* at 2–4.   Dunbar opposes on the basis that Aladjem and Moheet have personal knowledge as to direct communications they had with Nguyen throughout the interactive process.  Doc. # 199 at 2.  As Dunbar's managers, Aladjem and Moheet do have personal knowledge of these communications which occurred at different points in Dunbar's accommodations process and are relevant to the remaining Title VII claim.  MSJ Ord. at 14–15, 25.  Defendants' MIL No. 4 is **DENIED**.

E.     **Defendants' MIL to Exclude or Limit Expert Testimony of Dr. Ram Duriseti [Doc. # 136][4]**

Defendants seek to preclude Dunbar from introducing or eliciting any evidence or testimony or, in the alternative, to limit the testimony and opinions of Dunbar's expert witness Dr. Ram Duriseti.  [Doc. # 136 at 2.]  Specifically, Defendants contend Dr. Duriseti's key opinion that Dunbar's COVID-19 testing regime would be a proper accommodation that would not have been unduly burdensome to provide is an improper legal conclusion, and his ancillary opinions on topics such as how COVID-19 vaccines do not reduce the transmission of COVID-19 are unhelpful, irrelevant, and confusing.  [Doc. # 136-1 at 2.]  Dr. Duriseti is a rebuttal witness to Defendants' expert witness Dr. Braunstein.  *See infra* Part I(K).

Under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its progeny,

---

[3] The same description is listed for Norm Aladjem and Ray Moheet.  It states:  "Testimony will include witness's knowledge of the facts and circumstances giving rise to the allegations in Plaintiff's Second Amended Complaint; Plaintiff's work for Defendants and employment history; Defendants' employment practices, procedures, and policies; Defendants' receipt and evaluation of Plaintiff's request for accommodations; Witness's relationship with Plaintiff; Defendant's denial of Plaintiff's request for accommodations; Witness's knowledge of the impact of Plaintiff's discharge from his employment; Defendant's termination of Plaintiff's employment; damages resulting from Defendant's actions; and facts and circumstances opposing Defendant's affirmative defenses."  [Doc. # 151-1 at 2–3.]

[4] Dunbar filed an Opposition which merely requests the Court grant his MIL No. 5 to exclude Dr. Braunstein and deny this MIL as moot.  [Doc. # 201.]

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | | Date | February 24, 2025 |
|---|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 8 of 16 |
|---|---|---|---|

[T]he court must assess [an expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one. Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof . . . . Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (internal quotations and citations omitted). In evaluating expert testimony, "the trial court is 'a gatekeeper, not a fact finder.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).

"An opinion is not objectionable just because it embraces an ultimate issue." Federal Rule of Evidence 704(a). Rule 704, however, does not allow the admission of *all* opinions. *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017). An expert witness "cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Id.* (internal quotations omitted) (emphasis in original).

Here, Dr. Duriseti, M.D., Ph.D., a clinical associate professor at the Stanford Emergency Department, is a practicing Board Certified Emergency Physician, and has a Ph.D. in Operations Research. [Doc. # 136-3 at ¶ 1.] He has 14 COVID-19-related publications (it is unclear whether they are peer-reviewed) and has testified as an expert witness in eight cases. *Id.* at ¶ 2, 56.

Dr. Duriseti's opinions aim to rebut Dr. Braunstein's opinions that vaccines reduce the rate of transmission of COVID-19 and "emerging data show[ing] that they would be key to stopping COVID-19 by reducing the transmission." *Id.* at ¶ 5. Dr. Duriseti posits that Dr. Braunstein "at best provide[s] selective favorable interpretations of incomplete and [flawed] data that supports [his] positions while rejecting similar data widely available that undermine [his] claims." *Id.* at ¶¶ 8, 95, 97. He then walks through his mainly statistics-based critiques of various Pfizer trials, select publications, COVID-19 literature at large, Walgreens's COVID "dashboard" data, CDC data, and other data sets. *Id.* at ¶¶ 12–54. Dr. Duriseti also rebuts Dr. Braunstein's opinion that children under the age of 12 would be at increased risk for contracting COVID-19 from an unvaccinated individual through more data analysis, though he ultimately concludes he is unable to determine if the children on the 9-1-1 set would have been at an increased risk. *Id.* at ¶¶ 66–75. He then goes on to discuss long-COVID [Doc. # 136-3 at ¶¶ 77–88], and "Sterilizing Vaccines" and Mandates [Doc. # 136-3 at ¶¶ 89–92].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |

