Scott J. Street (SBN 258962)
Mitchell B. Stein (SBN 82966)
**JW HOWARD│ATTORNEYS, LTD.**
201 South Lake Avenue, Suite 303
Pasadena, CA 91101
Tel.: (213) 205-2800
Email: sstreet@jwhowardattorneys.com
mitchell@jwhowardattorneys.com

Attorneys for Plaintiff ROCKMOND
DUNBAR

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKMOND DUNBAR, | Case No. 22-cv-1075-DMG (JCx) |
| Plaintiff, | [Assigned to the Hon. Dolly Gee] |
| vs. | **PLAINTIFF ROCKMOND DUNBAR'S AMENDED TRIAL BRIEF** |
| AMERICAN BROADCASTING COMPANIES, INC; TWENTIETH CENTURY FOX TELEVISION, A UNIT OF TWENTIETH CENTURY FOX FILM CORPORATION DOING BUSINESS AS 20TH TELEVISION, | |
| Defendants. | Date: October 14, 2025<br>Time: 8:30 a.m.<br>Crtrm.: 8C |

///

///

///

///

///

///

///

*JW HOWARD/ ATTORNEYS, LTD.*
*600 West Broadway, Suite 1400*
*San Diego, California 92101*

1

1    Pursuant to Local Rule 16-10, Plaintiff Rockmond Dunbar submits the

2    following amended trial brief for the trial that is scheduled to start on October 14,

3    2025. This amended brief discusses issues that have arisen since the parties'

4    conference with the Court last week.

5    **I.    MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

6    This is a failure to accommodate religion case in which the employer,

7    Twentieth Century Fox Television ("Fox"), failed to raise, and then was deemed to

8    have waived, the undue hardship defense. ECF 234.

9    That decision simplified this case. As the Court's Final Pretrial Order stated,

10    Dunbar only needs to prove three things: "a. That Plaintiff has a *bona fide* religious

11    belief, the practice of which conflicted with an employment duty, in this case, a

12    vaccination requirement; b. Defendants were aware of Plaintiff's belief and conflict; c.

13    Defendants discharged, threatened, or otherwise subjected Plaintiff to an adverse

14    employment action due to his inability to fulfill the job requirement." ECF 235.

15    The second and third elements are not in dispute. They can't be. Disney official

16    Erin Nguyen received Dunbar's request for religious accommodation on Monday,

17    October 4, 2021.[1] ECF 251 at 9. She discussed it with the people responsible for

18    casting *9-1-1* (Dunbar's show) the same day. *Id.* at 16. She stopped the interactive

19    process the next day and said that, if he would not take the vaccine, "Rockmond will

20    be unable to continue on *9-1-1* after October 18, 2021." *Id.* at 20.

21    Dunbar and his agents pushed back. They begged to speak with Nguyen about

22    the request. *Id.* at 25-45. She did not respond. Instead, a high-ranking Disney lawyer

23    named Tanya Menton took over. She refused to speak with Dunbar but said she would

24    be "happy to discuss with an attorney." *Id.* at 47.

25    Once Menton got involved, the matter was over. Disney would not try to

26

27    _____

[1] The Walt Disney Company owns Fox and ABC and handled the accommodation process for all
28    Disney-owned companies.

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

accommodate Dunbar's religious beliefs. Menton made that clear on October 6 when she told another of Dunbar's representatives, Young Park, that she would be "happy to discuss Disney's position but preferred to speak with an attorney." *Id.* And when Menton spoke with Park on October 12, she made clear that the accommodation process was over. Disney was "terminating [Dunbar] for breach of the agreement." When asked what Dunbar did to breach the agreement, Menton replied: "He has made it clear that cannot/will not comply with the vaccine mandate." *Id.* at 49.

Disney allowed Dunbar to work until October 18, the date the vaccine policy took effect on *9-1-1*. *Id.* at 52. In the meantime, *9-1-1* showrunner Tim Minear had to do something with Dunbar's character, Michael (the gay ex-husband of star Angela Bassett's character). Minear decided *not* to kill Michael off. Instead, he crafted a storyline where Michael left abruptly for Haiti. *Id.* at 57. And he intended to bring Dunbar back to the show after the vaccine policy was lifted. *Id.* at 79.

That happened in November 2022. *Id.* at 71. Minear wanted to bring Dunbar back to the show after that. But Disney executives would not allow it. (Exhibit M) In fact, Minear said Disney executives told him to stop talking to Dunbar's agents:

> **Q.** You say, "Hey, I'm working on getting clarity on the Rockmond question, meaning I want to make sure the studio gives us total green light if having him guest is something we want to do. I will keep you updated."
>
> **A.** Yes.
>
> Q. Working on getting clarity, what were you doing at that point?
>
> **A.** I had—I mean, after everything that had gone down, I had to pick up a phone and call the executives at the studio and let them know what I wanted to do.
>
> **Q.** Who would those executives be?
>
> **A.** Well, it would start with Stephanie and Sharon, and then they would probably go to Tanya Menton or somebody in legal.
>
> **Q.** Okay. Do you remember having those conversations with Stephanie?

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

**A.** Yep.

**Q.** And what was her reaction?

**A.** We already talked about this; right? Like I called her and told her what I wanted to do it, and it was like, let me get some clarity. And then it was like, stop talking to his reps, things are not repaired here yet.

(*Id.* at 77; *see also id.* ["Q. Who made the ultimate decision not to bring back Mr. Dunbar. A. I would—yeah. It was the studio. It wasn't me."].)

Despite this evidence, Fox's counsel has refused to narrow the case through stipulations. It has drafted confusing and internally inconsistent jury instructions, including instructions on the duty to mitigate damages, an issue that Fox says the jury cannot decide.

Similarly, Fox's counsel has refused to withdraw evidence regarding "health and safety" issues that the Court deemed waived. ECF 234. That includes testimony from expert witness Dr. Glenn Braunstein, which has no relevance in a trial about the sincerity of Dunbar's religious beliefs.

That evidence is not relevant because federal law is clear: it is "not within the judicial ken" to determine the validity of a person's religious belief. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989); *see also Mohamed v. 1st Class Staffing, LLC*, 286 F. Supp. 3d 884, 901 n.13 (S.D. Ohio 2017) (stating that it is "not the court's role to question the religious validity of sincerely-held beliefs"). Instead, "a court's inquiry into whether a belief is 'religious' is limited to determining whether the belief is (1) 'sincerely held' and (2) religious within the plaintiff's 'own scheme of things.'" *Ambrose v. Gabay Ent & Assocs., P.C.*, No. CIV.A. 12-5453, 2013 WL 4195387, at *3 (E.D. Pa. Aug. 15, 2013) (quoting *Welsh v. United States*, 389 U.S. 333, 339 (1970)).

The law reflects that principle by making the analysis of "whether a religious belief is 'sincerely held,' … a 'question of credibility.'" *Kluge v. Brownsburg Cmty.*

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

PLAINTIFF'S AMENDED TRIAL BRIEF                    CASE NO. 22-cv-1075-DMG (JCx)

*Sch. Corp.*, No. 1:19-CV-02462-JMS-KMB, 2024 WL 1885848, at *14 (S.D. Ind.
Apr. 30, 2024) (quoting *Nottleson v. Smith Steel Workers D.A.L.U. 19806*, 643 F.2d
445, 455 (7th Cir. 1996)).

That is what this trial should focus on: whether the jury believes what Dunbar
says about his religious beliefs. It should finish in a day or two, especially since
Dunbar has agreed to narrow the amount of backpay he is seeking in this Title VII
case to what he would have earned for the second half of Season 5, the season he was
already under contract for, and which was halfway over when Defendants fired him.

## II.    ISSUES TO BE RESOLVED BEFORE TRIAL

The developments in this case since February raise several questions that should
be addressed before trial. We discussed several of them in our original trial brief. ECF
251 at 6-8. Several more have arisen since then.

***The improper PowerPoint opening statement.*** Fox's counsel prepared an 18-
slide PowerPoint-type presentation to show the jury during their opening statement.
Exhibit A. The presentation is improper and should be stricken for several reasons.

*First*, many of the slides discuss the law. Counsel cannot discuss the law in the
opening statement. *See, e.g., Schwartz v. Sys. Software Assocs., Inc.*, 32 F.3d 284, 288
(7th Cir. 1994) ("Since it was the province of the district court to pass upon the law …
it was entitled to tell plaintiff's counsel to refrain from legal argument in his opening
statement.").

*Second*, the Court's case management order states clearly that, during opening
statements: "Counsel must not consume time by writing out words, drawing charts or
diagrams, etc." ECF 70 at 13. The only exception is for an item that "was prepared
earlier as ordered by the Court to save time." *Id.* But, to our knowledge, the Court did
not give defense counsel permission to show an argumentative, 18-page PowerPoint
presentation to the jury during opening statements. And it would not save time. The
Court limited opening statements to thirty minutes per side and said less time would

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

PLAINTIFF'S AMENDED TRIAL BRIEF                    CASE NO. 22-cv-1075-DMG (JCx)

be better. It would take more than thirty minutes just to read the 18-slide PowerPoint
presentation.

*Third*, the PowerPoint presentation discusses facts that have not been admitted
into evidence and which may not be admitted into evidence, including: (1) facts
regarding the start of the COVID-19 pandemic; (2) facts regarding the entertainment
industry being an "essential" business; and (3) facts regarding "health and safety"
practices that Disney companies followed on *9-1-1* and other television productions.
The presentation also includes a detailed discussion of Dunbar's subsequent request
for a medical accommodation, which has no bearing on the sincerity of his religious
beliefs and Defendants' refusal to accommodate those beliefs.

*Fourth*, the presentation contains argument about Dunbar's actions. It portrays
him as "pivot[ing]" from one request to another. It accuses him of "hid[ing]"
information about his medical practices during discovery. It says he switched lawyers
twice during the case and says "Today" will be "Trial — with Dunbar's Lawyer #3."
Exhibit A at 18.

Put simply, the 18-slide PowerPoint presentation is attorney argument. It is
defense counsel's spin on this case. Defense counsel might be allowed to show parts
of this presentation during closing argument, though we would still object to the slides
as misstating the evidence and the law, confusing the issues, and misleading the jury,
among other grounds. *See United States v. McGhee*, 532 F3d 733, 741 (8th Cir. 2008)
(discussing rules for visual aids used during closing argument). But it would be
reversible error to let the jury see those slides during opening statements. The
prejudice from them could not possibly be cured.

We explained this to defense counsel last weekend. We asked them to withdraw
the improper PowerPoint presentation. They refused. Thus, we lodged a formal
objection to the presentation today and will ask the Court to strike the document
before trial. ECF 261.

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

*The prohibited health and safety evidence.* The PowerPoint presentation also makes clear what we warned the Court about last week: that, despite waiving the undue hardship defense—and using that waiver to block discovery of "health and safety" issues—Defendants intend to make this case all about health and safety at trial.

Indeed, the presentation shows that Defendants want to transport the jury back to a time when people were locked down and scared. They want the jury to think about masking and testing. They want to tell the jury that they did everything in good faith, to protect their employees.

None of that has any bearing on the sincerity of Dunbar's religious beliefs. It has no bearing on whether Dunbar tried to engage in an interactive process. And, while Defendants characterize this evidence as "background," it could only be used to suggest that the jury can reject Dunbar's claim for reasons other than the sincerity of his religious beliefs.