| | | | |
|---|---|---|---|
| Title | *Rockmond Dunbar v. Twentieth Century Fox Television, et al.* | Page | 9 of 16 |

Dr. Duriseti may testify to relevant facts within his expertise in favor of COVID-19 testing as an effective preventative measure against transmission, to attempt to rebut Dr. Braunstein's expert opinions on the efficacy of COVID-19 vaccines on transmission reduction, and the risk posed to minors as related to Defendants' undue hardship defense. *See id.* at ¶ 4. (Dunbar "did not pose a greater risk of transmitting Covid-19 to others on 9-1-1 than someone who was vaccinated."). He *may not* give an opinion, however, that COVID-19 testing as an accommodation *does not constitute* undue hardship, i.e., an opinion on the ultimate issue of law. *See id.* at ¶ 4 ("[Dunbar's] proposed regular testing regime would have been a proper accommodation that would not have been unduly burdensome to defendants."), 100 ("it would not have been an undue burden to require [Dunbar] to regularly test in lieu of vaccination.").

Furthermore, Dr. Duriseti's opinions shall be limited to his knowledge and experience in medicine and Operations Research—not on the irrelevant generalized opinions unrelated to his discipline, such as the "difficult[y] of supplant[ing] bodily autonomy" in relation to "threat[s] of unemployment or violation of one's religious beliefs." *Id.* at ¶ 93. Nor may he opine on COVID-19 related topics unrelated to Dr. Braunstein's opinions, such as long-COVID and "Sterilizing Vaccines," or delve into specific studies, data sets, or similar matters that are not mentioned in Dr. Braunstein's own expert report or testimony.

Defendants' MIL on Dr. Duriseti is **GRANTED in part and DENIED in part**.

**F.      Defendants' MIL to Exclude or Limit Expert Testimony of Dr. Gleb Tsipursky [Doc. # 137]**

Defendants seek to preclude Dunbar from introducing or eliciting any evidence or testimony from expert witness Dr. Gleb Tsipursky. [Doc. # 137] Dr. Tsipursky is a rebuttal witness to Defendants' expert witness, Dr. Sniderman. *See infra* Part I(L). Defendants contend Dr. Tsipursky has no knowledge, skill, experience, training, or education on HR industry standards and was "engaged solely to offer into evidence ill-conceived legal opinions concerning the legal issues in dispute in this case." [Doc. # 137-1 at 2.] Dunbar's Opposition simply suggests the Court grant his MIL No. 6, *see infra* Part I(L), and render the instant MIL moot. [Doc. # 200 at 2–5.]

Dr. Tsipursky, Ph.D., is the CEO of Disaster Avoidant Experts, a "decision-making and debiasing consultancy," and has consulted for around 20 years on decision-making bias across areas such as employment law and organizational psychology. [Doc. # 137-3 at 6.] He purports to have a "robust academic and consulting background" and has been an expert witness in cognitive biases, discrimination, and risk management. *Id.* He holds a Doctorate in an unknown

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 10 of 16 |
|---|---|---|---|

field as his expert report directs one to his CV, which is not attached to the report. *Id.* at 6–8. Dr. Tsipursky claims in his expert report he assessed the adequacy of Defendants' interactive process in line with HR best practices. *Id.* at 8. The report provides no foundation, however, for his purported knowledge of HR best practices other than conclusory statements about his "robust academic and consultancy background." *Id.* at 13, 15. While his expert opinions on various biases may be grounded in his background in "debiasing consultancy" and behavioral psychology, they are not tethered to the HR industry expert opinions he was retained to rebut. Furthermore, his expert report is replete with blatant conclusions on ultimate issues of law.[5]

Defendants' MIL to exclude expert witness Dr. Gleb Tsipursky is **GRANTED**.