That is not proper. This is exactly what the Court said it would prohibit when it ruled on the motions *in limine*. Its order was clear: "Defendants' novel argument that 'health and safety' concerns are not tantamount to an undue hardship defense, and merely a factual backdrop, is contradicted by the law, Defendants' own communications, and the proposed Final Pretrial Conference Order." ECF 228 at 11 (footnote omitted). That is why the Court reopened discovery about health and safety issues. It gave Defendants a choice: if they wanted to present evidence of health and safety concerns at trial, they had to amend their answer to assert the undue hardship defense and participate in discovery.

Defendants had their chance. They could have amended their answer and participated in discovery about health and safety issues after the Court reopened discovery. They refused. They blocked discovery of this issue. It is unfair to now let Defendants present evidence of health and safety issues—including health and safety issues across multiple Disney entities—at trial. After all, Mr. Dunbar has no evidence

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

PLAINTIFF'S AMENDED TRIAL BRIEF                                    CASE NO. 22-cv-1075-DMG (JCx)

to challenge Defendants' health and safety assertions. How could we? We did not get discovery about that.

This is not about defense counsel saying the words "health and safety" at trial. It is about fairness. It is about prohibiting Defendants from making a one-sided evidentiary presentation about an issue they waived and which they blocked discovery of. And while the Court could instruct the jury to disregard the "health and safety" evidence because of that waiver, that would not cure the potential prejudice to Mr. Dunbar. Nor would it streamline the trial. It would prolong the trial. With the federal government shut down, that is an especially bad idea.

***Other issues.*** Mr. Dunbar has agreed to limit the backpay he is seeking in this case to the money he was owed for the rest of Season 5. He will also seek general damages based on his pain and suffering and the reputational harm he suffered due to Defendants' refusal to accommodate his religious beliefs.

Despite conferring with defense counsel, we still object to several of the defense's proposed jury instructions. For example, Defendants proposed a Title VII jury instruction that is tied entirely to the Congregation of Universal Wisdom ("CUW"). Exhibit B at 10 (Defendants' proposed instruction number 4). It is argumentative and improper on that basis alone. It also suggests that Mr. Dunbar had to interpret the CUW's tenets accurately and follow them perfectly to prove that he is sincere.

That is not the law. An employee's "religious beliefs are protected whether or not his pastor agrees with him …." *Jackson v. New Jersey Juvenile Justice Comm'n*, No. 19-17950 (SDW) (AME), 2023 WL 22497, at *10 (D.N.J. Jan. 3, 2023). A person can also have a sincerely-held religious belief "even if it is not shared by all of the members of his religious sect." *Thomas v. Rev. Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 715-16 (1981) (quotations omitted).

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

Indeed, Defendants' proposed instruction sounds like a temporal mandate argument. But courts have rejected such arguments in Title VII litigation, finding them to be "irreconcilable" with Supreme Court law. *Redmond v. GAF Corp.*, 574 F.2d 897, 900 (7th Cir. 1978); *see also Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 790 (5th Cir. 2012) (deciding whether plaintiff's belief is true religious tenet is "'not open to question'" (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

Thus, it would be error for the Court to give the Title VII instruction Defendants proposed.

It would also be error to give the jury Defendants' proposed instruction no. 7, which focuses on Dunbar's duty to cooperate in the interactive process. "Title VII is premised on bilateral cooperation." *Am. Postal Workers Union v. Postmaster Gen.*, 781 F.2d 772, 777 (9th Cir. 1986). An employee, therefore, has a "concomitant duty ... to cooperate in reaching an accommodation." *Id.* But that duty arises after the employer takes the "initial step towards accommodating [the employee's] conflicting religious practice" by suggesting a possible accommodation. *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1441-42 (9th Cir. 1993). Thus, courts have refused to treat an employee as violating his duty to cooperate in the interactive process when the employer never tried to accommodate him. *Id.* at 1440-42 (reversing district court on that issue).

That is the case here. Defendants did not try to approve Dunbar's accommodation request. They simply refused to process it. They said: "Given the timing of Rockmond's request, we are unable to review and complete this process in time for him to continue work on *9-1-1*." ECF 251 at 21.

Furthermore, Defendants' proposed instruction no. 7 is filled with misstatements of the law and legal argument. It reads like a part of the Defendants' closing argument, not a neutral instruction of Title VII law.

Similar errors affect Defendants' proposed instruction on a "defense" based on

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

their "Reliance on Law at the Time." Exhibit B at 30. Defendants did not plead such a defense. ECF 34. Thus, like the un-pleaded undue hardship defense, they should be barred from raising it now.

Even if they had pleaded it, Defendants read this defense too narrowly. It only applies to claims based on something that the E.E.O.C. *expressly* permitted. For example, in the case Defendants cited in the proposed instruction, Judge Wu noted that the EEOC had "released guidance explaining that, although Title VII prohibits employment discrimination based on religion, an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not truly religious in nature or is not sincerely held." *Andazola v. Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 3914610, at *6 (C.D. Cal. July 26, 2024), adopted sub nom. *Andazola v. Kaiser Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 4581515 (C.D. Cal. July 29, 2024). Thus, it would not have been an unlawful employment practice for the employer to ask "follow-up questions" to determine if the employee's belief "was founded in religion as opposed to something else." *Id.*

But that does not mean an employer can refuse to consider accommodating a person's religious beliefs, terminate his contract, force him to file a lawsuit, blame him, and then claim "good faith" to avoid liability. There is no authority for that. And that is not one of the issues that the Court identified for trial. ECF 235.

Finally, to the extent Defendants claim that their "good faith" exonerates them, they misunderstand the law. "If the employee proves a prima facie case, the burden then shifts to the employer to establish that it initiated good faith efforts to [reasonably] accommodate [an] employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Smith v. City of Mesa*, No. CV-21-01012-PHX-DJH, 2023 WL 8373495, at *1 (D. Ariz. Dec. 3, 2023) (quotations and citations omitted). Thus, the employer's "good faith" is only relevant

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

if it tried to accommodate the employee's religious beliefs. Defendants did not try to accommodate Dunbar's religious beliefs.

Mr. Dunbar would welcome another pre-trial conference to discuss these issues, especially the improper PowerPoint presentation that defense counsel wants to show the jury during opening statements.

Respectfully submitted,


Dated:  October 6, 2025

JW HOWARD/ ATTORNEYS, LTD.

*/s/ Scott J. Street*

By: _____
Scott J. Street
Attorneys for Plaintiff ROCKMOND
DUNBAR

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

**EXHIBIT A**

MARIA RODRIGUEZ (SBN 194201)
mcrodriguez@mwe.com
CHRISTOPHER BRAHAM (SBN 293367)
cbraham@mwe.com
ARIEL BEVERLY (SBN 324656)
abeverly@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

Attorneys for Defendants
TWENTIETH CENTURY FOX FILM
CORPORATION and AMERICAN
BROADCASTING COMPANIES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKMOND DUNBAR, | CASE NO. 2:22-cv-1075-DMG (JCx) |
| Plaintiff, | **DEFENDANTS TWENTIETH CENTURY FOX FILM CORPORATION AND AMERICAN BROADCASTING COMPANIES, INC.'S DISCLOSURE OF DEMONSTRATIVES [L.R. 16-3]** |
| v. | |
| AMERICAN BROADCASTING COMPANIES, INC.; TWENTIETH CENTURY FOX TELEVISION, A UNIT OF TWENTIETH CENTURY FOX FILM CORPORATION DOING BUSINESS AS 20TH TELEVISION, | |
| Defendants. | First Amended Complaint Filed: May 6, 2022 |
| | Second Amended Complaint Filed: August 15, 2022 |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

Pursuant to Central District of California Local Rule 16-3, Defendants TWENTIETH CENTURY FOX FILM CORPORATION and AMERICAN BROADCASTING COMPANIES, INC. (together, "Defendants") hereby disclose Exhibit A as graphic and illustrative material they intend to show to the trier of fact. Defendants further hereby disclose that they may use extracts of information or graphic illustrations of the information contained in the following documents:

- DUNBAR_000368
- DUNBAR 13-116
- FOX00000192
- FOX0000786-87
- DUNBAR_000244
- DUNBAR_001659
- A3 Artists Agency/Dunbar 000131
- FOX00000023
- FOX00000007
- FOX00000383
- FOX00000310
- FOX00000354
- FOX00000354
- FOX00000288-293
- CUW_Dunbar_000029
- M_DUNBAR_000451
- FOX00000306
- FOX00000266-267
- DUNBAR000474-76
- FOX00000266
- FOX00000260
- FOX00000249

- FOX00000402-06
- FOX00000402
- FOX00000402
- FOX00000367
- FOX00000297-99
- FOX00000297-99
- FOX00000296
- FOX00000576

Dated: October 3, 2025          **MCDERMOTT WILL & EMERY LLP**


By:   */s/ Ariel Beverly*
      MARIA RODRIGUEZ
      CHRISTOPHER BRAHAM
      ARIEL BEVERLY
      Attorneys for Defendants
      TWENTIETH CENTURY FOX FILM
      CORPORATION and AMERICAN
      BROADCASTING COMPANIES, INC.

DEFENDANTS' L.R. 16-3 DISCLOSURE

# <u>EXHIBIT A</u>

# **One Claim**: Title VII Religious Discrimination – COVID-19 Vaccine

## Only **Two Issues**:

**1**

Did Mr. Dunbar have a sincerely held religious belief that prevented him from taking any of the COVID-19 vaccines?

**2**

Did Mr. Dunbar genuinely engage in the interactive process regarding his request for religious accommodation?

*The vaccine and vaccine mandate are __not__ at issue for the jury. There is no medical accommodation claim in this case.*

# The Applicable Standard



## PERSONAL CHOICE IS NOT THE STANDARD

- *20th respects Mr. Dunbar's personal choice*

- *But the standard for accommodation or exemption from the vaccine is not based on personal choice and personal choice is not protected by Title VII*



## TITLE VII IS THE STANDARD

- *Title VII standard is: a sincerely held religious belief that prevented Mr. Dunbar from taking any of the vaccines*

- *Title VII interactive process requires personal interaction between the employee and the employer to allow the employee to provide information and allow the employer the ability to assess the request*

- *Not for jurors to judge the vaccine or the vaccine mandate.*

# The Applicable Standard



## PERSONAL CHOICE IS NOT THE STANDARD

- *20th respects Mr. Dunbar's personal choice*

- *But the standard for accommodation or exemption from the vaccine is not based on personal choice and personal choice is not protected by Title VII*



**TITLE VII IS THE STANDARD**

**DUNBAR'S CONTRACT**

**UNION AGREEMENTS – RTW**

## Zone A

Actors who are unmasked -- and unable to mask while filming or in makeup -- and others who worked with a performer while the performer was unmasked (e.g. directors, camera operators, hair and make-up professionals, etc.).

## Zone B

Employees who work on a "hot" set, but who are not present in a workspace with a performer or background actor while the performer or background actor is not wearing PPE. Use of PPE and stringent physical distancing practices are observed and enforced within Zone B.

## Zone C

Employees who can wear PPE at all times, only work with other employees wearing PPE, are not required to be within six feet of anyone for more than 15 minutes, and do not come into contact with Zone A or B employees.

## Zone D

Everyone else, including the outside world that cast and crew go to when not working— their homes, hotels, or other public places. Everything in Zone D has the potential to affect Zone A and B.

## Zone A

Actors who are unmasked -- and unable to mask

performer while the performer was unmasked (e.g. directors, camera operators, hair and make-up professionals, etc.).

## Zone B

Employees who work on a "hot" set, but who

background actor while the performer or background actor is not wearing PPE. Use of PPE and stringent physical distancing practices are observed and enforced within Zone B.

## Zone C

Employees who can wear PPE at all times,

to be within six feet of anyone for more than 15 minutes, and do not come into contact with Zone A or B employees.