**G.     Dunbar's MIL No. 1 [Doc. # 155]**

Dunbar's MIL No. 1 seeks to preclude Defendants from introducing any testimony or evidence, or making any argument, comment, or reference concerning Defendants' undue hardship defense that was purportedly not produced or disclosed during discovery or in Federal Rule of Civil Procedure 26 disclosures under Federal Rule of Civil Procedure 37(c) and Federal Rule of Evidence 403. [Doc. # 155 at 2.] Dunbar argues Defendants initially claimed they were not asserting an "undue hardship affirmative defense," refused to produce discovery under Rule 26 on this basis, and are now asserting undue hardship on the basis of health and safety, including the presence of three unvaccinated minors on the 9-1-1 set. [Doc. # 155 at 4–6.] Defendants claim that they are not pleading an "undue hardship defense" since the interactive process "broke down" before the parties could make it to an undue hardship inquiry, and argue that undue hardship is a financial analysis, not one based on health and safety, therefore any health and safety concerns they do intend to introduce is a "backdrop of [the] matter." [Doc. # 204 at 2, 3.] Both parties are misguided.

---

[5] *See* Doc. # 137-3 at 8 ("I will assess the adequacy of [Defendants'] interactive process to determine whether the company engaged in [a process] . . . in line with the high standards set forth by the Supreme Court in *Groff v. DeJoy*"), 9 ("[Defendants'] claim of undue hardship lacks the specific evidence required to meet the substantial burden standard as clarified in *Groff*."), 12 ("[Defendants] failed to conduct a legally sufficient interactive process") ([Defendants'] claim of undue hardship lacks the substantial evidence required under the standard set forth in *Groff v. DeJoy*"), 13 ("the handling of [Dunbar's] religious exemption request by [Defendants] indicates a potential departure from [this Title VII standard]"), 23 (a summary of "relevant case law on sincerely held religious beliefs"), 25 ("[Defendants'] approach to [Dunbar's] religious accommodation request lacked the open, collaborative dialogue required for a legally sufficient interactive process under Title VII."), 27 ("Based on these findings, it is my expert opinion that [Defendants'] actions in handling [Dunbar's] religious accommodation request fell significantly short of Title VII requirements.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 11 of 16 |
|---|---|---|---|

In the Court's Summary Judgment Order, the Court denied Dunbar's "Rule 56(d)" continuance request based on his purported inability to obtain evidence about other individuals who had submitted vaccine exemption requests. MSJ Ord. at 17. Dunbar had filed a motion to compel information regarding other employees subject to the September 2021 COVID-19 vaccination mandate where Nguyen served as the decisionmaker on medical/religious accommodation requests. MSJ Ord. at 18. The Court found that Dunbar did not properly comply with Rule 56(d)'s procedural requirements and, even if he did, he failed to timely preserve his discovery rights before the discovery cutoff. MSJ Ord. at 19, 20. Contrary to Dunbar's allegations, Defendants' initial refusal to produce discovery regarding *other employees who requested accommodations* was not contradictory or in bad faith as they were engaged in a reasonable dispute over Dunbar's entitlement to the evidence through Dunbar's motion to compel. *See* Doc. # 155-5 at 4–5, 155-6, 155-11 at 4, 8, 155-12; *see also* Doc. # 81-1 at 20–23.