## Zone D

Everyone else, including the

not working their homes, hotels, or other public places. Everything in Zone D has the potential to affect Zone A and B.

**+** **Most restrictive**

**Least restrictive** **−**

**Masking**



**Contact Tracing**





**Social Distancing**



**Mandatory Testing**



# Increased Masking

- N95 mask…must be worn by the unvaccinated actor whenever in "zone b" for essential activity…if unable to wear mask, a shield must be worn

- Hair & makeup for unvaccinated actors must be done without other unmasked cast present. Mask and shield must be worn by HMU team when styling unvaccinated actors.

# Minimized Contact

- *At no time may an unvaccinated actor be on set with a minor under age 12.*

  - Work to avoid scenes containing more than one unvaccinated unmasked actor on set at the same time.

Unvaccinated players:
- to remain isolated in their trailer/ holding area when not shooting
- must be isolated in a holding area near set between takes

Unvaccinated cast will be tested 5 days/week instead of 3x/week standard Zone A cadence (3x PCR tests per week, 2x rapid tests on the intervening days).

# Increased Distancing

# Increased Testing

**Industry-wide Covid-19 vaccine mandate for Zone A workers**

**Reminder email to 9-1-1 cast re vaccine mandate**

**Covid-19 Vaccination deadline for Zone A workers**

09/01/21

09/14/21

10/18/21



# How The Interactive Process Works

**1**

Employee submits accommodation request

**2**

Request assigned to someone in HR/ER (Erin Nguyen or someone else on the team who was also doing that work).

**3**

HR/ER would review information submitted and then contact the employee who had submitted request, to schedule a conversation.

**4**

Based on documentation & conversation, decide whether the employee was unable to be vaccinated due to his/her sincerely-held religious beliefs.

This process was the same across all of Disney's shows that implemented mandatory COVID-19 vaccine policies.



# CONGREGATION OF UNIVERSAL WISDOM

Founded in 1975 by Dr. Charles Schilling, a chiropractor. Schilling has never spoken to Dunbar or his wife (Schilling Deposition p. 17)

- CUW is not tax exempt, has no building and holds no meetings or services
- CUW dues are used to pay for their website and Schilling's salary

The primary purpose for CUW is to keep the body pure. (Schilling Deposition, p. 29)



It shall be sacrilege to ingest, inject, apply or inhale medication or other chemical substances that defy natural law

WELCOME

...regation... ...religious order that believes in a Supreme Master of all levels... ...gation and all life of the Universe. It is the guide or principle by which all mankind shall aspire to live... ...members of the congregation believe that the upheaval of morals and inferiority of human values have been ...the results of... ...als expressed by Universal Wisdom. This has resulted in a ...sick and decaying... ...redemption can only be brought about by a blending of Universal Intelligence with man's limited mind.

Case 1:24-cr-01075-DMG-JC    Document 1 0002 Filed 10/04/24 Page ID #:7813



We believe that it <u>defiles</u> the Holy Tenet of God to introduce toxic drugs/vaccines under God's teaching are "UNCLEAN SUBSTANCES."

Members who violate our tenets are considered sinful.

The punishment for these sins are the deleterious consequences on the members body and soul.



**M E D I C A L**

**9/30:** Disney contacts Dunbar because he did not return his vaccine verification, and learn for the first time that he may want an accommodation.

→

**9/30:** Erin sends Dunbar the forms to request medical or religious accommodation

→

**9/30:** Dunbar sends back an **insufficient doctor's note**

↓

**10/04:** Erin again explains to Dunbar that his doctor's **note is insufficient and tells him what it needs to say**

←

**10/04:** Dunbar **submits same doctor's note; refuses to confirm** an actual medical condition

←

**10/01:** Erin explains to Dunbar that his doctor's **note is insufficient and tells him what it needs to say.** **Dunbar says Disney has to wait for him.**



DEAD END

**Dunbar pivots**



**MEDICAL**

**9/30:** Disney contacts Dunbar because he did not return his vaccine verification, and learn for the first time that he may want an accommodation.

**9/30:** Erin sends Dunbar the forms to request medical or religious accommodation

**9/30:** Dunbar sends back an **insufficient doctor's note**

**10/01:** Erin explains to Dunbar that his doctor's **note is insufficient and tells him what it needs to say. Dunbar says Disney has to wait for him.**

**10/04:** Dunbar **submits same doctor's note;** refuses to confirm an actual medical condition

**10/04:** Erin again explains to Dunbar that his doctor's **note is insufficient and tells him what it needs to say**



**DEAD END**

**10/12:** Dunbar asks Erin to email him any questions

**10/12:** Erin explains to Dunbar that the matter is with legal, who have been in touch with his rep

**10/14:** Erin emails Dunbar about discussing a medical accommodation and gives him questions

**10/14:** Dunbar submits same dr's note, still refuses to confirm disability/medical condition that prevents him from the vaccine

**10/15:** Erin again explains that the doctor's note is insufficient; again gives him the specific language that is needed

**10/20:** Dunbar submits nearly identical doctor's note

**10/20-10/29:** Erin asks if company doctor and Dunbar doctor can talk confidentially; needed information is not provided

**11/10:** Dunbar's contract is terminated

Case 5:23-cv-01075-DMG-JC    Document XX Filed 05/00/24    Page 34 of 85 Page ID #7817



# CONGREGATION OF UNIVERSAL WISDOM

Founded in 1975 by Dr. Charles Schilling, a chiropractor. Schilling has never spoken to Dunbar or his wife (Schilling Deposition p. 17)

- CUW is not tax exempt, has no building and holds no meetings or services
- CUW dues are used to pay for their website and Schilling's salary

The primary purpose for CUW is to keep the body pure. (Schilling Deposition, p. 29)

It shall be sacrilege to **ingest, inject, apply, or inhale medication** or other chemical substances that defy natural law

# Excerpts from Dunbar's Invasive Procedures and Drug Intake





Receives **injection** and medication for shoulder pain; shoulder drained

Prescribed **oral pill steroid** Medrol Dosepak for shoulder inflammation

Continues **Synthetic Testosterone injections (2X / week) and  Anastrozole**

**Vasectomy** and **Sildenafil (Viagra)**

**Medications Wixela, Amlodipine, Albuterol, Prednisone, Trelegy**

**Oct. 2014**

**Oct. 2017**

**Nov 2018.-present**

**Dec. 2020**

**Jul. 2022**

**Feb. 2016**

**Nov. 2018**

**Nov. 2020**

**Mar. 2022**

Prescribed Advair **inhaler** for asthma

Begins **Synthetic Testosterone injections (2X / week)**

Receives **steroid injection** for shoulder pain

Prescribed **nasal spray** for asthma







# Excerpts from Dunbar's Drug Intake

**Acetaminophen**

**Advair**

**Albuterol**

**Alprazolam**

**Amlodipine Besylate**

**Amox-Clav**

**Anastrozole**

**Anoro Ellipta**

**Azelastine**

**Azithromycin**

**Budesonide-Formoterol**

**Celecoxib**

**Cephalexin**

# Excerpts from Dunbar's Drug Intake

| |
|---|
| **Clindamycin** |
| **Dymista Nasal Spray** |
| **Etodolac** |
| **Flovent HFA** |
| **Hydrochlorothiazide** |
| **Hydrocodon-Acetaminoph** |
| **Hydroxyzine** |
| **Ibuprofen** |
| **Iprat-Albut** |
| **Ipratropium BR** |
| **Methylprednisolone** |
| **Montelukast Sod** |

# Excerpts from Dunbar's Drug Intake

Mupirocin

Nystatin

Penicillin

Prednisone

ProAir HFA

Promethazine/Codeine

Qvar

Sildenafil (Viagra)

Synthetic Testosterone

Trelegy Ellipta

Ventolin

Wixela

# TIMELINE OF COVID VACCINE MANDATES

Case 2:22-cv-00236-WLG-JDP   Document 26v   Filed 06/23/25   Page 39 of 85   Page ID #.7822

## How did we get here?



Case 2:22-cv-01026-NG-ST Document 26-9 Filed 12/23/24 Page 40 of 85 Page ID #.7823

# TIMELINE OF COVID VACCINE MANDATES

## How did we get here?



# TIMELINE OF EXEMPTIONS AND THE INTERACTIVE PROCESS

## How did we get here?



# TIMELINE OF EXEMPTIONS AND THE INTERACTIVE PROCESS

## How did we get here?

**OCT 12, 2021**

Erin tells Dunbar his matter is with legal now

**OCT 14, 2021**

Erin emails Dunbar re medical exemption questions & additional information re doctors talking

**OCT 15, 2021**

Erin emails Dunbar what the doctor's note needs to say (4th time)



**OCT 6, 2021**

Dunbar's lawyer (#1) sends a letter to 20th Century

**OCT 12, 2021**

Dunbar emails Erin that it's come to his attention she wants to talk and he will talk

**OCT 14, 2021**

Dunbar responds – will not let doctors talk directly

**OCT 15, 2021**

Dunbar emails Erin – he will contact his doctor; responds to questions

**OCT 20, 2021**

Dunbar sends similar doctor's note (#3)

# TIMELINE OF EXEMPTIONS AND THE INTERACTIVE PROCESS
## How did we get here?



# TIMELINE OF THE CASE
## How did we get here?



**EXHIBIT B**

Scott J. Street (SBN 258962)
**JW HOWARD | ATTORNEYS, LTD.**
201 South Lake Avenue, Suite 303
Pasadena, CA 91101
Tel.: (213) 205-2800
Email: sstreet@jwhowardattorneys.com

John W. Howard (SBN 80200)
**JW HOWARD | ATTORNEYS, LTD.**
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel.: (619) 234-2842
Email: johnh@jwhowardattorneys.com

*Attorneys for Plaintiff Rockmond Dunbar*

**MCDERMOTT WILL & SCHULTE LLP**
Maria Rodriguez (SBN 194201)
mcrodriguez@mwe.com
Christopher Braham (SBN 293367)
cbraham@mwe.com
Elvira Kras (SBN 320390)
ekras@mwe.com
Ariel Beverly (SBN 324656)
abeverly@mwe.com
2049 Century Park East
Suite 3200
Los Angeles, CA  90067-3206
Telephone:  +1 310 277 4110
Facsimile:   +1 310 277 4730

*Attorneys for Defendants Twentieth*
*Century Fox Film Corporation and*
*American Broadcasting Companies, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKMOND DUNBAR,<br><br>                Plaintiff,<br><br>        v.<br><br>AMERICAN BROADCASTING COMPANIES, INC.; TWENTIETH CENTURY FOX TELEVISION, A UNIT OF TWENTIETH CENTURY FOX FILM CORPORATION DOING BUSINESS AS 20TH TELEVISION,<br><br>                Defendant | Case No. 2:22-cv-1075-DMG (JCx)<br><br>**[PROPOSED] AMENDED JOINT DISPUTED JURY INSTRUCTIONS**<br><br>FAC filed: May 6, 2022<br>SAC filed: August 15, 2022 |