That said, Defendants' novel argument that "health and safety" concerns are not tantamount to an undue hardship defense, and merely a factual backdrop, is contradicted by the law, Defendants' own communications[6], and the proposed Final Pretrial Conference Order [Doc. # 147-1 at 4]. Under Title VII, once a plaintiff establishes a *prima facie* case, the burden shifts to Defendants to establish they "initiated good faith efforts to accommodate reasonably the employee's religious practices or that [they] could not reasonably accommodate the employee without undue hardship." MSJ Ord. at 7, 8. Undue hardship is an affirmative defense. *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023). Undue hardship is not, as Defendants claim, primarily a financial analysis and Defendants provide no authority suggesting it would *exclude* health and safety concerns. *See* Doc. # 204 at 2 (citing *Groff v. DeJoy*, 600 U.S. 447, 471 (2023)). Defendants wish to present evidence on health and safety concerns justifying their decision on accommodation while somehow claiming these health and safety concerns would not constitute an undue hardship defense—therefore refusing on that basis to respond to Dunbar's requests for discovery on the three unvaccinated minors on the 9-1-1 set who appear to have factored into their decision. *See* Doc. # 204-1 at 11.

Under Federal Rule of Civil Procedure 37(c)(1), if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information at a trial, unless the failure was substantially justified or is harmless. Discovery on Defendants' health and safety

---

[6] Defendants' email on November 20, 2024, where the parties are meeting and conferring regarding trial, includes as item four: "Affirmative Defenses – As mentioned, Defendants are pursuing undue hardship (premised exclusively on health and safety), and should the need arise, unclean hands, *in pari delicto*, estoppel, after acquired evidence, and mitigation of damages." [Doc. # 155-19.] Additionally, in as early as November 2021, Defendants assert Dunbar's accommodation would have created an undue hardship based upon health and safety concerns *including* contact with "uniquely vulnerable persons (such as unvaccinated children)." [Doc. # 155-2 at 9.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 12 of 16 |
|---|---|---|---|

concerns which informed their decision on Dunbar's requested accommodation, including the unvaccinated minors, were not addressed by Dunbar's prior Rule 56(d) motion or his Rule 26 interrogatories.

Defendants, however, may not present a "health and safety" defense divorced from an undue hardship defense, unless they wish to waive *any* undue hardship defense, including health and safety concerns, in the event the burden shifts to them. Because Defendants have asserted health and safety concerns from the outset and Dunbar was on notice[7] of that defense from the inception of their dispute, Defendants are permitted to conform their Answer to proof and to assert their health and safety concerns as an affirmative defense. The Court *sua sponte* reopens discovery for the limited purpose of allowing Dunbar to obtain discovery on any outstanding discovery requests pertaining to Defendants' health and safety undue hardship defense. This limited discovery shall be completed by **June 9, 2025** (*see also supra* Part I(A)). Dunbar's MIL No.1 is **DENIED**.

**H.    Dunbar's MIL No. 2 [Doc. # 156]**

Dunbar's MIL No. 2 seeks to preclude Defendants from introducing or eliciting any evidence or testimony from Dr. Walter P. Schilling, and the documents produced by the CUW that do not reference Dunbar or were explicitly adopted by Dunbar in his application for accommodations under Federal Rules of Evidence 401, 402, 403, and 701. [Doc. # 156 at 2, 6.] Dr. Schilling is the founder, secretary, treasurer, and minister of the CUW and is a Rule 30(b)(6) designee intended to present the tenets of the CUW religion. [Doc. # 205 at 3, 8.] Federal Rule of Evidence 701 is inapplicable. Furthermore, his testimony as the CUW designee is undoubtedly relevant since Dunbar claims membership in the CUW and one of the issues proceeding to trial is whether Dunbar held a sincerely held religious belief *as related to the CUW*. MSJ Ord. at 25. The same applies to documents produced by the CUW. [Doc. # 205 at 8.] Dunbar's MIL No. 2 is **DENIED**.

**I.    Dunbar's MIL No. 3 [Doc. # 157]**

Dunbar's MIL No. 3 seeks to preclude Defendants from introducing his medical records into evidence under Federal Rules of Evidence 401, 402, 403, 602, 801, 802, 803, and 805. [Doc. # 157 at 2.] Dunbar's MIL No. 3 is **DENIED**. The Court will address each Rule of Evidence objection in turn.