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

**INDEX OF JURY INSTRUCTIONS**

| No. | Title | Source | Page |
|---|---|---|---|
| 1 | Damages – Proof and Measure of Damages | Ninth Cir. Civ. Model Instr. §§ 5.1-5.2. | 1 |
| 2 | Damages – Proof and Measure of Damage | Ninth Cir. Civ. Model Instr. §§ 5.1-5.2. | 4 |
| 3 | Prima Facie Case – Failure to Accommodate Religious Practices | Fed. Emp. Jury Instructions § 5:410; 29 CFR §1605.2(b)(1); CACI No. 2546; O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 15:8; *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1309 (D. Haw. 2022); *Bartholomew v. Washington*, 693 F. Supp. 3d 1107, 2023 WL 6471627, at *4 (W.D. Wash. 2023). | 7 |
| 4 | Religious Accommodation Claim/ Failure to Engage in the Interactive Process | Judicial Council of California Civil Jury Instruction 2546, Judicial Council Of California Civil Jury Instruction 2650; O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 15:8 | 10 |
| 5 | Title VII, Nature of the Claim | 3C Fed. Jury Prac. & Instr. § 171: 1 (6th ed.); Final Charge to the Jury at ¶ 15, *Lewis-Williams v. S.F. Bay Area Rapid Transit District*, No. C 22-06119-WHA (N.D. Cal. Oct. 22, 2024) ECF No. 207. | 16 |

1

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

| 6 | Determination Is Based on What Was Known At Time | Final Charge to the Jury at P 16, *Lewis-Williams v. S.F. Bay Area Rapid Transit District*, No. C 22-06119-WHA (N.D. Cal. Oct. 22, 2024) ECF No. 220.; Judicial Council Of California Civil Jury Instruction 2546, Judicial Council Of California Civil Jury Instruction 2546; O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 15:8; *Bushouse v. Local Union 2209, United Auto., Aerospace & Agric. Implement Workers of Am.*, 164 F.Supp.2d 1066, 1075 (N.D. Ind. 2001); *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 54 (2006); *Andazola v. Kaiser Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 4581515 (C.D. Cal. July 29, 2024); *Weiss v. Permanente Med. Grp., Inc.*, 2024 WL 3090496, at *5 (N.D. Cal. June 21, 2024); *Detwiler v. Mid-Columbia Med. Ctr.*, 2023 WL 7221458, at *4–5 (D. Ore. Sept. 13, 2023); *Green v. Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 726 (N.D. Tex. 2013), aff'd sub nom. *Green v. Medco* | 19 |

2

[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS

| | | | | |
|---|---|---|---|---|
| | | *Health Sols. of Texas, L.L.C.*, 560 F. App'x 398 (5th Cir. 2014) ("Whether an individual is a qualified individual with a disability is determined as of the time of the employment decision.") | |
| 7 | Plaintiff's Duty | O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 16:1; *Brookins v. Indianapolis Power & Light Co.*, 90 F.Supp.2d 993, 1007 (S.D. Ind. 2000); *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666–67 (7th Cir.1995); *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 262 n. 9 (1st Cir. 2001); *Green v. Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 728–30 (N.D. Tex. 2013), aff'd sub nom. Green v. Medco Health Sols. of Texas, L.L.C., 560 F. App'x 398 (5th Cir. 2014); *Andazola v. Permanente*, 2024 WL 3914610, at *8 (C.D. Cal. July 26, 2024), adopted sub nom. *Andazola v. Kaiser Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 4581515 (C.D. Cal. July 29, 2024); *Weiss v. Permanente Med. Grp., Inc.*, 2024 WL 3090496, at *5 (N.D. Cal. June 21, 2024); *Detwiler v. Mid-Columbia* | 23 |

3

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

| | | | | |
|---|---|---|---|---|
| | | *Med. Ctr.*, 2023 WL 7221458, at *4–5 (D. Ore. Sept. 13, 2023). | |
| 8 | Defenses – Reliance on Law at the Time | 42 USC 2000e-12(b); *Doe v. San Diego Unified School District*, 19 F.4th 1173 (9th Cir. 2021); *Andazola v. Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 3914610, at *6 (C.D. Cal. July 26, 2024), adopted sub nom. *Andazola v. Kaiser Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 4581515 (C.D. Cal. July 29, 2024). | 26 |
| 9 | Defenses—After-Acquired Evidence | Ninth Cir. Civ. Model Instr. §10.16. | 28 |

4

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

[PLAINTIFF'S PROPOSED] JURY INSTRUCTION NO. 1

***Damages – Proof and Measure of Damages***

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

1.    The mental, and emotional pain and suffering experienced and that with reasonable probability will be experienced in the future (*i.e.* – stress, humiliation, mental anguish, embarrassment, generalized insult, hurt feelings and lingering resentment any healthy, well-adjusted person would be expected to feel, or that would be the intrinsic result of having been subjected to the conduct that Defendants are alleged to have undertaken in this case);

2.    The reasonable value of earnings and employment opportunities that with reasonable probability will be lost in the future.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority/Source:** Ninth Cir. Civ. Model Instr. §§ 5.1-5.2.

**Defendant's Objection:**

Back pay and front pay are not part of Title VII compensatory damages. Evidence of such damages are not appropriately presented to the jury. Plaintiff has continually

1

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1  confirmed that he understands front and back pay are issues for the Court—not the jury.

2  Case law confirms that past and future lost "employment opportunities" are components of

3  front and back pay. *See Lane v. Grant Cnty*., 2013 WL 5306986, at *8 (E.D. Wash. Sept.

4  20, 2013), aff'd, 610 F. App'x 698 (9th Cir. 2015) (holding that one factor in determining

5  front pay is the "availability of employment opportunities"); *Perez v. Progenics Pharms.,*

6  *Inc*., 204 F. Supp. 3d 528, 551 (S.D.N.Y. 2016) (jury instruction that stated the jury "may

7  award monetary damages to cover back pay or lost compensation, including the reasonable

8  value of earnings, employment opportunities, and benefits lost to the present time" was for

9  award of back pay or loss of compensation) (emphasis in original).  For this reason,

10  Plaintiff's request that the jury be instructed to award the "reasonable value of earnings

11  and employment opportunities that with reasonable probability will be lost in the future"

12  is inappropriate.

13      Furthermore, Plaintiff However the instruction as written would  the instruction fails

14  to advise the jury of that distinction  or even identify the distinction between lost earnings

15  and lost earning capacity to the jury. Further, Plaintiff has not produced any evidence,

16  identified any exhibits or retained any expert to opine on the economic value of this so-

17  called "reputational harm."

18      For these reasons, Defendants object and oppose the inclusion of any instruction that

19  the jury be permitted to evaluate and award Plaintiff "The reasonable value of earnings and

20  employment opportunities that with reasonable probability will be lost in the future."

21

22  **Plaintiff's Reply:**

23      Under Title VII, the jury can award "other nonpecuniary losses." 42 U.S. Code §

24  1981a(b)(3). "Lost future earnings" are "closely analogous" to "injury to professional

25  standing and injury to character and reputation" and "fall[] within the category of 'other

26  nonpecuniary losses.'" *Jensen v W. Jordan City*, 968 F3d 1187, 1199-1200 (10th Cir.

27                                          2

28  _____

                **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

2020). Plaintiff's proposed language "The reasonable value of earnings and employment opportunities that with reasonable probability will be lost in the future" goes to Plaintiff's claim for lost future earnings, along with injury to Plaintiff's professional standing and reputation in the industry, and therefore is a proper instruction.

3

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

[~~PLAINTIFF'S~~DEFENDANTS' PROPOSED] JURY INSTRUCTION NO. 2

*Damages – Proof and Measure of Damages*

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the mental, and emotional pain and suffering experienced and that with reasonable probability will be experienced in the future (*i.e.* – stress, humiliation, mental anguish, embarrassment, generalized insult, hurt feelings and lingering resentment) that any healthy, well-adjusted person would be expected to feel, or that would be the intrinsic result of having been subjected to the conduct that Defendants are alleged to have undertaken in this case.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority/Source:** Ninth Cir. Civ. Model Instr. §§ 5.1-5.2.

**Parties' positions are set forth in Plaintiff's Proposed Instruction on Damages.**

> **Commented [AB1]:** Added so we have an alternative instruction duplicating Plaintiff's proposal but removing the language we said should be struck.

4

[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS

1                             ***Failure to Produce Available Evidence***

2           If a party fails to produce evidence under that party's control and reasonably

3 available to that party and not reasonably available to the adverse party, then you may infer

4 that the evidence is unfavorable to the party who could have produced it and did not.

5

6 **Authority/Source:** 3 Fed. Jury Prac. & Instr. § 104:26 (6th ed.)

7

8 **Defendants' Objection:**

9           "Under the 'adverse inference rule,' when a party has relevant evidence within its

10 control that the party fails to produce, that failure gives rise to an inference that the evidence

11 is unfavorable to it." 3 Fed. Jury Prac. & Instr. § 104:26 (6th ed.), 3 Fed. Jury Prac. & Instr.

12 § 104:26 (6th ed.) citing *United Auto. Workers v. NLRB*, 459 F.2d 1329, 1336

13 (D.C.Cir.1972); *Rockingham Machine-Lunex Co. v. NLRB*, 665 F.2d 303, 304 (8th

14 Cir.1981). Defendants did not withhold any evidence they believed to be relevant and

15 therefore the instruction is inappropriate and inapplicable. Defendants have always

16 maintained that there were minors on set to whom the vaccine was not available (i.e. not

17 approved for use by the FDA). This was communicated to Plaintiff back in October 2021

18 when his accommodation was initially denied, and addressed in the depositions of defense

19 witnesses Erin Ngueyn and Tim Minear.  The fact that Defendants rightfully objected to

20 the disclosure of documents showing the "***name***, title, and COVID-19 vaccination status,

21 [among other information] of every Zone A 9-1-1 employee" and further articulated its

22 position in an opposition to a motion to compel, does not warrant an adverse inference

23 instruction. Indeed, it reinforces Defendants position that it believed the information sought

24 was ***irrelevant***.

25

26

27                                 5

28 **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

**Plaintiff's Reply:**

      Contrary to Defendants' position, Defendants improperly withheld evidence relating to their undue hardship defense. Plaintiff specifically requested that Defendants provide evidence of their undue hardship defense, which Defendants refused to produce stating that they are not pursing an undue hardship defense. Now, at trial, Defendants claim that it would have been unduly burdensome to accommodate Plaintiff due to health and safety risks, stating among other things that there were three unvaccinated minor children on 9-1-1. (*See* ECF 99-4 (Declaration of Marissa Crisafulli) (stating "[i]n September 2021, the *9-1-1* cast included five minors, three of whom were under the age of 12 and for whom I understand the vaccine was not yet available.") In addition, Plaintiff specifically requested that Defendants provide the vaccination status of all employees on 9-1-1 for this very reason – to be able to ascertain what hardship, if any, would have Defendants faced had they accommodated Plaintiff. In fact, Plaintiff has made a motion in limine requesting the court order that Defendants should not be permitted to make an undue hardship defense. To the extent the court permits Defendants to assert an undue hardship defense, Defendants' failure to produce the evidence absent a court order warrants the issuance of the foregoing instruction to the jury.

6

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

[PLAINTIFF'S PROPOSED] JURY INSTRUCTION NO. 3

***Prima Facie Case – Failure to Accommodate Religious Practices[1]***

It is unlawful for an employer to fail to reasonably accommodate the religious practices of an employee or prospective employee, unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business.

Plaintiff claims that Defendants wrongfully discriminated against him by failing to reasonably accommodate his religious belief. To succeed on this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.    ~~1.~~ That Plaintiff has a sincerely held religious belief the practice of which conflicted with an employment requirement, in this case, a vaccination requirement;

2.    ~~2.~~ He informed his employer about the conflict;

3.    ~~3.~~ That Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that he would be able to perform the essential job requirements;

4.    ~~4.~~ That Defendants failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made; and

5.    ~~5.~~ He was terminated for failing to comply with the conflicting employment requirement.

If you find that Plaintiff did not prove by a preponderance of the evidence each of these things, then you must find for Defendants on this claim. If, on the other hand, Plaintiff has proved each of these things, you must go on to consider whether Defendants have proved their affirmative defenses. I will instruct you further on what those defenses are in a moment.