---

[7] Since Dunbar was on notice of the defense, there is no prejudice to Dunbar.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 13 of 16 |
|---|---|---|---|

### 1.      Federal Rules of Evidence 401, 402, 403

Dunbar argues his medical records, except for his vaccination history, are irrelevant under Rules 401, 402, and 403, since his medical history does not have the tendency to make the fact that he has a sincerely held CUW belief more or less probable. [Doc. # 157 at 8, 9.]  The Court disagrees.  Dunbar's medical records are not, as he argues, presented for the argument that *other* CUW adherents do or do not follow the same belief. *See id.* at 8.  Dunbar's medical records include behavior that is contrary to the tenets of the CUW religion, which underlies his accommodation request.  This evidence is relevant to a credibility determination of whether Dunbar's beliefs are sincere or merely opportunistic.  As for Dunbar's claim that the medical records are irrelevant since he can take "western medicine that does not defy natural law," that is exactly the type of relevant evidence the jury should consider when assessing Dunbar's sincerity. *Id.*  Finally, Dunbar has not identified any unfair prejudice of the type that Rule 403 contemplates. *See, e.g., id.* at 12 (claiming Defendants can introduce alternative evidence and have not identified medical experts).

### 2.      Federal Rule of Evidence 602

Dunbar argues the medical records Defendants intend to use at trial lack foundation.  Under Rule 602, a witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Dunbar fails to specify which medical records from which medical providers are objectionable. *See* Doc. # 157 at 7 ("11 providers").  Defendants have included 10 of Dunbar's medical providers on their witness list and the joint trial witness time estimate form. [Doc. ## 133, 142.]  Given Dunbar's lack of specificity, the Court cannot conclude now that Defendants are unable to establish a foundation as to Dunbar's medical records.[8] *See, e.g., Anglin v. Pratti*, 643 F. Supp. 3d 1077, 1084 (E.D. Cal. 2022).

### 3.      Federal Rules of Evidence 801, 802, 803, 805

"[M]edical records . . . [are] records kept in the ordinary course of business, classic exceptions to the hearsay rule." *United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005); Fed. R. Evid. 803(6).  Out of court statements made for purposes of medical diagnosis or treatment are admissible as an exception to the hearsay rule. *United States v. Kootswatewa*, 893 F.3d 1127, 1132 (9th Cir. 2018); Fed. R. Evid. 803(4).  Defendants may be able to establish Dunbar's medical records fall under either hearsay exception based on their listed witnesses.  Defendants also proffer that they have identified the providers and relevant custodians as witnesses under Federal Rule of

---

[8] In light of the Court's imposition of time limits during the trial, it would behoove both sides to stipulate to authenticity and similar foundational matters as to medical records where possible in order to avoid the need for testimony from custodians of record.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 14 of 16 |
|---|---|---|---|

Evidence 902(11).  [Doc. # 206 at 7.]  The Court, again, cannot conclude at this time that Defendants will be unable to establish that Dunbar's medical records fall under Rule 803(4) or 803(6). *See Anglin*, 643 F. Supp. 3d at 1084.

**J.      Dunbar's MIL No. 4 [Doc. # 158]**

Dunbar's MIL No. 4 seeks to preclude Defendants from introducing into evidence certain portions of Dunbar's deposition testimony under Federal Rule of Civil Procedure 37 and Federal Rule of Evidence 403.  [Doc. # 158 at 2.]  Dunbar requests sanctions under Rule 37 for Defendants use of Dunbar's own medical records obtained by subpoena to Dunbar's medical providers to "surprise" him at his deposition.  *Id.* at 5, 6, 7. This was, according to Dunbar, "gamesmanship" in "bad faith" which will prejudice him if brought up to the jury.  *Id.*  This is not the type of prejudice contemplated under Rule 403.  Furthermore, sanctions are not warranted under Rule 37 as there is no prejudice—the medical records are Dunbar's own records, are from his medical providers, and he was notified of the third-party subpoenas.  [Doc. # 207 at 3, 4.]  Moreover, he could have been required to produce them himself pursuant to Defendants' document requests. Dunbar's MIL No. 4 is **DENIED**.