---

[1] The parties have proposed competing instructions on this issue.

7

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1    **Authority/Source:** Fed. Emp. Jury Instructions § 5:410; 29 CFR §1605.2(b)(1); CACI No.

2    2546; O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 15:8; *O'Hailpin*

3    *v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1309 (D. Haw. 2022); *Bartholomew v.*

4    *Washington*, 693 F. Supp. 3d 1107, 2023 WL 6471627, at *4 (W.D. Wash. 2023).

5

6    **Defendants' Objection:**

7         Plaintiff's proposed instruction misstates the law and misrepresents the law.

8         *First*, an employee must do more than merely inform his employer that there is a

9    conflict between his religious beliefs and the law. *Bushouse v. Local Union 2209, United*

10    *Auto., Aerospace & Agric. Implement Workers of Am.*, 164 F.Supp.2d 1066, 1075 (N.D.

11    Ind. 2001) ("Title VII does permit an inquiry into the sincerity and religious nature of an

12    employee or member's purported beliefs before the duty to accommodate such a belief

13    arises[.]"). *Doe v. San Diego Unified School District*, 19 F.4th 1173, 1180 (9th Cir. 2021)

14    (recognizing that "although Title VII prohibits employment discrimination based on

15    religion, **an** ~~employee's~~**employee's** **request for an exemption from a COVID-19**

16    **vaccination mandate can be denied on the ground** ***that the employee's belief is not truly***

17    ***religious in nature* or is not sincerely held").**

18         *Second*, the law does not require an employer to identify and evaluate reasonable

19    accommodations if there is no legally required basis to provide accommodations.

20    Plaintiff's proposed instruction suggests otherwise. The prerequisite for discussion of any

21    potential accommodation is establishing the foundation for an accommodation: a sincerely

22    held religious belief of disability. This ~~is~~ proposition is supported in numerous decisions

23    throughout the Ninth Circuit. *Doe*, 19 F.4th at 1180 (9th Cir. 2021); *Ashcroft v. S.*

24    *California Permanente Med. Grp.*, --- F.Supp.3d ---, 2025 WL 268387, at *6 (S.D. Cal.

25    Jan. 22, 2025) ("the Court determines, as have others before it, **that predicate to the**

26    **requirement that Defendant explore alternatives accommodations** Plaintiff must have

27                                           8

28
_____

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1   communicated to Defendant the conflict between duties and beliefs, ***and the beliefs'***
2   ***religious nature***"); *Andazola v. Permanente*, 2024 WL 3914610, at \*6 (C.D. Cal. July 26,
3   2024), adopted sub nom. *Andazola v. Kaiser Permanente*, 2024 WL 4581515 (C.D. Cal.
4   July 29, 2024); *Weiss v. Permanente Med. Grp., Inc.*, 2024 WL 3090496, at \*5 (N.D. Cal.
5   June 21, 2024); *Green v. Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 726
6   (N.D. Tex. 2013), *aff'd sub nom. Green v. Medco Health Sols. of Texas, L.L.C.*, 560 F.
7   App'x 398 (5th Cir. 2014) (recognizing that the employer had no duty to identify reasonable
8   accommodations when the requesting employee failed to provided the requested
9   information).

10      *Third*, the law is clear, that the interactive process (which includes gathering
11   information relating to the need for an accommodation) is a two way street and **both** parties
12   must participate timely and in good faith. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S.
13   60, 69 (1986). ("[L]ike the statutory and regulatory framework of the Americans with
14   Disabilities Act (ADA), [Title VII] involves an interactive process that requires
15   participation by both the employer and the employee."). Plaintiff cannot wait to participate
16   in the interactive process until his termination is imminent. *Reed v. LePage Bakeries, Inc.*,
17   244 F.3d 254, 262 n. 9 (1st Cir. 2001) (recognizing that notifying employer of her inability
18   to control her rage after an incident with a colleague was "too little too late"); *Green v.*
19   *Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 728–30 (N.D. Tex. 2013), aff'd
20   sub nom. Green v. Medco Health Sols. of Texas, L.L.C., 560 F. App'x 398 (5th Cir. 2014)
21   ("courts must not permit [employees to use EEO laws] as a shield from being fired . . .
22   before the ink on [their] valid termination papers is dry").

23

24   **Plaintiff's Reply:**

25

26

27                                      9

28
─────────────────────────────────────────────
         **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

[DEFENDANTS' PROPOSED] JURY INSTRUCTION NO. 4~~3~~

***Religious Accommodation Claim/ Failure to Engage in the Interactive Process[2]***

> Commented [AB2]: Revised.

It is unlawful for an employer to fail to reasonably accommodate the religious practices of an employee or prospective employee, unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business.

Plaintiff claims that Defendants wrongfully discriminated against him by failing to reasonably accommodate his <u>sincerely held</u> religious belief <u>originating in the Congregation of Universal Wisdom</u>. To succeed on this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.    That Plaintiff has a sincerely held religious belief ~~that precludes him undergoing medical interventions, including receiving the COIVD-19 vaccination~~<u>grounded in the tenet of the Congregation of Universal Wisdom precluding Congregation members from ingesting or injecting medication or other substances that defy natural law</u>;

2.    That Plaintiff's sincerely held religious belief <u>in the Congregation of Universal Wisdom</u> conflicted with Defendants' vaccination requirement;

3.    That Plaintiff <u>timely</u> informed his employer of his religious belief;

4.    That Plaintiff was willing to ~~participate~~<u>cooperate with Defendants' reasonable requests for information regarding the nature of his professed belief by participating</u> in a timely, good faith ~~interactive process to discuss his basis for an exemption to the vaccine requirement, and if necessary, any reasonable accommodation;~~<u>discussion of his religious beliefs;</u>

5.    That Defendants ~~failed to participate in a timely good faith interactive process with Plaintiff to discuss the basis for Plaintiff's request for an exemption to the vaccine~~

---

[2] The parties have proposed competing instructions on this issue.

10

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1  ~~requirement, and if necessary, any reasonable accommodation~~were unwilling to discuss

2  Plaintiff's professed religious beliefs in an interactive process;

3      6.    That Defendants' failure to engage in a good-faith interactive process was a

4  substantial factor in causing Plaintiff's harm.

5      If you find that Plaintiff did not prove by a preponderance of the evidence each of

6  these things, then you must find for Defendants on this claim. If, on the other hand, Plaintiff

7  has proved each of these things, you must go on to consider whether Defendants have

8  proved their affirmative defenses. I will instruct you further on what those defenses are in

9  a moment.

10

11  **Authority/Source:** Judicial Council of California Civil Jury Instruction 2546, Judicial

12  Council Of California Civil Jury Instruction 2650; O'Malley, Grenig, & Lee, Fed. Jury.

13  Prac. & Instr. Civil Comp HB § 15:8

14

15  **Plaintiff's Objection:**

16      Plaintiff has several objections to this proposed instruction.  With regard to element

17  1, he objects to Defendants' use of the phrase "**that precludes him undergoing medical**

18  **interventions,** including receiving the COIVD-19 vaccination" as an improper

19  determination of fact. To prove his *prima facie* case, Plaintiff needs to show that "he had a

20  bona fide religious belief, the practice of which conflicts with an employment duty." *Camp*

21  *v. L.A. Arena Co., LLC*, No. EDCV 22-2220 JGB (KKx), 2023 U.S. Dist. LEXIS 104655,

22  at *18-19 (C.D. Cal. 2023). The contours of that religious belief, as well as the sincerity of

23  same, are questions presented to the jury in the instant case. Furthermore, Defendants'

24  proposed language does not accurately present Plaintiff's professed religious belief.

25  Plaintiff has testified at his deposition and submitted a declaration in opposing to

26  Defendants' summary judgment motion stating that his religious beliefs do not preclude

27                          11

28  _____

    **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1   him from undergoing any medical intervention. (*See e.g.* ECF 100-3 ¶ 11 ("I am not against
2   western medicine that is made with God's consent or that does not cloud my
3   communication with God.")). His professed belief precludes him from taking substances
4   that "defy natural law". *See* ECF 99-3 at 34 ("It is sacrilege to introduce into the body
5   living organisms or any unnatural, or modified matter that may alter the natural balance of
6   that organism rendering it into a state of dis-ease. It shall be sacrilege to depart from the
7   percepts of the Congregation by the following: (a) the ingestion of medication or other
8   chemical substances *that defy natural law*, (b) the injection into the body of medication or
9   other matter of substances *that defy natural law*.") (emphasis added).) Therefore,
10  Defendants' proposed language not only fails to comport with the law, but also fails to
11  accurately depict the facts established in this case.

12          Plaintiff further objects to element 4 on two grounds.  First, Plaintiff objects to the
13  extent Defendants propose addition of the requirement that "Plaintiff was willing to
14  participate in a ***timely, good faith*** interactive process." The parties modeled the proposed
15  instruction on CACI No. 2546, which accurately reflects the burdens of proof and does not
16  impose a "timely, good faith" obligation on Plaintiff as part of his *prima facie* case. Under
17  the law, it is not Plaintiff's burden of proof to show that his request for accommodation
18  was "timely" or in "good faith." Both are defenses available to Defendants and as such it
19  is their burden to show by a preponderance of evidence that Plaintiff failed to timely make
20  his accommodation request or that for some reason his participation was not presented in
21  good faith. Indeed, the parties already have proposed an undisputed instruction on "good
22  faith in interactive process" which states that Defendants bear the burden of proof.  Second,
23  Defendants' proposed instruction improperly includes the requirement that the interactive
24  process "discuss his basis for an exemption to the vaccine requirement, and if necessary,
25  any reasonable accommodation."  CACI No. 2546 does not include similar language (e.g.,
26  CACI No. 2546, which deals with disability discrimination, does not require that the

27                                                12

28  _____
            **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1  plaintiff show he was willing to participate in an interactive process to determine whether
2  he had a disability).  Nor would such an instruction be proper because, for the reasons
3  stated in Plaintiff's objections to Defendants' Proposed Jury Instruction No. 21, after being
4  notified the employer has an obligation to seek a reasonable accommodation, the onus is
5  on the employer to show that it had an "objective basis" to seek additional information
6  from the employee.  By including in the description of the interactive process that it would
7  always include a conversation about the "basis for an exemption," and then saying that an
8  accommodation would only be considered "if necessary," the instruction improperly
9  suggests that Plaintiff has the burden to establish to the employer's satisfaction that his
10  religious belief is sincere before an accommodation is even considered.  Of course the
11  interactive process can include a conversation about the basis for the religious belief, if an
12  "objective basis" exists to question that basis, but that is not a required element of the
13  process as stated by proposed element 4.

14      Plaintiff also objects to the following language in element 5: "**to discuss the basis
15  for Plaintiff's request for an exemption to the vaccine requirement, and if necessary,
16  any reasonable accommodation**."  For the reasons stated above in objection to
17  Defendants' Proposed Jury Instruction No. 21, after being notified the employer has an
18  obligation to seek a reasonable accommodation, the onus is on the employer to show that
19  the employer had an "objective basis" to seek additional information from the employee.
20  Employers cannot make demands to "confirm" whether the employee has a sincerely held
21  religious belief absent a showing of an "objective basis" to do so. Therefore, Defendant's
22  proposed instruction again improperly shifts the burden of proof on Plaintiff.

23      Plaintiff objects in its entirety to element 6, which states: "**That Defendants' failure
24  to engage in a good-faith interactive process was a substantial factor in causing
25  Plaintiff's harm.**" CACI No. 2546 only includes the substantial factor language because
26  that is a requirement for a disability claim under California's Unruh Civil Rights Act.