**K.      Dunbar's MIL No. 5 (Dr. Glenn Braunstein) [Doc. # 159]**

Dunbar's MIL No. 5 seeks to preclude Defendants from introducing or eliciting any evidence or testimony, or, in the alternative, to limit the testimony and opinions, from expert witness Dr. Glenn Braunstein under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Federal Rules of Evidence 702, 401, 402, and 403.  [Doc. # 159 at 2.]  Dunbar contends:  (1) Dr. Braunstein is not a qualified expert witness since he is not a board-certified epidemiologist, lacks formal training in evaluating religious beliefs, and has no experience with the CUW [Doc. # 159 at 7, 8.]; (2) his opinions are unreliable, because they are not derived from a valid methodology or basis, or from his medical experience, training, or expertise [Doc. # 159 at 16]; (3) his opinions that the accommodation process was appropriate and fair is an impermissible legal conclusion [Doc. # 159 at 18]; and, (4) his deposition testimony related to Dunbar's medical records from Dr. Rosen and Dr. Fong should be stricken as outside the scope of his expert report [Doc. # 159 at 19].

Dr. Braunstein, M.D., is a Professor of Medicine at Cedars-Sinai Medical Center and Professor of Medicine Emeritus at the David Geffen School of Medicine at the University of California, Los Angeles.  [Doc. # 159-2 at 2.]  He maintains an active medical license in California and board certification in internal medicine and the subspecialty of endocrinology, diabetes and metabolism.  *Id.*  His extensive professional background includes, in pertinent part, experience

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |
|---|---|---|---|

| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 15 of 16 |
|---|---|---|---|

with epidemiology, infectious diseases, and disease testing and management planning.[9]  He has published two peer-reviewed articles on COVID-19 testing.  *Id.* at 4.  Finally, Dr. Braunstein is the individual who advised The Walt Disney Company as a whole on its response to the COVID-19 pandemic, including his advocacy for the mandatory vaccination policy at issue here.  *Id.* at 6, 8.

Defendants intend for Dr. Braunstein to provide expert opinion testimony on only two issues:  COVID-19 health and safety protocols, and Dunbar's medical records demonstrating the use of testosterone injections.  [Doc. # 208 at 6.]  Dr. Braunstein is undoubtedly qualified to testify as an expert witness and his opinions are accompanied by ample detail on his methodology and basis.  Dr. Braunstein has extensive experience in infectious disease planning, and direct experience advising Defendants on their COVID-19 vaccine policies and resulting accommodations process.  Dr. Braunstein's opinions embrace ultimate issues regarding the accommodation process and Defendants' COVID-19 vaccine policy, but not legal conclusions such as whether the accommodation was reasonable under the law or that it would constitute an undue hardship.  *See* Doc. ## 159 at 18, 159-2 at 13, 15.

As for Dunbar's contentions regarding Dr. Braunstein's deposition testimony related to records from Dr. Rosen, Dr. Braunstein's review of Dr. Rosen's medical records *was* included in his expert report, which Dunbar acknowledges while simultaneously arguing "[h]is review of specific records was not disclosed in his Expert Report."  *See* Doc. ## 159 at 9, 159 at 9 n.4, 159-2 at 14.  Regarding Dr. Fong, Dr. Braunstein is the one who discovered Dunbar's use of synthetic testosterone based upon Dunbar's heightened red blood cell counts.  [Doc. # 208 at 4.]  Defendants' late disclosure was substantially justified—it was impossible for Defendants to disclose Dr. Braunstein's opinion testimony on Dunbar's testosterone injections prior to the close of expert discovery as it was not discovered until after the deadline passed, and it was due to Dunbar's own initial failure to disclose his medical providers.  *See supra* Part I(A); Fed. R. Civ. P. 38(c)(1).  Regardless, there is no prejudice to Dunbar as these facts are derived from his own medical records and he was notified about the late-discovered synthetic testosterone treatments prior to Dr. Braunstein's deposition.  *See* Doc. # 208 at 7.