13

27
28  _____
       **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

*Sceper v. Trucks Plus*, No. CIV S-09-0801 GEB EFB, 2009 U.S. Dist. LEXIS 102445, at *14 (E.D. Cal. Nov. 2, 2009) (analyzing the elements of an Unruh Civil Rights Act calim). However, It is not part of Plaintiff's *prima facie* case under Title VII to show that Defendants' failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm. Plaintiff only needs to show that he suffered an "adverse employment action because of his inability to fulfill the job requirement." *Camp v. L.A. Arena Co., LLC*, No. EDCV 22-2220 JGB (DTBx), 2024 U.S. Dist. LEXIS 71237, at *9 (C.D. Cal. Apr. 18, 2024). "If the plaintiff sets forth a prima facie failure to accommodate case, the burden then shifts to the defendant to show that it initiated good faith efforts to accommodate reasonably the employee's religious practices[.]" *Id.* Therefore, element 6 in Defendants' proposed instruction is merely attempt to improperly shift the burden of proof onto Plaintiff, and has no basis in law.

**Defendants' Reply:**

Defendants' proposed instruction properly reflects the duties and obligations of the employer and employee.

*First*, an Defendants' instruction notes, an employee must do more than merely inform his employer that there is a conflict between his religious beliefs and the law. *Bushouse v. Local Union 2209, United Auto., Aerospace & Agric. Implement Workers of Am.*, 164 F.Supp.2d 1066, 1075 (N.D. Ind. 2001) ("Title VII does permit an inquiry into the sincerity and religious nature of an employee or member's purported beliefs before the duty to accommodate such a belief arises[.]"). *Doe v. San Diego Unified School District*, 19 F.4th 1173, 1180 (9th Cir. 2021) (recognizing that "although Title VII prohibits employment discrimination based on religion, **an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground** *that the employee's belief is not truly religious in nature* **or is not sincerely held**").

14

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

*Second*, as Defendants instruction reflects, the law does not require an employer to identify and evaluate reasonable accommodations if there is no legally required basis to provide accommodations. Plaintiff's proposed instruction suggests otherwise. The prerequisite for discussion of any potential accommodation is establishing the foundation for an accommodation: a sincerely held religious belief of disability. This is proposition is supported in numerous decisions throughout the Ninth Circuit. *Doe*, 19 F.4th at 1180 (9th Cir. 2021); *Ashcroft v. S. California Permanente Med. Grp.*, --- F.Supp.3d ---, 2025 WL 268387, at *6 (S.D. Cal. Jan. 22, 2025) ("the Court determines, as have others before it, **that predicate to the requirement that Defendant explore alternatives accommodations** Plaintiff must have communicated to Defendant the conflict between duties and beliefs, ***and the beliefs' religious nature***"); *Andazola v. Permanente*, 2024 WL 3914610, at *6 (C.D. Cal. July 26, 2024), adopted sub nom. *Andazola v. Kaiser Permanente*, 2024 WL 4581515 (C.D. Cal. July 29, 2024); *Weiss v. Permanente Med. Grp., Inc.*, 2024 WL 3090496, at *5 (N.D. Cal. June 21, 2024); *Green v. Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 726 (N.D. Tex. 2013), *aff'd sub nom. Green v. Medco Health Sols. of Texas, L.L.C.*, 560 F. App'x 398 (5th Cir. 2014) (recognizing that the employer had no duty to identify reasonable accommodations when the requesting employee failed to provided the requested information).

*Third*, as ~~Defendants~~Defendants' instruction reflects, the interactive process (which includes gathering information relating to the need for an accommodation) is a two way street and **both** parties must participate timely and in good faith. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986). ("[L]ike the statutory and regulatory framework of the Americans with Disabilities Act (ADA), [Title VII] involves an interactive process that requires participation by both the employer and the employee."). Plaintiff cannot wait to participate in the interactive process until his termination is imminent. *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 262 n. 9 (1st Cir. 2001) (recognizing that notifying employer

15

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

of her inability to control her rage after an incident with a colleague was "too little too late"); *Green v. Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 728–30 (N.D. Tex. 2013), aff'd sub nom. Green v. Medco Health Sols. of Texas, L.L.C., 560 F. App'x 398 (5th Cir. 2014) ("courts must not permit [employees to use EEO laws] as a shield from being fired . . . before the ink on [their] valid termination papers is dry").

16

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1    [DEFENDANTS' PROPOSED] JURY INSTRUCTION NO. 5

2    *Title VII, Nature of the Claim*

3    Plaintiff is suing under the Civil Rights Act of 1964, a federal statute. Under Title

4    VII, it is unlawful for an employer to discriminate against any person on account of that

5    person's religious beliefs. This means that an employer must reasonably accommodate an

6    employee's sincerely held religious beliefs, practices or observance. A reasonable

7    accommodation is one that eliminates the conflict between the religious practice and the

8    job requirement.

9    Plaintiff claims that Defendants discriminated against him by failing to

10   accommodate his religious belief precluding vaccination and by refusing to engage with

11   him in the interactive process to identify a reasonable accommodation. Defendants deny

12   this charge and assert that Plaintiff did not engage in an interactive process.

13   It is within the legal authority of employer to require employees to be vaccinated

14   against COVID-19, so long as employers also honored their obligations under Title VII.

15   In this case, you may not second guess the policy to require vaccinations or that date to

16   comply with such requests. You are required instead to determine whether and the extent

17   to which Defendants honored their obligations under Title VII as to Plaintiff.

18

19   **Authority/Source:** 3C Fed. Jury Prac. & Instr. § 171: 1 (6th ed.); Final Charge to the Jury

20   at ⁋ 15, *Lewis-Williams v. S.F. Bay Area Rapid Transit District*, No. C 22-06119-WHA

21   (N.D. Cal. Oct. 22, 2024) ECF No. 207.

22

23   **Plaintiff's Objection:**

24   Plaintiff objects to the last paragraph of the proposed instruction because it is likely

25   to confuse the jury because of three reasons. *First*, Plaintiff is not challenging Defendants'

26   policy of mandating covid-19 vaccines, nor is Plaintiff challenging Defendants' authority

27                                              17

28   _____

     **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

Commented [SS3]: The undue hardship language is still in here.

1  to do so. Therefore, the instruction is unnecessary. *Second*, Defendants' proposed language
2  "so long as employers also *honored* their obligations under Title VII" is likely to confuse
3  the jury because the instruction itself fails to explain what "honoring" the obligations under
4  "Title VII" means and none of the proposed jury instructions in this case employ similar
5  language that would operate to clear up the confusion. *Third*, Defendants' proposed
6  language "you may not second guess … that date to comply with such requests" is improper
7  because as shown during Defendants' summary judgment motion briefing, there are factual
8  issues surrounding the deadlines in this case.  For example, one of the major factual issues
9  in the case left for the jury's consideration is determining whether Plaintiff requested
10 accommodations too late, and part of that is the question of whether there was, and what
11 was, the deadline by which Plaintiff needed to submit an accommodation and its
12 relationship to any deadlines that were referenced in the September 1, 2021 vaccine memo.
13 Fourth, the phrase "or that date to comply with such requests" has no support in any of the
14 sources cited by Defendants.  Even though the Final Charge to the Jury in *Lewis-Williams*
15 *v. S.F. Bay Area Rapid Transit District*, No. C 22-06119-WHA (N.D. Cal. Oct. 22, 2024)
16 ECF No. 207 contained some of the elments of the proposed last paragraph, it did not
17 include the phrase "or that date to comply with such requests" and case law does not
18 support the idea that compliance dates are inviolable.  *See EEOC v. Mission Hosp., Inc*.,
19 No. 1:16-cv-00118-MOC-DLH, 2017 U.S. Dist. LEXIS 124183, at *9 (W.D.N.C. Aug. 7,
20 2017) (finding that enforcement of a deadline for vaccination was an issue of fact that could
21 be argued either way, i.e., that a reasonable jury could find either that the company was
22 justified in strictly enforcing it, or that the company treated individuals differently and as
23 such had flexiability in how it enforced the deadline).

24

25

26

27                                                18

28
       **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

**Defendants' Reply:**

Plaintiff does not oppose the instruction, but only the last paragraph. This paragraph has been included in other jury trials within this Circuit. Final Charge to the Jury at ₱ 15, *Lewis-Williams v. S.F. Bay Area Rapid Transit District*, No. C 22-06119-WHA (N.D. Cal. Oct. 22, 2024) ECF No. 207. Defendants include the admonishment here for the sole purpose of advising jurors that the vaccine mandate was lawful (and even approved by Plaintiff's union) and that the mandate itself is not being challenged. There is nothing harmful or prejudicial about the proposed language. To the extent Plaintiff is concerned with confusing the jury, Defendants propose that the last paragraph is modified to state: "Plaintiff does not dispute that it is within the legal authority of an employer to require employees to be vaccinated against COVID-19, so long as the employer also honored its obligations under Title VII.  In this case, you may not second guess the policy to require vaccinations.   You are required instead to determine whether the Parties met their obligations under Title VII."

19

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1         [DEFENDANTS' PROPOSED] JURY INSTRUCTION NO. 6

2          *Determination Is Based on What Was Known At Time*

3        You should not rely on hindsight when making your determinations. With regards

4 to the first and second elements of Plaintiff's prima facie case, for example, the question

5 you must answer is whether plaintiff had provided Defendants, at the time of the events,

6 with information to establish a bona fide religious belief and how it conflicted with

7 vaccination against COVID-19. To answer that question, you must consider the

8 information provided by Plaintiff to Defendants, at the time Defendants made its decision

9 and other relevant evidence from that time. You may not consider evidence that was not

10 provided to Defendants at or before the time that Defendants made its decision.

11

12 **Authority/Source:** Final Charge to the Jury at ¶ 16, *Lewis-Williams v. S.F. Bay Area Rapid*

13 *Transit District*, No. C 22-06119-WHA (N.D. Cal. Oct. 22, 2024) ECF No. 220.; Judicial

14 Council Of California Civil Jury Instruction 2546, Judicial Council Of California Civil Jury

15 Instruction 2546; O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB §

16 15:8; *Bushouse v. Local Union 2209, United Auto., Aerospace & Agric. Implement*

17 *Workers of Am.*, 164 F.Supp.2d 1066, 1075 (N.D. Ind. 2001); *Gelfo v. Lockheed Martin*

18 *Corp.*, 140 Cal. App. 4th 34, 54 (2006); *Andazola v. Kaiser Permanente*, No. CV 23-

19 10904-GW-BFMX, 2024 WL 4581515 (C.D. Cal. July 29, 2024); *Weiss v. Permanente*

20 *Med. Grp., Inc.*, 2024 WL 3090496, at *5 (N.D. Cal. June 21, 2024); *Detwiler v. Mid-*

21 *Columbia Med. Ctr.*, 2023 WL 7221458, at *4–5 (D. Ore. Sept. 13, 2023); *Green v. Medco*

22 *Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 726 (N.D. Tex. 2013), aff'd sub nom.

23 *Green v. Medco Health Sols. of Texas, L.L.C.*, 560 F. App'x 398 (5th Cir. 2014) ("Whether

24

25

26

27                    20

28     **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1  an individual is a qualified individual with a disability is determined as of the time of the

2  employment decision.")

3

4  **Plaintiff's Objection:**

5      Plaintiff objects to this instruction on three grounds. *First*, the only claim proceeding

6  to trial is Plaintiff's claim for failure to accommodate his religious beliefs on the grounds

7  that Defendants failed to offer him an interactive process. As discussed above, "[a]n

8  employee notifying an employer of a need for a religious accommodation triggers a duty

9  to engage in an 'interactive process' …." *Garcia v Walmart, Inc.*, No. 23-35321, 2024 U.S.