Dunbar's MIL No. 5 is **DENIED**.

---

[9] Dr. Brainstaun was involved in infectious disease crisis planning for Cedars-Sinai while Chairman of the Department of Medicine, started the AIDs and Immune Disorder Center at Cedars-Sinai, and was involved in the planning for the management of patients affected by the original SARS-CoV-1 outbreak and the Ebola virus disease epidemic.  [Doc. # 159-2 at 2, 3.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-1075-DMG (JCx)** | Date | February 24, 2025 |

| | | | |
|---|---|---|---|
| Title | ***Rockmond Dunbar v. Twentieth Century Fox Television, et al.*** | Page | 16 of 16 |

**L.      Dunbar's MIL No. 6 (Dr. Robert Sniderman) [Doc. # 160]**

Dunbar's MIL No. 6 seeks to preclude Defendants from introducing or eliciting any evidence or testimony or, in the alternative, to limit the testimony and opinions from expert witness Dr. Robert Sniderman.  [Doc. # 160 at 2.]  Dunbar contends:  (1) Dr. Sniderman is not qualified to testify; (2) the testimony is irrelevant in the instant action; (3) the testimony constitutes improper opinion testimony because it lacks proper foundation, is based upon inadmissible hearsay, and/or is based on speculation or conjecture under Federal Rule of Evidence 701; (4) the testimony is on an ultimate legal issue and/or question of law at trial, is unhelpful the jury, and/or usurps the jury's function; and, (5) there is a substantial danger that introduction of the evidence would confuse the issues and/or mislead the jury.  *Id.* at 5–6.

Dr. Sniderman, Ph.D, is a Human Resources Consultant specializing, in pertinent part, in expert testimony, investigations, and consulting on interactive process and reasonable accommodations.  [Doc. # 160-2 at 11.]  He has been consulting for over 30 years and is President and Owner of The Entrepreneurial Edge, Inc/DBA HR Focus, an Organizational and Human Resource Consulting organization.  *Id.* at 11.  His Doctorate is in Organizational Psychology and he has testified repeatedly as an expert witness on HR issues.  *See, e.g.*, *McCray v. Westrock Servs., LLC*, CV No. 21-9853-DMG (RAOx), 2023 WL 4681371, at *5 (C.D. Cal. July 12, 2023).  *Id.* at 2, 14, 16.  He is a Society for Human Resource Management ("SHRM") Senior Certified Professional and conducts seminars and teaches courses on HR topics including the accommodations process.  [Doc. ## 160-2 at 2, 209 at 2.]

Dr. Sniderman offers the expert opinion that Defendants' accommodations and exemptions system for medical conditions and sincere religious beliefs follow government agency Guidelines or Human Resources industry standards of practice.  [Doc. # 160-2 at 4.]  He has extensive experience in evaluating these standards, which are relevant to whether Defendants failed to engage in the interactive process.  MSJ Ord. at 25.  Additionally, Dunbar provides no support for his theory that the EEOC standards in the entertainment industry would be distinct from those in industries in which Dr. Sniderman does have direct experience consulting.  [Doc. # 160 at 8.]  Any distinctions are best left for cross-examination.  Furthermore, his "Ph.D. and impressive resume" are unlikely to confuse and mislead the jury.  Fed. R. Evid. 403.  Dr. Sniderman may not, however, give his opinion that it was Dunbar, rather than Defendants, who "failed to participate" in the interactive process, because this is an ultimate issue of fact and law.  *See* Doc. # 160-2 at 9.

Dunbar's MIL No. 6 is **DENIED**.

**IT IS SO ORDERED.**

---