10 App. LEXIS 12833, at *7 (9th Cir. May 29, 2024); *see also* 29 CFR § 1605.2(c)(1).  That

11 is all that is required, notice of the need for a religious accommodation.  This is why the

12 Final Charge to the Jury at ¶ 16, *Lewis-Williams v. S.F. Bay Area Rapid Transit District*,

13 No. C 22-06119-WHA (N.D. Cal. Oct. 22, 2024) ECF No. 220, cited by Defendants, only

14 stated: "the question you must answer is whether plaintiff informed BART, at the time of

15 the events, *of a bona fide religious belief* and how it conflicted with a vaccination against

16 COVID-19" and included nothing about providing "Defendants, at the time of the events,

17 *with information sufficient to establish* a bona fide religious belief" as Defendants propose

18 here. (emphasis added.)

19      *Second,* inclusion of such a requirement would be improper because Plaintiff need

20 not show that at the time that Defendants failed to provide the interactive process he had

21 provided Defendants with all the information necessary to "establish a bona fide religious

22 belief and how it conflicted with vaccination against COVID-19." In fact, the court in

23 *Jiglov v. Hotel Peabody, G.P.,* 719 F. Supp. 2d 918 (W.D. Tenn. 2010) expressly rejected

24 a similar argument.  There, the plaintiff had asked for Easter Sunday off, and the employer

25 argued that the plaintiff had provided inadequate notice because he did not apprise the

26 employer about all the reasons for why he required Easter off.  *Id.* at 930. The court rejected

27                                                      21

28 _____

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1  this argument, stating that "Plaintiff did not have a duty to divulge all of the details of the
2  religious content of his Easter observance with his supervisors, only to advise Defendant
3  that he needed the day off for religious reasons."  *Id.* at 930-31; *see also Jackson v.*
4  *Longistics Transp., Inc.*, No. 11-2093-STA, 2012 U.S. Dist. LEXIS 52398, at *32 (W.D.
5  Tenn. Apr. 13, 2012) (rejecting a similar argument as being "be without legal or factual
6  support" because there was no "authority for the proposition that Plaintiffs' duty to inform
7  required anything more than their request to have the day off for a religious observance").
8  Rather than placing the burden on Plaintiff to establish his bona fide religious belief, the
9  interactive process enables the employer to gather any additional information regarding an
10  employee's beliefs if the employer has an objective basis to question the sincerity of those
11  beliefs. What You Should Know About COVID-19 and the ADA, the Rehabilitation Act,
12  and Other EEO Laws, U.S. Equal Emp. Opportunity Comm'n, *available at*
13  https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-
14  rehabilitation-act-and-other-eeo-laws. To the extent that Defendants did not believe they
15  had sufficient grounds to state that Plaintiff had a bona fide religious belief, and they had
16  an objective basis to question those beliefs, the interactive process provided the means for
17  Defendants to acquire that information, it was not Plaintiff's responsibility to establish his
18  bona fide religious belief before the interactive process began.

19      *Third*, to the extent Defendants' changes to the *Lewis-Williams* jury instruction are
20  based on Defendants assertion that Plaintiff claimed in communications in October 2021
21  that Defendants had all the information they needed to make their determination, that is
22  again a factual inquiry reserved for the jury's consideration. A reasonable jury could find
23  as Defendants claim that the communications between the parties show that Plaintiff was
24  asserting that Defendants had all the information and he would not provide additional
25  information, or that same jury could determine that Plaintiff subjectively believed
26  Defendants had all the information he thought they needed, but he was willing to provide

22

27
28              **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1  additional information or address any additional questions Defendants had for him.  The
2  interpretation of those communications is an important factual question regarding
3  Plaintiff's good faith cooperation in the interactive process, and is for the jury to decide in
4  this case.

5

6  **Defendants' Reply:**

7        This language was recently approved and used in the Northern District, is consistent
8  with the Court's ruling on Defendants' MSJ (in which it disregarded evidence of religious
9  beliefs not communicated to Defendants at the time Plaintiff submitted his request for
10 accommodation and omitted from the Complaint), and is supported by dozens of decisions
11 dismissing claims for religious discrimination ***at the pleading stage*** where the plaintiffs
12 failed to disclose to information pertaining to their religious beliefs at the time of making
13 a request for accommodation. Moreover, here Plaintiff repeatedly stated in his email
14 correspondence that he had submitted a complete statement of his beliefs which should
15 foreclose any suggestion that he had or was willing to share additional information about
16 his religious beliefs.  To the extent Plaintiff objected to any modification to the instruction
17 used in Bart, Defendants have withdrawn such modifications.

18                                                                      Commented [AB4]: Revised.

23

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

[DEFENDANTS' PROPOSED] JURY INSTRUCTION NO. 7

***Plaintiff's Duty***

Plaintiff must prove that he timely informed Defendants of his need for an accommodation and was willing to cooperate with Defendants' request for information relating to the nature of his beliefs. Under Title VII, it is the obligation of the employee to make known to his employer any conflict between a religious belief and employment requirement. It is not the employer's obligation to ask the employee whether he has a religious belief that requires accommodation or to speculate or guess about the possibility of a conflict.

The employee must act reasonably in making known the existence of his religious belief, by communicating the existence of the religious belief that conflicts with a job requirement.

An employee cannot wait until after an adverse employment action, like termination, is imminent to give notice to their employer of the existence of their religious belief or participate in an interactive process.

**Authority/Source:** O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 16:1; *Brookins v. Indianapolis Power & Light Co.*, 90 F.Supp.2d 993, 1007 (S.D. Ind. 2000); *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666–67 (7th Cir.1995); *Reed v. LePage Bakeries, Inc*., 244 F.3d 254, 262 n. 9 (1st Cir. 2001); *Green v. Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 728–30 (N.D. Tex. 2013), aff'd sub nom. Green v. Medco Health Sols. of Texas, L.L.C., 560 F. App'x 398 (5th Cir. 2014); *Andazola v. Permanente*, 2024 WL 3914610, at *8 (C.D. Cal. July 26, 2024), adopted sub nom. *Andazola v. Kaiser Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 4581515 (C.D. Cal. July 29, 2024); *Weiss v. Permanente Med. Grp., Inc.*, 2024 WL 3090496, at *5 (N.D.

24

[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS

Cal. June 21, 2024); *Detwiler v. Mid-Columbia Med. Ctr.*, 2023 WL 7221458, at *4–5 (D. Ore. Sept. 13, 2023).

**Plaintiff's Objection:**

Plaintiff objects to the use of the words "**is imminent**" in the last paragraph of the proposed instruction. The cases Defendants cite do not support the inclusion of the "is imminent" language in the instruction. In *Reed* the plaintiff revealed her disability *after* she had already gotten into an altercation, which was the reason for her termination. *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 262 n. 9 (1st Cir. 2001). Similarly, in *Green* while the employee was not terminated when they made their request for an accommodation, they had already had 2 months of absences, and the decision had already been made to terminate her. *Green v. Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 728–30 (N.D. Tex. 2013) ("The Court thus concludes that Plaintiff's December requests for accommodations were untimely in that she was effectively terminated before the requests were made.") Neither case stands for the idea that if an employer imposes a deadline regarding accommodations, an employee must make the request well before the deadline, *i.e.*, before the deadline "is imminent." It is only *after* the decision regarding termination is already made that an employee is precluded from requesting accommodation. *Green*, 947 F. Supp. 2d at 729 ("In situations where an employee's termination based on a legitimate, nondiscriminatory reason has been made effective but has not yet been processed, courts must not permit the employee to use the ADA as a shield from being fired by suddenly requesting an accommodation before the ink on her valid termination papers is dry.") Therefore, Defendants have failed to show a legal basis for inclusion of the phrase "is imminent" in the jury instruction.

Furthermore, inclusion of "is imminent" would likely confuse the jury. The phrase has no clear meaning, and here, there is a factual issue whether the October 4, 2021,

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1  deadline was a deadline at which an adverse employment action such as termination would
2  have been imminent. In fact, Defendants permitted Plaintiff to continue to work well after
3  the October 4th date and in several emails Erin Nguen suggested that Plaintiff's conditions
4  of employment would not change until October 18, 2021 at the earliest.  Similarly, there is
5  a factual issue whether even the October 18, 2021, deadline to be fully vaccinated was in
6  fact a deadline when an adverse employment action such as termination would have been
7  imminent because Plaintiff was not terminated until weeks later on November 10, 2021.
8  Indeed, due to the nature of Plaintiff's pay-or-play contract, his inability to be on set after
9  October 18, 2021, would not have affected his employment or his compensation.  At the
10 very least, if "is imminent" were included, which it should not be, this instruction would
11 necessarily warrant clarifying what imminent meant and date that the adverse employment
12 action became "imminent." Given that there is no legal support for use of the phrase, such
13 a clarification is be superfluous. Therefore, Plaintiff proposes that the "is imminent"
14 language be struck from Defendants' proposed jury instruction.
15
16 **Defendants' Reply:**
17     Plaintiff objects only to the inclusion of the words "**is imminent**" in the last
18 paragraph of the proposed instruction. If Plaintiff concedes that he was notified of his
19 termination on October 5, 2021 (he was), then there is no need for the instruction to include
20 the "is imminent" language. Otherwise, Defendants maintain that the inclusion of the
21 language "is imminent" is consistent with the case law cited in support of the instruction.
22 Here, Plaintiff did not submit his request for accommodation until the deadline to get
23 vaccinated in compliance with ~~the~~his employer's vaccination policy and did not reach out
24 to speak with Employee Relations until after he was informed of his termination and days
25 before filming his final scene.
26
27                                    26
28 _____
                   **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

[DEFENDANTS' PROPOSED] JURY INSTRUCTION 8

*Definition of Accommodate*

To "accommodate" a request for a religious accommodation is to make some change that will let a person participate in his religious belief/practice without affecting his job. An accommodation is "reasonable" if it is effective and its burden is not clearly disproportionate to the benefits that it will produce. A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules, but does not include elimination or change of essential job functions.

A leave of absence for an unknown and unknowable duration is unreasonable as a matter of law.

**Authority/Source**: O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Civil Comp HB § 15:8; *Makor v. Burlington N. Santa Fe Ry. Co.*, 680 F. App'x 542, 544 (9th Cir. 2017) ("indefinite leave is not reasonable as a matter of law."); *Dark v. Curry Cnty.*, 451 F.3d 1078, 1090 (9th Cir. 2006) ("[R]ecovery time of unspecified duration may not be a reasonable accommodation ...."); *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) ("Wood was requesting an accommodation of indefinite leaves of absence so that he could work at some uncertain point in the future. Wood's requested accommodation was not reasonable."); *Myers v. Hose*, 50 F.3d 278, 280 (4th Cir. 1995) ("This appeal presents the question whether an employer's duty to reasonably accommodate a disabled employee, who is presently unqualified for the position he holds, includes the obligation to grant the employee an indefinite period of time to correct his disabling condition. We think that such a requirement would contravene the meaning of the phrase 'reasonable accommodation,' as provided in the [ADA].").

27

[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS

**Commented [SS5]:** I still object to this instruction. It doesn't use the term "undue hardship" but is effectively telling the jury that it can find that it was simply impossible for Fox to accommodate Dunbar, even if it deems his religious beliefs sincere.

**Commented [AB6R5]:** We will withdraw this instruction

**Commented [AB7R5]:**

1    ~~Plaintiff's Objection:~~

2    ~~Plaintiff objects to the last paragraph of the proposed instruction: "**A leave of**~~

3    ~~**absence for an unknown and unknowable duration is unreasonable as a matter of**~~

4    ~~**law.**" This paragraph is not legally correct, nor is it appropriate in the present case and is~~

5    ~~likely to confuse the jury. This is because under the law, a leave of absence for an unknown~~

6    ~~duration is not *per se* an improper accommodation. *See e.g., Hayslett v. Tyson Foods, Inc.*,~~

7    ~~No. 1:22-cv-1123-STA-jay, 2023 U.S. Dist. LEXIS 240957, at *42 (W.D. Tenn. Sep. 20,~~

8    ~~2023) (holding that a jury could find that an indefinite unpaid leave of absence was a~~

9    ~~reasonable accommodation when employees claimed religious objectiosn to the COVID-~~

10   ~~19 vaccine). To the contrary, what constitutes a "reasonable accommodation" is a question~~

11   ~~for the jury to be "determined on a case by case basis" because it "turns on the unique~~

12   ~~circumstances of the individual employer employee relationship." *American Postal*~~

13   ~~*Workers Union v. Postmaster Gen.*, No. C 83-2880 TEH, 1984 U.S. Dist. LEXIS 15428,~~

14   ~~at *9 n.17 (N.D. Cal. June 28, 1984) (internal quotations ommited); *see also Gonzales v.*~~

15   ~~*Marriott Int'l, Inc.*, 142 F. Supp. 3d 961, 979 (C.D. Cal. 2015) ("Under both state and~~

16   ~~federal law, whether the accommodation … offered … is reasonable, however, is, as noted,~~

17   ~~a question of fact for the jury" to be determinined on a case by case basis). Here, one of~~

18   ~~the possible accommodations would have been a leave of absence. Plaintiff was not in~~

19   ~~every episode of the show, and the showrunner testified at his deposition that there were~~

20   ~~ways within the story to permit his character to be gone for some time, and indeed his~~

21   ~~character departed the show by going on a humanitarian mission.~~

22   ~~In addition, for the reasons stated in objection to the next proposed jury instruction~~

23   ~~the phrase "[a]n accommodation is 'reasonable' if it is effective and its burden is not clearly~~

24   ~~disproportionate to the benefits that it will produce" fails to comport with the standard in~~

25   ~~*Groff v. DeJoy*, 600 U.S. 447, 468 (2023).~~

26

27                          28

28   ─────────────────────────────────────────
       **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1    ~~Defendants' Reply:~~

2    ~~Plaintiff's citation to unpublished out of circuit case law to contravene the clearly~~

3    ~~established principle that an *indefinite* leave is per se unreasonable as a matter of law is~~

4    ~~not well taken. *Makor v. Burlington N. Santa Fe Ry. Co.*, 680 F. App'x 542, 544 (9th Cir.~~

5    ~~2017) ("indefinite leave is not reasonable as a matter of law."); *Dark v. Curry Cnty.*, 451~~

6    ~~F.3d 1078, 1090 (9th Cir. 2006) ("[R]ecovery time of unspecified duration may not be a~~

7    ~~reasonable accommodation ...."); *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003)~~

8    ~~("Wood was requesting an accommodation of indefinite leaves of absence so that he could~~

9    ~~work at some uncertain point in the future. Wood's requested accommodation was not~~

10   ~~reasonable."); *Myers v. Hose*, 50 F.3d 278, 280 (4th Cir. 1995) ("This appeal presents the~~

11   ~~question whether an employer's duty to reasonably accommodate a disabled employee,~~

12   ~~who is presently unqualified for the position he holds, includes the obligation to grant the~~

13   ~~employee an indefinite period of time to correct his disabling condition. We think that such~~

14   ~~a requirement would contravene the meaning of the phrase 'reasonable accommodation,'~~

15   ~~as provided in the [ADA."). It is important that the jury be informed of that a leave of~~

16   ~~indefinite duration is per se unreasonable. Plaintiff suggests that leave was a possible~~

17   ~~accommodation, but any leave would necessarily be an indefinite duration as it would~~

18   ~~continue as long as Plaintiff held his religious beliefs or the vaccine mandate remained in~~

19   ~~place. At the time the vaccine mandate was issued, it was unknown if Plaintiff's beliefs~~

20   ~~would evolve or if the vaccine mandate would ever be lifted.~~

21

22

23

24

25

26

27                                    29

28   **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1    ~~[DEFENDANTS' PROPOSED] JURY INSTRUCTION~~

2    *Defenses – Reliance on Law at the Time*

3    If you find that Defendants acted in good faith and in conformity with and in reliance

4    on guidance or guidelines available from the Equal Opportunity Employment Commission

5    (EEOC), or the United States Supreme Court, Circuit Court, or Federal District Courts, you

6    must find in favor of Defendant in its interactions with Plaintiff and its decision regarding

7    Plaintiff's request for religious exemption, then you must find in favor of Defendants.

8

9    **Authority/Source:** 42 USC 2000e-12(b); *Doe v. San Diego Unified School District*, 19

10   F.4th 1173 (9th Cir. 2021); *Andazola v. Permanente*, No. CV 23-10904-GW-BFMX, 2024

11   WL 3914610, at *6 (C.D. Cal. July 26, 2024), adopted sub nom. *Andazola v. Kaiser*

12   *Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 4581515 (C.D. Cal. July 29, 2024).

13

14   **Plaintiff's Objection:**

15   Plaintiff objects to the foregoing instruction. The statue reads: "In any action or

16   proceeding based on any alleged unlawful employment practice, no person shall be subject

17   to any liability or punishment for or on account of (1) the commission by such person of

18   an unlawful employment practice if he pleads and proves that the act or omission

19   complained of was in good faith, in conformity with, and in reliance on any written

20   interpretation or opinion of the Commission. "42 U.S.C.S. § 2000e-12 (b)(1). In other

21   words, the statue is narrowly tailored. To receive the benefit of reliance on law at the time,

22   the party has to show that it relied on specific EEOC guidance and was later changed.

23   *Andazola v. Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 3914610, at *6 n.5

24   (C.D. Cal. July 26, 2024). Defendants' proposed instruction is significantly broader and

25   implies that so long as Defendants acted in good faith and relied on some guidance or

26   caselaw, the jury must find for Defendants. Therefore, the instruction is improper.

27                                    30

28   **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1  **Defendants' Reply:**

2        Plaintiff reads a requirement into the statute that does not exist. In fact, 42 U.S.C. §

3  2000e-12(b)(1) states:

4        (b) In any action or proceeding based on any alleged unlawful employment

5        practice, no person shall be subject to any liability or punishment for or on

6        account of (1) the commission by such person of an unlawful employment

7        practice if he pleads and proves that the act or omission complained of was in

8        good faith, in conformity with, and in reliance on any written interpretation or

9        opinion of the Commission [. . . .] Such a defense, if established, shall be a

10       bar to the action or proceeding, notwithstanding that (A) after such act or

11       omission, such interpretation or opinion is modified or rescinded or is

12       determined by judicial authority to be invalid or of no legal effect . . . .

13  Nothing in the statute suggests that it is only available following a change in the law.  In

14  fact, the language that the defense applies "notwithstanding" that the interpretation or

15  opinion is modified or rescinded, or is determined by judicial authority to be invalid or of

16  no legal effect." "Notwithstanding" is a clarification of the defenses broad scope, not a

17  limitation.  Plaintiff's invocation of *Andazola v. Permanente*, 2024 WL 3914610, at *6

18  (C.D. Cal. July 26, 2024), adopted sub nom. *Andazola v. Kaiser Permanente*, 2024 WL

19  4581515 (C.D. Cal. July 29, 2024) does not suggest otherwise.  The footnote Plaintiff cites

20  to provides no support for his limiting interpretation: "An employer who can demonstrate

21  that it acted in good faith, in conformity with and in reliance on an accepted EEOC opinion

22  or interpretation, establishes a defense to a Title VII claim." Chin & Wiseman, ¶ 7:965, at

23  7-185 (citing 42 U.S.C. § 2000e-12(b)(1)).

24

25

26

27                                    31

28
_____
              **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

[DEFENDANTS' PROPOSED] JURY INSTRUCTION 9

### *Defenses—After-Acquired Evidence*

Defendants contend that they would have made the same decision to deny Plaintiff's request for accommodation based on the information known to them today, including Plaintiff's providing false and incomplete information in support of his requested accommodation.

Defendants contend that they would have made the same decision to discharge Plaintiff because of the false information he provided to Defendants in support of his request for accommodation.

If Defendants prove by a preponderance of the evidence that Defendants could have made the same decision to deny Plaintiff's request for accommodation and would have denied Plaintiff's request for accommodation based on the false information provided to Defendants, then you should limit any damages award to Plaintiff to the date that Defendants would have made the decision to discharge Plaintiff based on the false information.

**Authority/Source**: Ninth Cir. Civ. Model Instr. §10.16.

**Plaintiff's Objection:**

Plaintiff objects to the foregoing instruction because the instruction is replete with factual determinations reserved for the jury's consideration. *First*, whether Plaintiff provided "false" or "incomplete" information to Defendants is for the jury to decide. *Second*, whether that information was the basis for terminating Plaintiff's employment is also a question for the jury. Indeed, nothing in the record shows that providing incomplete information in support of his accommodation was the basis for terminating Plaintiff. *Third*, to the extent that Defendants attempt to argue that Plaintiff provided false information

32

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1   regarding his religious beliefs, the jury is already charged with determining whether
2   Plaintiff has a sincerely held religious belief. The Ninth Circuit Model Instruction
3   contemplates a situation where an employer finds out about a separate wrongdoing after
4   the employee is terminated, in which case, the employer is entitled to argue that it would
5   have nevertheless discharged the employee.

6

7   **Defendants' Reply:**
8        Defendants' proposed instruction is modeled from the Ninth Cir. Civ. Model Instr.
9   §10.16. Plaintiff seeks to exclude a description of the after acquired evidence upon which
10  Defendants' base their defense. This is non-sensical and contradicts the format and
11  language of the Ninth Circuits instruction.  The fact that Plaintiff contends he did not
12  provide incomplete or false information is not a basis to prevent Defendants from
13  presenting their defense.

14
15
16
17
18
19
20
21
22
23
24
25
26
27                                      33
28
_____
              **[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: September 29, 2025          **MCDERMOTT WILL & SCHULTE LLP**

By: _____
            MARIA RODRIGUEZ
            CHRISTOPHER BRAHAM
            ELVIRA KRAS
            ARIEL BEVERLY
            Attorneys for Defendants
            TWENTIETH CENTURY FOX FILM
            CORPORATION and AMERICAN
            BROADCASTING COMPANIES, INC.

Dated: September 29, 2025          **JW HOWARD | ATTORNEYS, LTD.**


By: _____
        SCOTT J. STREET
        MITCH STEIN
        JOHN W. HOWARD
        *Attorneys for Plaintiff*
        *ROCKMOND DUNBAR*

34

**[PROPOSED] JOINT DISPUTED JURY INSTRUCTIONS**

**JW HOWARD/ ATTORNEYS, LTD.**
600 West Broadway, Suite 1400
San Diego, California 92101

# CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On October 6, 2025, I electronically filed the **PLAINTIFF ROCKMOND DUNBAR'S AMENDED TRIAL BRIEF** and served the documents using the Court's Electronic CM/ECF Service which will send electronic notification of such filing to all registered counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 6, 2025, at San Diego, California.

*/s/ Dayna Dang*
Dayna Dang
dayna@jwhowardattorneys.com

PLAINTIFF'S AMENDED TRIAL BRIEF                    CASE NO. 22-cv-1075-DMG (JCx)